FILED

CONFORMED

1  Mary E. Collins, Esq., CA Bar No. 296536
2  Tristan G. Pelayes, Esq., CA Bar No. 206696
3  Dennis E. Wagner, Esq., CA Bar No. 99190
   WAGNER & PELAYES, LLP
4  1325 Spruce Street, Suite 200
   Riverside, CA 92507
5  Telephone:  (951) 686-4800
6  Fax:          (951) 686-4801

7  Attorneys for Plaintiff,
8  STEPHEN MILLER

9

10

11              UNITED STATES DISTRICT COURT

12      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

13

14  STEPHEN MILLER,                    )  CASE NO.:
                                       )  CV13-5148 GW (CWx)
15              Plaintiff,             )
                                       )
16         v.                          )  **FOURTH AMENDED
                                       )  COMPLAINT FOR:**
17  CITY OF LOS ANGELES, ERIC          )  1. **VIOLATION OF CIVIL
18  GARCETTI, as Mayor in his official )     RIGHTS 42 USC § 1983 (FIRST
    and individual capacities; RICHARD )     AMENDMENT)**
19  LLEWELLYN, as Legal Counsel to the )  2. **MUNICIPAL LIABILITY**
    Mayor in his official and individual)
20  capacities; MIKE FEUER, as City    )  3. **VIOLATION OF CA LABOR
21  Attorney in his official and individual)     CODE §1102.5-(Retaliation)**
    capacities; DELIA IBARRA, as Fire  )  4. **VIOLATION OF TITLE VII
22  Commission President in her official)     /FEHA**
23  and individual capacities; ANDREW  )
    GLAZIER, as Fire Commission Vice   )
24  President in his official and individual)  **DEMAND FOR JURY TRIAL**
25  capacities; STEVE FAZIO, as a Fire )
26  Commissioner in his official and    )
    individual capacities; JIMMIE       )
27  WOODS-GRAY, as a Fire               )
28                                      )

                            1
          FOURTH AMENDED COMPLAINT

1  Commissioner in her official and )
2  individual capacities; JIMMY HARA, )
   M.D., in his official and individual )
3  capacities; and DOES 1 through 10, )
4  Inclusive, )
5                   )
       Defendants. )
6  _____ )

7       COMES NOW, plaintiff, STEPHEN MILLER, an individual, and

8  complains against defendants the City of Los Angeles, Mayor Eric Garcetti, in his

9  official capacity and individually (hereinafter "Garcetti"); Legal Counsel to the

10 Mayor, Richard Llewellyn, in his official capacity and individually (hereinafter

11 "Llewellyn"); City Attorney Mike Feuer, in his official capacity and individually

12 (hereinafter "Feuer"), Fire Commission President Delia Ibarra, in her official

13 capacity and individually (hereinafter "Ibarra"); Fire Commission Vice President

14 Andrew Glazier, in his official capacity and individually (hereinafter "Glazier");

15 Fire Commissioner Steve Fazio, in his official capacity and individually

16 (hereinafter "Fazio"); Fire Commissioner Jimmie Woods-Gray, in her official

17 capacity and individually (hereinafter "Woods-Gray"); and Fire Commissioner

18 Jimmy Hara, M.D., in his official capacity and individually (hereinafter "Hara")

19 as follows:

20       1.    This is an action to vindicate and protect the constitutional, civil and

21 statutory rights of Plaintiff, STEPHEN MILLER (hereinafter "Plaintiff" or

22 "Miller"), after the Defendants and each of them took adverse employment action,

23 punished, threatened, impeded, harassed, discriminated against and retaliated

24 against Plaintiff's lawful exercise of free speech, right to petition government

25 agencies, and right to disclose information on matters of public concern including

26 but not limited to violations of or noncompliance with state or federal laws.

27 / /

28 / /

                                    2
_____
                    FOURTH AMENDED COMPLAINT

## JURISDICTIONAL ALLEGATIONS

2.       Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4), which provide for original jurisdiction in this Court of all suits brought pursuant to 42 U.S.C. § 1983.  Jurisdiction is also conferred on this Court by 28 U.S.C. § 1331 because the cause of action arises under the Constitution and laws of the United States. This Court has jurisdiction over the pendant state law claims pursuant to Title 28 U.S.C. § 1367(a).

3.       Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the Defendants are located in the Central District of California and may be found and served in the Central District of California. Venue is proper for the additional reasons that at all times mentioned herein the events took place within the Central District of California.

## PARTIES

4.       Plaintiff, MILLER, is and was at all times relevant an individual and an employee of the City of Los Angeles and a resident of San Bernardino County, California.

5.       Defendant, CITY OF LOS ANGELES, California, is a public body corporate and politic established pursuant to California Statutes and/or a City Charter with the authority to sue and be sued, and was at all times relevant herein, acting within the course and scope of its authority and under color of State law.

6.       Defendant, GARCETTI, was and at all times herein mentioned is, as of July 1, 2013, the Mayor of the City of Los Angeles and employee of Defendant City of Los Angeles and at all times material herein acting within the scope and course of his employment and under color of State law with the City of Los Angeles and is sued in his official and individual capacities.

7.       Defendant, LLEWELLYN, was and at all times herein mentioned is, as of July 1, 2013, the Legal Counsel to the Mayor and employee of Defendant City of Los Angeles and at all times material herein acting within the scope and

3

1    course of his employment and under color of State law with the City of Los
2    Angeles and is sued in his official and individual capacities.

3        8.     Defendant, FEUER, was and at all times herein mentioned is, as of
4    July 1, 2013, the elected City Attorney and at all times material herein acting
5    within the scope and course of his employment and under color of State law with
6    the City of Los Angeles and is sued in his official and individual capacities.

7        9.     Defendant, IBARRA, was and at all times herein mentioned is, as of
8    July 1, 2013, the Los Angeles City Fire Commission President and employee of
9    Defendant City of Los Angeles and at all times material herein acting within the
10    scope and course of her employment and under color of State law with the City of
11    Los Angeles and is sued in her official and individual capacities.

12        10.     Defendant, GLAZIER, as of August, 2013, was and at all times
13    herein mentioned is the Los Angeles City Fire Commission Vice President and
14    employee of Defendant City of Los Angeles and at all times material herein acting
15    within the scope and course of his employment and under color of State law with
16    the City of Los Angeles and is sued in his official and individual capacities.

17        11.     Defendants, FAZIO, WOODS-GRAY and HARA were and at all
18    times herein mentioned, as of August, 2013, for Defendants Woods-Gray and
19    Hara, and as of July, 2012, for Defendant, Fazio, Commissioners and members of
20    the Los Angeles City Fire Commission and employees of Defendant City of Los
21    Angeles and at all times material herein acting within the scope and course of their
22    employment and under color of State law with the City of Los Angeles and are
23    sued in their official and individual capacities.

24        12.     At all times relevant to the issues raised by this complaint, former
25    City Attorney Carmen Trutanich, newly elected City Attorney Mike Feuer, former
26    Chief Deputy City Attorney William Carter, Chief Assistant City Attorney Pedro
27    "Pete" Echeverria and Llewellyn had the duty to adequately manage and supervise
28    their subordinates, assistant city attorneys Zna Houston, Vivienne Swanigan, and

1  Janet Jackson, pursuant to Rule 3-500 of the California Rules of Professional
2  Conduct.

3       13.    As members of the State Bar of California, and at all times relevant,
4  Trutanich, Carter, Echeverria, Feuer, Llewellyn, Senior Assistant City Attorney
5  Zna Houston (hereinafter Houston), and Deputy's City Attorney Janet Jackson
6  (Jackson) and Vivienne Swanigan (hereinafter Swanigan) had the duty to 1)
7  employ means only as are consistent with the truth pursuant to California Business
8  and Professions Code section 6068(d); 2) respond promptly to reasonable status
9  enquiries and to keep clients informed pursuant to section 6068(m); 3) avoid acts
10  involving dishonesty pursuant to section 6106; and 4) perform legal services with
11  competence pursuant to Rule 3-110.

12       14.    Plaintiff does not know the true names of defendants sued herein as
13  DOES 1 through 10, inclusive, and therefore sues them by those fictitious names.

14       15.    Unless otherwise alleged in this complaint, plaintiff is informed and
15  believes, and on the basis of that information and belief alleges, that at all times
16  mentioned in this complaint, each of the defendants was an agent and/or employee
17  of their codefendants and engaged in a conspiracy to cause the adverse
18  employment actions, and violations were alleged in this complaint and were acting
19  within the scope and duty of that agency, employment and conspiracy.

20  **GENERAL ALLEGATIONS**
21  **BACKGROUND**

22       16.    On March 3, 2009, voters in the City of Los Angeles created the
23  Independent Assessor position and approved Charter section 523 in response to
24  negative audits and multi-million dollar verdicts involving misconduct in the Los
25  Angeles Fire Department.  Charter section 523 provides that the Independent
26  Assessor shall have the power and duty to audit, assess and review how the Fire
27  Department handles complaints of misconduct committed by sworn or civilian
28  Fire Department employees.

5

17.     Charter section 523 says the Independent Assessor shall have the same access to Fire Department information as the Board of Fire Commissioners. The City Charter, Court of Appeal decisions and published legal opinions from the Los Angeles City Attorney's Office say that as the head of the Fire Department, the Board of Fire Commissioners has authority to access all information in and under the control of the Fire Department. The Board of Fire Commissioners has the power to review the Fire Chief's disciplinary decisions and issue corrective instructions to the Fire Chief.

18.     Pursuant to a class specification approved by the City in March 2009, the Independent Assessor has the express duty to assist the Board of Fire Commissioners in the oversight and monitoring of the Fire Department's internal disciplinary process. To execute this duty, the Independent Assessor has the express duty to review investigations of complaints filed against Fire Department employees to determine whether investigations are conducted fairly, comprehensively and within standard timeframes and to determine whether adjudication of complaints complies with Fire Department policies and procedures.

19.     Miller began work as the first Independent Assessor on October 5, 2009 and was immediately granted unfettered access to complaint and discipline tracking systems, databases, internal investigation files and Fire Department managers. Miller also began attending the Fire Chief's discipline meetings where highly confidential personnel investigations and discipline matters were discussed without limitation and in the presence of City attorneys. Access to this information and these meetings was granted with the full knowledge of and without objection from City attorneys.

20.     The City does not require that the Independent Assessor to be an attorney, although Miller has been a practicing attorney for more than 30 years.

6

1    21.    Shortly after Miller was appointed, and again before he began filing

2  formal complaints alleging attorney misconduct with governmental agencies,

3  Miller consulted with former LAPD Inspector General and current United States

4  Attorney Andre Birotte (Birotte) to ensure his understanding of the Independent

5  Assessor's right to access all Fire Department information was accurate because

6  Birotte had recommended section 523 be adopted in order to guarantee such

7  access. Birotte confirmed Miller's understanding and the consultations with

8  Birotte provided Miller with reasonable cause to believe numerous City attorneys

9  violated state law related to the conduct of attorneys in California when they

10  issued legal advice on August 23, 2010.

11    22.    On or about March 27, 2010, Miller published an *Assessment of the*

12  *Department's Disciplinary Process and Professional Standards Division*

13  (*Assessment*).  The *Assessment* criticized City Attorney legal services provided to

14  the Fire Department, although Miller had no authority, duty or power to criticize

15  the performance of and legal services provided by City attorneys. On April 21,

16  2010, Carter and Echeverria authorized, Houston to advise the Fire Chief to limit

17  Miller's involvement in the Fire Chief's discipline meetings.  The advice was

18  issued to retaliate against Miller for criticizing legal services because Miller or

19  another Fire Commission employee had been attending such meetings for

20  approximately two years before Miller expressed such criticism without any

21  objection from the City attorneys who also attended such meetings.  Miller did not

22  attend the Fire Chief's discipline meetings for approximately two years because of

23  this advice.

24    23.    On or about July 14, 2010, Fire Chief Millage Peaks issued a

25  memorandum titled *Access to Records, Files and Information by the Independent*

26  *Assessor* (Access Memo), which explained that the Independent Assessor has

27  access to all records, files and information in and available to the Fire Department

28  because as head of the Fire Department, the Fire Commission has access to all

FOURTH AMENDED COMPLAINT

1  such information and the Independent Assessor has the same access to

2  information as the Fire Commission.  Miller had reasonable cause to believe the

3  Access Memo was accurate because Deputy Mayor Eileen Decker (Decker) and

4  Deputy Legal Counsel Gregg Kettles (Kettles) reviewed and approved the Access

5  Memo and authorized the Fire Chief to distribute it.

6     24.   On or about August 16, 2010, Trutanich, Carter and Echeverria

7  authorized the public release of a *Response to Allegations Contained in the LAFD*

8  *Independent Assessor's Report* (*Response*) that was signed by Houston for the

9  City Attorney's Office.  Miller had reasonable cause to believe that Houston

10  violated Business and Professions Code sections 6068 and 6106 and Rule 3-110

11  by providing false and misleading information about the status of legal services in

12  the *Response*.    This information included false claims that City attorneys did not

13  provide legal services because requests for legal services had never been received

14  or City attorneys had only learned of the requests after the *Assessment* had been

15  published.  Correspondence to and from Houston established these representations

16  were not accurate and that Houston had personally received most of the legal

17  requests in question.

18     25.   On or about August 23, 2010, Carter authorized issuing a

19  memorandum titled *Los Angeles Fire Department Independent Assessor's*

20  *Authority to Access Fire Department Personnel and Disciplinary Records and*

21  *Information* that was addressed to both the Fire Commission and to Miller.  The

22  August 23, 2010 advice was prepared by Echeverria, Houston, and Swanigan.

23     26.   The August 23, 2010 advice falsely states that neither the Fire

24  Commission nor the Independent Assessor may access confidential personnel

25  information of the Fire Department and that the Fire Commission may not hold

26  closed session meetings to review such matters despite the City Attorney's

27  longstanding past practice of advising the Fire Commission to hold closed session

28  meetings.

27.     Miller has reasonable cause to believe that the August 23, 2010 advice violated Business and Professions Code sections 6068 and 6106 or violated or failed to comply with Rule 3-110 because it: 1) failed to disclose a relevant Charter section,  case law and City Attorney opinions indicating that the Fire Commission may review the Fire Chief's discipline of Fire Department employees and issue corrective instructions because the Fire Commission has ultimate power over discipline; 2) failed to disclose case law and City Attorney advice indicating that Fire Commissioners may meet in closed session meetings to access and discuss disciplinary matters involving Fire Department employees; 3) failed to disclose City Attorney opinions stating that City Commissions heading a department like the Fire Department have the implied power to access all department information in order to exercise intelligent supervision over the department; 4) falsely stated that the Fire Chief has exclusive jurisdiction over the discipline of Fire Department employees; 5) falsely stated that that the Independent Assessor's access to information is solely  dependent on the authority to conduct investigations,  which the Charter does not provide; and  6) failed to disclose City attorney advice stating  that it is presumed voters grant access to all information when approving a position like the Independent Assessor.

28.     Llewellyn knew the August 23, 2010 advice was false, inaccurate and misleading because he signed a City Attorney opinion indicating that City Commissioners, like Fire Commissioners, have the power to instruct the general managers like the Fire Chief in all of his duties, including discipline.

29.     Echeverria knew the August 23, 2010 advice was false, inaccurate and misleading because he knew of, and/or authorized multiple City Attorney opinions that were not disclosed in the August 23, 2010 advice, including an opinion indicating that the Fire Commission's power and authority as the head of the Fire Department is supreme.

FOURTH AMENDED COMPLAINT

1    30.    Miller had further reasonable cause to believe the August 23, 2010
2    advice was false because on or about May 16, 2011, Trutanich, Carter, Echeverria
3    and Houston authorized legal advice signed by Deputy City Attorney Jennifer
4    Handzlik stating that the Fire Chief's functions of discharging and suspending
5    Fire Department employees are subject to review and corrective instruction from
6    the Fire Commission.  The May 16, 2011 advice cannot be reconciled with the
7    August 23, 2010 advice.  On or about June 21, 2011, Dean and Distinguished
8    Professor of Law Erwin Chemerinsky provided a written opinion explaining that
9    the City Attorney's August 23, 2010 advice was "mistaken" and that the
10   Independent Assessor has the authority to access all confidential personnel
11   information in the Fire Department.  Chemerinsky's opinion provided additional
12   information establishing that Miller's reasonable cause to believe that City
13   attorneys violated state laws governing the conduct of attorneys in issuing the
14   August 23, 2010 false and inaccurate advice because Chemerinsky was the
15   primary author of the Los Angeles City Charter.
16   31.    On September 2, 2011, Carter advised Miller that Miller would be
17   reported to the State Bar of California if Miller did not cease and desist criticizing
18   or questioning City Attorney legal services.  Miller had reasonable cause to
19   believe that Carter violated Rule 5-100 of the Rules of Professional Conduct by
20   making the threat against Miller.
21   32.    On or about February 21, 2012, Miller filed a complaint against
22   Trutanich, Carter, Echeverria, Houston, Jackson and Swanigan with the State Bar
23   of California, the Mayor's Office, Fire Commissioners and Office of the City
24   Attorney, that Miller believed the attorneys had failed to: 1) employ means only as
25   are consistent with the truth pursuant to California Business and Professions Code
26   section 6068(d); 2) respond promptly to reasonable status inquiries and to keep
27   clients informed pursuant to section 6068(m); 3) avoid acts involving dishonesty
28   pursuant to section 6106; 4) perform legal services with competence pursuant to

FOURTH AMENDED COMPLAINT

1    Rule 3-110; and 5) adequately manage and supervise subordinates pursuant to

2    Rule 3-500 of the California Rules of Professional Conduct as it relates to the

3    *Response* and the August 23, 2010 advice. Carter also violated Rule 5-100 by

4    threatening Miller with a State Bar claim in retaliation for making his protected

5    speech and raising his concerns.

6        33.     This February 21, 2012, complaint disclosed that City attorneys were

7    engaged in an illegal and unethical attempt to deny voter approval of Charter

8    section 523 because their legal services had been criticized.

9        34.     On June 12, 2012 and again on June 18, 2012, Miller made written

10    requests for the production of Fire Department misconduct investigation files.

11    The Fire Department failed to provide the records in response to these requests

12    despite the Chief's directive of July 14, 2010 Miller had never been denied access

13    to misconduct investigation files before he filed formal complaints with the State

14    Bar. The Fire Chief told Miller that the records would not be provided pursuant to

15    advice provided by Jackson and that the Fire Chief had to follow the City

16    Attorney's advice. Miller is informed and believes that Carter and Echeverria

17    approved direction to Jackson to provide advice to deny Miller access to

18    misconduct investigation files based upon his protected complaints to the State

19    Bar. The advice to stop Miller from accessing investigation information was four

20    months after Miller filed formal complaints with the State Bar and City Attorney's

21    Office. Miller and his staff were unable to perform their work as a result.

22        35.     On July 8, 2012, Miller submitted an Audit Impediments Report to

23    the Fire Commission, Mayor's Office, Decker, Kettles, City Attorney's Office,

24    Trutanich, Carter Echeverria, Houston and Jackson disclosing information Miller

25    believed showed violations of state law by City attorneys as previously described.

26        36.     On or about July 11, 2012, Miller filed a second complaint with the

27    State Bar, City Attorney's Office and Mayor's Office against Trutanich and

28    Jackson after the Fire Chief was advised, and followed City attorney advice, to

1   stop Miller's access to investigative files. This second complaint was filed

2   because Miller had reasonable cause to believe City attorney Defendants were

3   violating state laws governing the conduct of attorneys in California and abusing

4   their legal authority in an attempt to prevent Miller's access to files that were

5   necessary to perform his official duties. The City Attorney has the power and

6   duty to advise the Fire Commission pursuant to Charter section 271. During a

7   public meeting on July 17, 2012, Echeverria and Houston advised the Fire

8   Commission to *not grant* Miller's request for an order requiring the Fire Chief to

9   provide Miller with access to Fire Department information. This advice was

10  approximately five months after Miller filed his complaints with the State Bar and

11  to the City Attorney's Office. The Fire Commission followed the City Attorney's

12  wrongful advice.

13       37.    On or about July 23, 2012, Miller's access to the Fire Department's

14  Complaint Tracking System (CTS) and the Discipline Tracking System (DTS)

15  was suddenly terminated without any warning. Miller's access to CTS and DTS

16  had never been interrupted before filing formal complaints with the State Bar

17  about five months earlier. Miller is informed, believes and alleges that Trutanich,

18  Carter and Echeverria authorized advice to the Fire Department to stop Miller's

19  access to CTS and DTS because he filed two complaints with the State Bar of

20  California and City Attorney's Office against them. Miller's access to CTS and

21  DTS was stopped less than two weeks after his second complaint was filed with

22  the State Bar and City Attorney's Office. Miller and his staff were unable to

23  perform their work.

24       38.    In early September 2012, Tolentino advised Trutanich that Fire

25  Commissioners intended to hold a closed session meeting to discuss public

26  employee discipline, dismissal and release and placed Trutanich on notice that the

27  August 23, 2010 advice was false and inaccurate. Miller recommended holding a

28  closed session meeting on September 28, 2012 so he could perform his express

1  duty to assist Fire Commissioners with their oversight of the internal disciplinary
2  process and how the Fire Department was   handling  an anonymous complaint of
3  racial discrimination that had been received in the Fire Commission's Office.  At
4  the time of the meeting, Deputy City Attorney Carlos de la Guerra advised
5  Commissioners in open session that they could not meet in closed session.  Miller
6  is informed, believes and alleges that Carter approved this advice to not hold a
7  closed session meeting because Miller had filed his complaints with the State Bar,
8  Mayor's Office and Office of the City Attorney criticizing legal services.

9      39.    On or about September 24, 2012, Miller provided Fire
10  Commissioners, the City Attorney's Office, Trutanich, Carter, Echeverria,
11  Houston, Swanigan, Jackson , the Mayor's Office, Decker  Kettles, and the public
12  with a *Report Concerning State Bar Complaint and Request to Release Redacted*
13  *Documents* (Report Concerning State Bar Complaint), which disclosed that
14  Miller: 1) had a right to appeal the State Bar's closure of his complaint; 2) had
15  reasonable cause to believe Trutanich, Carter, Echeverria, Houston, Swanigan and
16  Jackson had violated state laws; and 3) was requesting that Fire Commissioners
17  release information to the State Bar, that Miller had not previously provided. This
18  report summarized information describing state law violations that were set forth
19  in the complaint filed by Miller with the State Bar and City Attorney's office on
20  February 21, 2012.  This Report Concerning State Bar Complaint disclosed that
21  City attorneys were engaged in an illegal and unethical attempt to deny voter
22  approval of Charter section 523 because some of their legal services were
23  criticized.

24      40.    On or about October 2, 2012, Trutanich, Carter and/or Echeverria
25  authorized Deputy City Attorney Carlos de la Guerra to advise the Fire
26  Commissioners that Miller's State Bar complaint was filed in Miller's individual
27  capacity and not in any official capacity.  This release of information was granted
28

FOURTH AMENDED COMPLAINT

1   by the Fire Commission but the documents were not released at the direction of
2   the City Attorney's Office.

3        41.    On or about October 19, 2012, Decker and Kettles notified Miller
4   that Houston, Jackson and Swanigan filed a complaint with the Mayor's Office,
5   alleging that Miller violated City policy by creating a hostile work environment on
6   the basis of race and gender.  The complaint was maliciously false and intended to
7   retaliate against Miller for criticizing legal services. This maliciously false
8   complaint resulted in Miller being subjected to an unwarranted investigation.
9   Houston, Jackson and Swanigan are African-American females. Miller is a White
10   male.  While Miller and former Fire Commission President Hudley-Hayes (an
11   African-American female) both criticized and complained about the legal advice
12   provided by City attorneys,  Houston, Jackson and Swanigan only filed a false and
13   retaliatory complaint against Miller because he is a White male.

14        42.    Kettles was responsible for monitoring and supervising the
15   investigation of the complaint filed by Houston, Swanigan and Jackson. It was
16   Kettles who informed Miller that a complaint had been filed and it was Kettles
17   who communicated with Miller about the progress of the investigation after the
18   complaint was filed.  Shortly after Kettles assumed responsibility for monitoring
19   and supervising the investigation, Miller informed Kettles that a timely
20   investigation of the complaint filed by Houston, Jackson and Swanigan was
21   required because Miller had an application for alternative employment pending.

22        43.    On or about November 6, 2012, Miller applied for a full time version
23   of a professional position he previously held for seven years.  The application
24   required that Miller disclose the discrimination complaint filed against him.  In
25   December 2012, Miller was notified he would not be invited to interview.  Miller
26   was not provided with information concerning the investigative findings before
27   his application was rejected, despite his request to Kettles for such information
28   before he filed his application.

14

44.   On or about December 10, 2012, Miller filed a tort claim with the City of Los Angeles.  The claim is a legal proceeding because state law requires the presentation of a claim legal action may be filed.  Miller had no job related duty or obligation to present such a claim.  The claim set forth the same information set forth in his complaints to the State Bar, Mayor's Office and City Attorney's Office disclosing what Miller has reasonable cause to believe were violations of the State Bar Act and the Rules of Professional Conduct by city lawyers.  The claim also alleged that Miller suffered retaliation after reporting these state law violations on February 21, 2012 and thereafter as provided herein. The December 10, 2012 tort claim disclosed that City attorneys were engaged in an illegal and unethical attempt to deny voter approval of Charter section 523 because legal services were criticized by Miller.

45.   On or about January 9, 2013, Miller issued a press release stating that he filed a complaint with the State Bar and a tort claim with the City of Los Angeles.  The press release was provided to the Fire Commission and Mayor's Office and disclosed information that Miller had reasonable cause to believe were violations of state law by City attorneys.

46.   On January 10, 2013, the Los Angeles Times published a news article that quoted Carter as saying: 1) he was going to file a personnel complaint against Miller with the City; and, 2) that Miller was targeting minorities and women.  Miller believes Carter knew that his statement about targeting minorities and women was absolutely false because he had repeatedly provided Carter with information that Miller's complaints were meritorious.

47.   On March 7, 2013, Miller filed another tort claim with the City alleging that Houston, Jackson and Swanigan filed an intentionally false complaint of racial and gender discrimination and hostile work environment for the purpose of retaliating against Miller after he invoked his right to report violations of state law to the State Bar and to the Office of the City Attorney.  The

15

1  tort claim also alleges that Carter made intentionally false and defamatory
2  statements about Miller to the Los Angeles Times for the purpose of retaliating
3  against Miller for reporting violations of state law.  The claim presented a
4  summary of state law violations Miller previously filed with the State Bar and
5  Office of the City Attorney.  The claim is a legal proceeding required as a
6  prerequisite to the filing of a lawsuit and   was not part of his job duties.
7      48.   On or about March, 2013, Miller filed and then requested a right to
8  sue letter from the California Department of Fair Employment and Housing
9  (DFEH) alleging that Houston, Swanigan and Jackson had violated provisions of
10  the Fair Employment and Housing Act (FEHA) on the basis of Miller's race and
11  gender (reverse discrimination).  This request is a prerequisite before the filing of
12  a lawsuit.  Miller had no job duty to present such a request.  The FEHA claim
13  alleged that Houston, Jackson and Swanigan violated state law by making false
14  claims of race and gender discrimination against Miller.
15      49.   On or about May 2, 2013, Miller filed a complaint with Raelynn
16  Napper and the City of Los Angeles alleging that Houston, Jackson and Swanigan
17  made a knowingly and intentionally false complaint of discrimination and hostile
18  work environment against Miller. City employees can be terminated for making
19  false charges of discrimination pursuant to *Joaquin v. City of Los Angeles* (2012)
20  202 Cal.App.4th 1207, 1221-26. The Mayor's Office and City Attorney's Office
21  had failed to prevent and protect Miller from retaliation by employees of the City
22  Attorney's office.  Miller had no job duty to present such a claim to the City of
23  Los Angeles.  Miller is informed, believes and alleges that Garcetti, Llewellyn,
24  Decker and Feuer became aware of this complaint prior to the time that Miller's
25  employment was terminated.  On or about May 22, 2013, Miller again submitted
26  an application for a full-time professional position he previously held on a part-
27  time basis and had to disclose the race, gender discrimination and hostile work
28

FOURTH AMENDED COMPLAINT

1  complaint which was still pending after seven months. Miller was not invited to
2  interview for the position.

3       50.   On June 24, 2013, Swanigan filed a lawsuit in state court, falsely
4  alleging that Miller engaged in race, gender discrimination and harassment.
5  Miller was served with this lawsuit on July 19, 2013. On July 1, 2013, Houston
6  and Jackson filed and served Miller with a separate lawsuit in state court falsely
7  alleging race and gender discrimination and harassment. After being served with
8  these state court lawsuits, Miller was notified by the attorney representing the City
9  who was also named as a defendant in the lawsuits of Swanigan, Jackson and
10 Houston, that he would not be defended or indemnified because Miller was acting
11 outside the course and scope of his employment in criticizing and complaining
12 about Houston, Swanigan, Jackson and others. Miller believes that in other
13 similar cases, the City and Fire Department employees are defended and
14 indemnified when accused of harassment and/or discrimination. Miller believes
15 his request for a defense and indemnity was denied because he filed complaints
16 against the City attorneys with the State Bar of California, DFEH and other
17 government agencies.

18      51.   On and after July 17, 2013, Miller filed and served his federal lawsuit
19 (this action), alleging that the City of Los Angeles, Trutanich, Carter, Echeverria,
20 Houston, Swanigan and Jackson violated Miller's rights under the First
21 Amendment, Labor Code section 1102.5 and committed other civil wrongs.
22 Miller believes that Garcetti, Llewellyn, Decker and Feuer had actual knowledge
23 that Miller had filed his lawsuit against the City and some of its employees before
24 Miller was terminated. On August 26, 2013, Miller filed a Charge of
25 Discrimination with the EEOC alleging that while the City initiated an
26 investigation into allegations lodged by Houston, Swanigan and Jackson and had
27 violated its own policies requiring a prompt investigation by failing to investigate
28 Miller's complaint of May 2, 2013. The Charge of Discrimination is a legal

1    prerequisite before Miller is permitted to file a lawsuit claiming violations of Title
2    VII. Miller had no job duty to present such a claim. Miller believes that Garcetti,
3    Llewellyn, Decker and Feuer had actual knowledge that Miller had filed the
4    Charge of Discrimination before Miller was terminated.

5          52.    On and after August 27, 2013, Miller filed and served his first
6    amended complaint (this action) alleging the City of Los Angeles, Trutanich,
7    Carter, Echeverria, Houston, Jackson and Swanigan violated Miller's rights under
8    the First Amendment and Labor Code section 1102.5. Miller believes that
9    Garcetti, Llewellyn, Decker, Ibarra and Feuer had actual knowledge that Miller
10   filed a first amended lawsuit against the City and its employees before Miller was
11   terminated. In late August or early September 2013, Miller received an August 28,
12   2013 memo stating that the investigation into the complaints of Houston,
13   Swanigan and Houston had been completed and no evidence had been found
14   suggesting that Miller engaged in conduct violating the City's policies against
15   race or gender discrimination. The investigation conducted by an independent
16   investigator determined there was no merit to the maliciously false claim brought
17   by Houston, Jackson and Swanigan. The August 28, 2013 memo explained that
18   the investigation into the false allegations made by Houston, Jackson and
19   Swanigan was completed June 5, 2013. Therefore, the City knew that the
20   allegations made by Houston, Jackson and Swanigan were in fact completely
21   false. Despite this knowledge, the City failed and refused to defend and indemnify
22   Miller in the state law suits requiring him to incur fees and expenses on his own
23   Miller had made verbal or written requests to Kettles and private attorneys
24   representing the City asking that the investigation results be provided because
25   Miller was seeking alternative employment. Despite these requests, the favorable
26   result was not provided until months after the investigation had been completed.
27   The failure to provide the favorable investigative result prevented Miller from
28   providing a prospective employer with this information while his employment

FOURTH AMENDED COMPLAINT

application was pending from May 22, 2013 to July 24, 2013. Miller believes that the results were intentionally withheld to retaliate against Miller for his speech. The City explained the delay in providing favorable information concerning the investigation by saying that it was withheld while the parties were engaged in mediation. This is an untruthful statement because no mediation proceedings took place after the investigation was concluded.

53.     In a letter and report submitted to the City, Mayor's Office, City Attorney's Office and Fire Commission on September 4, 2014, Miller reported that the Fire Department had entered into three conciliation agreements with the EEOC. Miller reported that the conciliation agreements resulted from charges of discrimination in the Fire Department and that access to disciplinary and investigation information was required so the Independent Assessor and Fire Commission could ensure compliance with the conciliation agreements which required compliance with federal laws prohibiting employment discrimination, sexual harassment, racial discrimination and retaliation. Miller was terminated from his employment five weeks after advocating that access to Fire Department information was required in order to ensure compliance with federal anti-discrimination laws for the three conciliation agreements.

54.     In September or October 2013, Miller made it known to the Fire Department and Ibarra that he intended to report on the Fire Department's failure to conduct a timely, thorough or complete investigation of a Fire Department employee whose conduct contributed to prior adverse jury verdicts and an award of punitive damages involving EEO violations. Miller was terminated shortly after disclosing that he intended to report on the failure to conduct a timely, thorough and complete investigation as required by federal anti-discrimination laws.

55.     On September 10, 2013, Miller presented another tort claim for indemnity after the City denied Miller a defense in connection with lawsuits

19

1  brought against him by Houston, Jackson and Swanigan. The claim alleged that a
2  defense was denied for the purpose of retaliating against Miller for engaging in
3  protected speech and also sought damages for violations of Miller's right to
4  engage in protected speech.    The claim also summarized the state law violations
5  previously presented to the State Bar, Mayor's Office and to the City Attorney's
6  Office. Miller had no job duty to file the claim. On September 23, 2013, the City
7  responded to the September 10, 2013 claim by stating that his tort claim was being
8  referred to the City Attorney's Office. Miller was terminated from his
9  employment a month after he presented his tort claim and about three weeks after
10  the claim was referred to the City Attorney's office.
11         56.    On or about September 11, 2013, Feuer received a complaint on
12  behalf of Miller alleging that Feuer's subordinates Houston, Jackson and
13  Swanigan had filed a knowingly false complaint of race and gender discrimination
14  and that disciplinary action was required pursuant to *Joaquin v. City of Los
15  Angeles* (2012) 202 Cal.App.4th 1207 in light of the negative findings of the
16  internal investigation of the City. Feuer was advised that the City's own
17  investigation disclosed that there was no merit in the complaint of his
18  subordinates. The complaint provided examples establishing that his subordinate
19  attorneys had provided false information. For example, it was pointed out that
20  Swanigan claimed Miller harassed and discriminated against a former fire chief on
21  the basis of race. Miller showed the fire chief had left the Fire Department before
22  Miller was hired by the City. Feuer took no action against any of his employees
23  but is believed to have communicating with others from the Mayor's office to
24  terminate Miller
25         57.    On September 11, 2013 Feuer received a second complaint on
26  Miller's behalf disclosing that Feuer's subordinates had engaged in violations of
27  the State Bar Act. Feuer was provided a  copy of the complaint filed previously
28  with City Attorney Trutanich on February 21, 2012, and with other reports which

FOURTH AMENDED COMPLAINT

1   disclosed violations of state law committed by his subordinate City Attorneys and
2   a copy of Chemerinsky's June 21, 2011 opinion. Feuer failed and refused to take
3   prompt, effective and reasonable corrective action. Miller believes that instead of
4   taking corrective action, Feuer complained to Garcetti and/or others about Miller.
5   Miller was terminated from his employment approximately one month after this
6   complaint was presented to Feuer in September 21, 2013.

7         58.    Ibarra received a copy of Miller's first amended complaint (this case)
8   which placed Ibarra on actual notice that Miller suffered repeated retaliation in
9   violation of the First Amendment and Labor Code section 1102.5. Ibarra failed
10  and refused to take prompt corrective action to protect Miller. Fazio, the sole Fire
11  Commissioner holdover from the previous administration had full knowledge of
12  all events including retaliation and harassment suffered by Miller from the start of
13  events alleged in this complaint and is believed to have informed fellow Fire
14  Commissioners Ibarra, Glazier, Woods-Gray and Hara about the history of
15  Miller's speech and the retaliation he suffered as a result.

16        59.    On October 15, 2013, Ibarra, Glazier, Fazio, Woods-Gray and Hara
17  voted to terminate Miller's employment in a closed-door meeting without Miller
18  being present or having an opportunity to respond. Miller believes that Garcetti
19  and Llewellyn ordered Ibarra and Glazier and others to direct all Fire
20  Commissioners to terminate Miller's employment because Miller filed
21  complaints with the State Bar and other governmental agencies alleging that City
22  attorneys violated state and federal law, issued a press release criticizing City
23  attorneys, lodged complaints with Feuer, presented repeated tort claims, filed a
24  charge of discrimination with the EEOC and DFEH and filed his federal lawsuit
25  (this action). Within 30 days before Miller was terminated from his employment
26  on October 15, 2013, Ibarra further told Miller that his complaints and lawsuit
27  made it difficult for City attorneys. Ibarra told Miller that the Mayor's Office was
28  working on resolving the lawsuits and they were close to "settling." Glazier told

FOURTH AMENDED COMPLAINT

1  Miller in the same time frame that he needed to have his lawsuit resolved.  On

2  October 15, 2013, Ibarra and Glazier both told Miller that Llewellyn had directed

3  the Fire Commissioners to terminate Miller's employment without cause.  Ibarra

4  and Glazier had said to Miller that *"we all serve at the pleasure of the Mayor"*.

5       60.     Another tort claim was presented to the City on October 24, 2013

6  alleging that Miller was terminated from his position as Independent Assessor in

7  retaliation for having engaged in speech disclosing violations of state and federal

8  statutes by members of the City Attorney's Office. Miller alleges that he was

9  terminated in violation of Labor Code § 1102.5, violations of California Civil

10  Code § 52.1, violation of Labor Code §6310, and other legal theories committed

11  by the City employees in retaliation for Miller's protected speech.  It also

12  referenced the information presented to Ibarra and to Feuer of wrongdoing and the

13  pattern of harassment by city attorneys against Miller for his protected speech.

14       61.     On or about April 7, 2014, Miller filed with EEOC a Charge of

15  Discrimination, Case No. 480-2014-01773C, alleging that he was terminated "(1)

16  in retaliation for opposing practices made unlawful by Title VII and/or for making

17  a charge, assisting with, participating in and supporting proceedings under Title

18  VII; (2) on the basis of race, color, and/or sex; and (3) for exercising his First

19  Amendment and state law rights. The charge alleges that Miller was terminated

20  after filing charges of discrimination and claims the City of Los Angeles violated

21  its own policies which require the City to promptly provide Miller with

22  information about its investigation of Miller, and promptly conduct an

23  investigation of his complaint against City employees. Miller also alleged that he

24  was terminated only after he repeatedly charged and claimed he was being

25  harassed and discriminated against on the basis of his race, color and gender.

26  Instead of taking disciplinary action against Houston, Swanigan and Jackson, who

27  are African-American women, Miller was terminated because he is a white male.

28  The charge of discrimination also alleged that Miller was terminated shortly after

22

1    advising that his access to information was required to ensure compliance with

2    three conciliation agreements entered into between the Fire Department and the

3    EEOC, and he was terminated to reduce the risk that the EEOC would take action

4    pursuant to the conciliation agreements. The Charge of Discrimination also

5    alleged Miller was discriminated against when he was falsely accused of

6    discrimination and harassment by Swanigan, Jackson and Houston.

7         62.    The plaintiff has timely exhausted all of his administrative remedies

8    for all claims that he makes in this complaint.

9                          **FIRST CLAIM FOR RELIEF**

10             **VIOLATION OF CIVIL RIGHTS 42 USC § 1983**

11                          **(FIRST AMENDMENT)**

12                    *(As to all individually named defendants*

13                       *except the City of Los Angeles)*

14        63.    Plaintiff incorporates by reference the allegations contained in

15    Paragraphs 1 through 62 as though fully set forth herein.

16        64.    From March 2010 to his termination on October 15, 2013, Miller

17    exercised his First Amendment rights and petitioned government agencies by

18    speaking out on matters of public concern. Miller brought to light inefficiencies,

19    mismanagement, wrongdoing, official and high level misconduct, breaches of the

20    public trust, and violations of state or federal law by Trutanich, Carter, Echeverria,

21    Houston, Swanigan and Jackson. Miller also knows that Garcetti, Llewellyn and

22    City Attorney Mike Feuer became aware of these same issues after July 1, 2013

23    and before his termination of October 15, 2013.  Miller exercised his First

24    Amendment rights by publication of:

25             a.  the March 27, 2010 *Assessment* including his criticism of the

26                 insufficient, inadequate and incompetent legal services provided by

27                 the City Attorney's Office to the Fire Commissioners;

28

b. The February 21, 2012 complaint to the State Bar of California and City against Trutanich, Echeverria, Swanigan, Carter, Jackson, Houston and David Aguilera, for failing to: 1) employ means only as are consistent with the truth; 2) respond promptly to reasonable status inquiries; 3) avoid acts of dishonesty; 4) perform legal services with competence; and 5) adequately manage and supervise subordinates;

c. The July 11, 2012 complaint to the State Bar, City Attorney's Office and Mayor's Office reporting that Trutanich and Jackson issued false and inaccurate advice to stop Miller's access to investigation files. This second State Bar complaint summarized violations of state law and was filed because the City attorneys were improperly attempting to block Miller's access to files necessary for the discharge of his official duties just a few months after Miller filed his first State Bar complaint;

d. The September 24, 2012 Report Concerning State Bar Complaint which reported to the City, City Attorney's Office, Mayor's Office, Fire Commission and public that City attorneys had violated state laws governing the conduct of attorney's in California. This report provided a summary of the state law violations engaged in by City attorneys in an attempt to deny voter approval of Charter section 523 and stop Miller from performing his duties.

e. The December 10, 2012 Government Claim against the City of Los Angeles, alleging that City attorneys retaliated against Miller after he reported violations of state law in violation of Labor Code section 1102.5. The claim set forth a summary of state law violations and disclosed that City attorneys were engaged in an illegal and unethical attempt to deny voter approval of Charter section 523;

24

FOURTH AMENDED COMPLAINT

f. The January 9, 2013 press release disclosing and summarizing Miller's State Bar complaint and December 10, 2012 tort claim. Miller was under no official duty to issue a press release;

g. The March 7, 2013 Government Tort Claim, in which Miller alleges that Houston, Jackson and Swanigan filed an intentionally false complaint of racial and gender discrimination and hostile work environment against Miller to retaliate against Miller; that Carter made intentionally false and defamatory statements about Miller to the Los Angeles Times for the purpose of retaliating against Miller for his reporting violations of state law to the State Bar about the Office of the City Attorney  The claim set forth a summary of state law violations engaged in by City attorneys;

h. The March, 2013 DFEH claim and request for right to sue , alleging that Houston, Jackson and Swanigan violated state law by making false claims of race and gender discrimination against Miller.  This claim is a prerequisite under state law before the filing of a lawsuit alleging violations of the FEHA;

i. The May 2, 2013 complaint to the Raelyn Napper, Equal Employment Opportunity Section Manager for the Personnel Department for the City of Los Angeles. This complaint alleges that City attorneys Houston, Swanigan and Jackson (1) made intentionally false complaints of discrimination and hostile work environment against him, (2) that their false complaint was made on the basis of race and gender, which is a form of reverse discrimination and was retaliation against Miller for his complaints about the City Attorney's Office and (3) that the City of LA failed to prevent the ongoing retaliation against him;

FOURTH AMENDED COMPLAINT

j.  This federal court lawsuit filed on  July 17, 2013 (this action) alleging  violations of Miller's rights under the First Amendment and Labor Code section 1102.5, as well as other civil wrongs;

k.  The August 26, 2013 EEOC Charge of Discrimination, charge number 480-2013-03518, alleging that the City violated anti-discrimination laws and its own policies by failing to investigate the complaint Miller filed with the City on May 2, 2013;

l.  The August 27, 2013 First Amended Complaint  in  this action alleging retaliation and violations of  Miller's rights under the First Amendment and Labor Code section 1102.5;

m. The September 10, 2013 Government Tort Claim, for indemnity, contribution, and damages after the City denied Miller a defense in connection with lawsuits brought against him by Houston, Jackson and Swanigan in State Court despite the internal investigation finding of no wrongdoing on the part of Miller.  This claim set forth a summary of state law violations engaged in by City attorneys.  The City's September 23, 2013 response says it was being referred to the City Attorney's Office;

n.  The September 11, 2013 letter and related materials sent toFeuer disclosing that his subordinates (Echeverria, Swanigan, Jackson, and Houston) had engaged in violations of the State Bar Act;

o.  The September 11, 2013 letter and related materials sent to Feuer disclosing that the City's own investigation disclosed that his subordinates Houston, Jackson and Swanigan had filed a false claim of discrimination against Miller.  This letter also disclosed that Houston and Swanigan had provided false information in connection with their complaints against Miller.  An attorney violates the State

26

FOURTH AMENDED COMPLAINT

1   Bar Act by providing false information and is subject to discipline by
2   the City when they make false complaints of discrimination;
3   p.  The September 21, 2013 email from Miller to Ibarra, and the First
4   Amended Complaint attached to the email to Ibarra, which placed
5   Ibarra on actual notice that City attorneys had engaged in repeated
6   state law violations, that Miller had suffered repeated retaliation in
7   violation of the First Amendment and Labor Code section 1102.5 and
8   that Houston and Swanigan had filed false complaints of
9   discrimination against Miller. Fazio, the sole Fire Commissioner
10  holdover from the previous administration had full knowledge of all
11  events including retaliation and harassment suffered by Miller from
12  the start of events and is believed to have informed fellow Fire
13  Commissioners Ibarra, Glazier, Woods-Gray and Hara about the
14  history of Miller's speech and the retaliation against it;
15  65.    Miller exercised his First Amendment rights by speaking as a private
16  citizen and not in his official capacity when he published or filed complaints
17  alleging violations of law by City attorneys with the State Bar, and other
18  government agencies for the City of Los Angeles, his tort claims with the City of
19  Los Angeles, his press release, his DFEH and EEOC charges, his complaints to
20  Feuer, and his federal lawsuit.
21  66.    The Charter fails to provide Miller with any authority to review or
22  comment on the activities of the City Attorney's Office.  On August 8, 2011
23  Carter threatened that Miller would not be defended or indemnified in the event
24  Miller was sued for failing to follow the August 23, 2010 advice.  On September
25  2, 2011 Carter wrote that management and operations of the City Attorney's
26  Office are not subject to the Independent Assessor's review and the expenditure of
27  City funds and resources for that purpose is "*ultra vires* and illegal." On
28  September 2, 2011, Carter threatened that Miller would be reported to the State

27

Bar if he did not stop criticizing legal advice and services. On or about October 2, 2012, Trutanich, Carter and Echeverria authorized and directed de la Guerra to advise the Fire Commission that Miller filed his State Bar complaint in his individual capacity. Houston wrote an email to Miller on October 13, 2011, stating that the City Attorney's Office is not within the "purview" of the Independent Assessor.

67.    Miller alleges that Garcetti, Llewellyn, Feuer, Ibarra, Glazier, Fazio, Woods-Gray and Hara caused or contributed to each of the adverse employment actions as described herein by and through their direct, knowing and intentional personal participation. The plaintiff believes that each adverse employment action as described herein was the result of and caused by a civil conspiracy, concerted action, unity of purpose, common design, understanding and/or meeting of the minds engaged in for the intended purpose and objective of causing all of the adverse employment actions to Miller.

68.    The plaintiff believes that each of the defendants was the direct cause of each of the adverse employment actions described herein by approving, condoning, encouraging, orchestrating, permitting, ratifying and/or tolerating their coworkers, subordinates and superiors to punish the plaintiff for invoking his rights pursuant to the First Amendment and Labor Code section 1102.5 and that such conduct has been persistent, constant and on-going since the time Miller first alleges to the time of his wrongful termination. The plaintiff further believes that each of the defendants was the direct cause of each of the adverse employment actions described herein by failing to take prompt, effective and reasonable corrective action after learning of the retaliatory and harassing conduct described herein.

69.    Miller's First Amendment protected speech and repeated petitions to government agencies pursuant to Labor Code section 1102.5 was a substantial or motivating factor in the adverse employment actions taken against him. The

28

1    defendants would not have engaged in any of the adverse employment actions

2    described herein absent the plaintiff's protected speech and repeated petitions to

3    government agencies.

4         70.    As a proximate result of the defendant's adverse employment actions

5    and retaliatory acts, as described herein, the plaintiff was prevented from fully

6    performing his job duties and has been denied employment, income and benefits

7    of a kind and at a salary level comparable to the position from which he was

8    terminated, has been denied the ability to compete for comparable positions or

9    promotional opportunities and as a further proximate result has suffered severe

10   emotional distress and other injuries and damages in an amount within the

11   jurisdiction of this federal court.

12        ***Allegations as to Feuer***:

13        71.    Feuer received numerous complaints from Miller alleging serious

14   misconduct by attorneys under Feuer's control once he took office on July 1,

15   2013. Miller's termination on October 15, 2013, was sufficiently close in time to

16   Feuer receiving: 1) Miller's  July 17, 2013 federal court lawsuit alleging

17   violations of protected speech and that City attorneys retaliated against Miller; 2)

18   Miller's August 26, 2013 charge of discrimination alleging a failure to conduct an

19   investigation of discrimination engaged in by his subordinates; 3) Miller's August

20   27, 2013 first amended federal lawsuit alleging retaliation by City attorneys; 4)

21   Miller's September 10, 2013 tort claim that was referred to the City Attorney's

22   Office for handling on September 23, 2013; 5) the September 11, 2013 letter,

23   Chemerinsky opinion and complaint filed with the prior City Attorney disclosing

24   City attorneys subordinate to Feuer violated state laws governing the conduct of

25   attorneys in California; and 6) the September 11, 2013 letter disclosing that the

26   City's investigation determined the complaint filed by his subordinates had no

27   merit and provided examples establishing that Houston and Swanigan made

28   knowing and factually false representations when lodging complaints against

1   Miller. The September 11, 2013 complaint Feuer received that Feuer discipline

2   Houston, Jackson and Swanigan for having filed a false complaint of

3   discrimination as required pursuant to *Joaquin v. City of Los Angeles* (2012) 202

4   Cal.App.4th 1207. Miller is informed, believes and alleges that instead of

5   undertaking the unpleasant task of taking disciplinary action against senior

6   African-American female attorneys in his office, Feuer chose to lobby the

7   Mayor's Office to have Miller terminated from his employment in an attempt to

8   stop Miller.

9   **_Allegations as to Garcetti and Llewellyn_:**

10         72.     Shortly after Garcetti became the City of Los Angeles Mayor and

11   Llewellyn became Legal Counsel to the Mayor on July 1, 2013, they received

12   notice that Miller: 1) filed a federal court lawsuit against the City and individual

13   City employees on July 17, 2013; 2) filed a charge of discrimination against City

14   employees with the EEOC on August 26, 2013; 3) filed an August 27, 2013

15   federal court lawsuit against the City; 4) filed a September 10, 2013 tort claim

16   against the City; 5) filed a September 11. 2013 complaint with Feuer alleging that

17   City attorneys had violated state laws governing the conduct of attorneys in

18   California; 6) filed a September 11, 2013 complaint alleging City attorneys filed a

19   false claim of discrimination against Miller and request that City attorneys be

20   disciplined. At the end of August or early September 2013, Garcetti and

21   Llewellyn received a report claiming that Miller had violated the prior Mayor's

22   directive by issuing a press release that summarized his State Bar complaints

23   against City attorneys and his tort claims against the City.

24         73.     Decker has been a deputy mayor since before Miller filed his

25   complaints with the State Bar and other agencies and continues to be Garcetti's

26   deputy mayor. When Miller provided Decker with a copy of his first State Bar

27   complaint, Decker was angry that he would file such a complaint. Decker has

28   been angry and frustrated by Miller's continued complaints and failure to accept

1   her repeated attempts to compromise the voters' approval of Charter section 523.

2   Miller is informed, believes and alleges that Decker has advised Garcetti and

3   Llewellyn that Miller should be terminated given the complaints filed.

4        74.   Before he was terminated, Ibarra told Miller the Mayor's Office was

5   working to resolve his lawsuit and they were close to settling, yet there were no

6   settlement negotiations with Miller or his attorneys after Garcetti took office.   On

7   October 15, 2013, Ibarra and Glazier told Miller that Llewellyn had directed the

8   Fire Commission to terminate Miller without cause.   They also told Miller that we

9   all serve at the pleasure of the Mayor.

10        75.   Miller's protected speech and the termination orders given by

11   Garcetti and Llewellyn were close enough in time to infer retaliation. Both

12   Garcetti and Llewellyn were new to the Mayor's Office, in July of 2013 but

13   became aware of the issues that had been raised by Miller before Miller was

14   terminated on October 15, 2013 and that the motivating factor for directing his

15   termination was his ongoing federal lawsuit and prior complaints of misconduct

16   against members of the Office of the City Attorney.   Further, both were aware of

17   Miller's prior complaints to the Office of the Mayor raising these same issues

18   about the Office of the City Attorney and misconduct.

19        76. Garcetti and Llewellyn expressed opposition to Miller's speech in

20   directing that the Fire Commissioners fire Miller without cause based upon the

21   past protected speech and petitioning activities of Miller alleging wrongful

22   conduct of the Office of the City Attorney.

23        ***As to the Fire Commissioner Defendants*:**

24        77.   On September 21, 2013, Ibarra received a copy of the plaintiff's first

25   amended complaint in this case.   The first amended complaint placed Ibarra on

26   actual notice that Miller suffered repeated retaliation in violation of the First

27   Amendment and Labor Code section 1102.5 after he filed the complaints, tort

28   claims, press release, charges of discrimination and request for a right to sue.

1  Ibarra failed and refused to take prompt corrective action to protect Miller.  Fazio,
2  the sole Fire Commissioner holdover from the previous administration had full
3  knowledge of all events including retaliation and harassment suffered by Miller
4  from the start of events alleged in this complaint and is believed to have informed
5  fellow Fire Commissioners Ibarra, Glazier, Woods-Gray and Hara about the
6  history of Miller's speech and the retaliation he suffered as a result.  Thus, all
7  commissioners would have known that the action taken to terminate Miller was
8  wrongful.

9      78.    Before Miller was terminated, Ibarra told Miller that his lawsuit,
10  complaints and claims made it difficult to work with City attorneys.  Before he
11  was terminated, Glazier told Miller that his lawsuit needed to be resolved.  On
12  October 15, 2013, Ibarra, Glazier, Fazio, Woods-Gray and Hara voted to terminate
13  Miller's employment in a closed-door meeting without Miller being present to
14  respond to any charges.  Garcetti and Llewellyn ordered Ibarra and Glazier to
15  direct all Fire Commissioners to terminate Miller's employment.  Miller believes
16  and alleges that Garcetti, Llewellyn, Ibarra, Glazier, Fazio, Woods-Gray and Hara
17  authorized, directed and agreed to wrongfully terminate Miller's employment
18  because Miller had : 1) filed complaints with the State Bar, 2) issued a press
19  release, 3) filed complaints with Feuer, 4) presented repeated tort claims, 5) filed
20  charges of discrimination, 6) requested a right to sue from the DFEH and 7) filed a
21  federal court  lawsuit collectively alleging the City of Los Angeles and its
22  employees violated his rights.

23      79.    Miller has suffered damages as a result of the wrongful actions of the
24  Defendants and each of them for their violations of his First Amendment Rights in
25  an amount within the jurisdiction of this court.

26      80.    Miller contends that the actions described against all of the individual
27  defendants was done without any justification whatsoever except to deny Miller
28  his constitutional rights that others enjoy as citizens entitling Miller to a finding of

32

1   malice, fraud and oppression against each of the individual defendants for punitive
2   damages in an amount to punish each of the individual defendants for their
3   wrongful and illegal conduct.

4                              **SECOND CLAIM FOR RELIEF**
5                                **MUNICIPAL LIABILITY**
6                              *(As to the City of Los Angeles)*

7          81.    Plaintiff incorporates by reference the allegations contained in
8   Paragraphs 1 through 80 as though fully set forth herein.

9          82.    The plaintiff is informed, believes and alleges that the City of Los
10  Angeles has a longstanding, permanent, widespread, practice and custom of
11  bullying, harassing, retaliating against and threatening City employees who
12  exercise or attempt to exercise their First Amendment rights by commenting on
13  criticizing, complaining about or questioning legal services and legal advice. For
14  example, when the City Controller attempted to audit the City Attorney's Office,
15  Trutanich filed a lawsuit, at City expense, against the Controller to stop any
16  review of the City Attorney's Office. The plaintiff is also informed, believes and
17  alleges that this custom and practice is intended to prevent the voters from
18  properly evaluating the work of the City Attorney. The plaintiff is further
19  informed, believes and alleges that the conduct of Trutanich, Carter, Echeverria,
20  Decker, Kettles, Feuer, Garcetti and Llewellyn as previously described herein was
21  engaged in pursuant to and in strict conformity with such custom and under color
22  of law in doing the acts described herein. The plaintiff, therefore, alleges that the
23  City of Los Angeles is liable for causing each of the described adverse
24  employment actions in violation of the First Amendment.

25         83.    At all relevant times, Garcetti, Ibarra, Glazier, Fazio, Woods-Gray
26  and Hara had final policymaking authority over the plaintiff's employment. The
27  plaintiff is informed, believes and alleges these defendants exercised their final
28  policymaking authority by terminating plaintiff from his employment in

                                         33

                          FOURTH AMENDED COMPLAINT

1  retaliation for repeatedly exercising his rights pursuant to the First Amendment

2  and Labor Code section 1102.5. The City of Los Angeles is liable for causing this

3  unconstitutional retaliation.

4      84.    Trutanich and/or Feuer had final policymaking authority over the

5  conduct engaged in by Carter, Echeverria, Houston, Swanigan and Jackson. The

6  plaintiff is informed, believes and alleges Trutanich and Feuer actually knew of

7  the retaliatory conduct engaged in by their subordinates in violation of the First

8  Amendment but failed to stop the illegal behavior despite having sufficient

9  opportunity to do so. Trutanich and Feuer approved and ratified the conduct of

10 their subordinates and the basis for it by having their knowledge of the activities

11 and failing to act.

12     85.    As a proximate result of the: 1) City's custom of retaliating against

13 City employees who express or attempt to express their First Amendment rights;

14 2) the decision of final policymakers to terminate the plaintiff's employment in

15 retaliation for expressing his First Amendment rights, and 3) the ratification of

16 unconstitutional conduct by City Attorney policymakers, plaintiff has suffered

17 damages in an amount within the jurisdiction of this federal court.

18                    **THIRD CLAIM FOR RELIEF**

19              **RETALIATION AND VIOLATION OF**

20           **CALIFORNIA LABOR CODE § 1102.5**

21                  *(As to the City of Los Angeles)*

22     86.    Plaintiff incorporates by reference the allegations contained in

23 Paragraphs 1 through 85 as though fully set forth herein.

24     87.    At all relevant times and until his termination, the City of Los

25 Angeles was the plaintiff's employer and the plaintiff was entitled to the

26 protections of California Labor Code section 1102.5.

27     88.    At all times relevant to this action, the State Bar of California, City of

28 Los Angeles, Los Angeles City Attorney's Office, Los Angeles Mayor's Office,

FOURTH AMENDED COMPLAINT

1  Los Angeles Board of Fire Commissioners are government and/or law
2  enforcement agencies and the City of Los Angeles was Miller's employer within
3  the meaning of California Labor Code section 1102.5.

4      89.    The plaintiff's activities of: 1) February 21, 2012 complaints to the
5  State Bar and other government agencies; 2) July 8, 2012 Audit Impediments
6  Report; 3) September 24, 2012 Report Concerning State Bar Complaint: 4)
7  November 2012 Request for Review to the State Bar; 5) three government tort
8  claims filed with the City on December 10, 2012, March 7, 2013 and September
9  10, 2013; 6) January 2013 press release: 7) May 2, 2013 complaint to the City
10 alleging that Miller was discriminated against on the basis of his race and gender:
11 8) September 11, 2013 complaints to Feuer; and 9) and federal court lawsuit
12 complaint, disclosed information to government and/or law enforcement agencies,
13 and to his public entity employer, that the plaintiff had reasonable cause to believe
14 were violations of state or federal statutes, or violations or noncompliance with
15 state rules by City employees.   In direct response to the plaintiff's disclosures, the
16 City of Los Angeles, by and through Trutanich, Carter, Echeverria, Houston,
17 Swanigan, Jackson, Decker, Kettles, Garcetti, Feuer, Garcetti, Llewellyn, Ibarra,
18 Glazier, Fazio, Woods-Gray and Hara have engaged in a long-standing continuous
19 campaign of retaliatory adverse employment actions as previously described. This
20 includes among other things, being threatened with a state bar complaint, being
21 threatened that a failure to follow erroneous advice will result in not being
22 defended or indemnified in the event of a lawsuit, being the target of a false and
23 malicious complaint of discrimination in October 2012, being denied a defense
24 and indemnity when sued, being denied access to the Fire Chief's discipline
25 meetings, being denied access to misconduct investigation files,  having access to
26 CTS and DTS interrupted, being denied the ability to meet with Commissioners in
27 closed session to assist in their oversight and monitoring of discipline matters in
28 the Fire Department, being falsely accused of targeting minorities and women in

35

1   the newspaper, not being provided with favorable investigative results in a timely

2   manner when Miller was seeking alternative employment, and terminating the

3   plaintiff's employment on October 15, 2013.

4        90.    As a proximate result of the conduct of the employees of defendant,

5   City of Los Angeles, Miller has suffered damages in an amount within the

6   jurisdiction of this federal court.

7                           **FOURTH CLAIM FOR RELIEF**

8                         **VIOLATION OF TITLE VII /FEHA**

9                           *(As to the City of Los Angeles)*

10       91.    Plaintiff incorporates by reference the allegations contained in

11   Paragraphs 1 through 90 as though fully set forth herein.

12       92.    Plaintiff brings claims for violations of Title VII based on the Equal

13   Employment Opportunity Act, 42 USCS § 2000e-2 (a)(1), and of California law

14   based on the Fair Employment and Housing Act, Cal. Gov. Code § 12940(a), for

15   employment discrimination based on Miller's race and gender. In addition,

16   Plaintiff brings claims for violations of Title VII based on the Equal Employment

17   Opportunity Act, 42 USCS § 2000e-3, and of California law based on the Fair

18   Employment Housing Act, Cal. Gov. Code § 12940(h), for retaliation against

19   Miller's acts in making charges and participating in legal actions in enforcement

20   of his rights.  The federal and state acts cover and prohibit similar discriminatory

21   conduct against an employee based on race and gender.

22       93.    On or about March 2013, Miller timely filed and then requested a

23   right to sue letter from the California Department of Fair Employment and

24   Housing (DFEH) alleging that Houston, Swanigan and Jackson had violated

25   provisions of the Fair Employment and Housing Act (FEHA) on the basis of

26   Miller's race and gender (reverse discrimination) by making a false complaint.

27   This request is a prerequisite before the filing of a lawsuit alleging violations of

28   FEHA.  A right to sue letter was issued.

FOURTH AMENDED COMPLAINT

1     94.   On August 26, 2013, Miller timely filed a charge of discrimination

2 with the EEOC numbered 480-2013-03518C, upon filing of this lawsuit the

3 federal right to sue is provided. As of this date, federal investigation by the EEOC

4 is pending but will close upon this filing of the complaint. This charge noted that

5 while the City had claimed to have initiated an investigation into allegations

6 lodged by Houston, Swanigan and Jackson, in reality the City failed and refused

7 to initiate or conduct an investigation on the receipt of Miller's May 2, 2013

8 complaint of reverse discrimination. The charge of discrimination filed with the

9 EEOC also noted that the failure to investigate the allegations violated the City's

10 own Guidelines for Investigating Discrimination Complaints, which provide that

11 an investigation must start immediately, and the failure to initiate an investigation

12 itself was retaliation against Miller for making complaints against City attorneys.

13     95.   Miller filed a second EEOC charge of discrimination on April 10,

14 2014, numbered 480-2014-01773C. A second DFEH claim was timely filed

15 concurrently on or around this same date. Miller filed both claims for his wrongful

16 termination October 15, 2013 for, (1) retaliation for opposing practices made

17 unlawful by Title VII and/or for making a charge, assisting with, participating in

18 and supporting proceedings under Title VII and DFEH; (2) on the basis of race,

19 color, and/or sex discrimination, and (3) for exercising his First Amendment and

20 state law rights of whistle-blowing and speaking out against illegal activity. The

21 former Fire Commission President, Hudley-Hayes, and Vice President Tolentino,

22 informed the Mayor's Office in writing that Miller was being harassed and

23 requested assistance to stop the harassment of Miller and had also placed the City

24 Attorney and Fire Commissioners on notice that Miller was the victim of

25 discrimination and harassment. Despite such notice, no action was taken to stop,

26 prevent or protect Miller from the harassment and discrimination that he was

27 subjected to, and which ultimately resulted in his termination.

28

FOURTH AMENDED COMPLAINT

96.     Instead of taking appropriate disciplinary action against those who were responsible, the City retaliated against Miller for expressing valid criticisms of City Attorneys and violated Title VII and FEHA by terminating Miller's employment only because he repeatedly charged, claimed and complained that he was being harassed and discriminated against on the basis of his race, color gender, and for his whistleblowing activities.

97.     As a proximate result of the conduct of the defendants, plaintiff has suffered from a hostile work environment, which defendant had a legal duty to address and to alleviate the failure to mitigate this hostile work environment resulted in damages, for which plaintiff should be compensated.

98.     Miller is a White male who was terminated on the basis of his race, color and gender on October 15, 2013, after he repeatedly complained of misconduct engaged in by Houston, Jackson and Swanigan who are African-American females.  Instead of disciplining Houston, Jackson and Swanigan for engaging in conduct that violates state law governing the conduct of California attorneys and after the City determined they filed a false complaint of discrimination against Miller, the City terminated Miller after he engaged in lawful and protected activities.  The City made the decision to terminate Miller on the basis of race, color, gender and his protected whistleblowing activities.

99.     Despite an investigation that place the City actual notice that Houston, Jackson and Swanigan made false, illegal, malicious and offensive claims of race and gender discrimination against Miller, and written complaints from former Fire Commissioners to the Mayor's Office stating that Miller was being harassed, the City failed to protect Miller after he complained of this conduct and terminated his employment because he repeatedly resisted and complained that he was being harassed.  The City received additional notice that Miller was being discriminated against and harassed with false claims of race and sex discrimination when the City was served with a federal court lawsuit and the

38

1  first amended complaint.  Despite such notice, the City failed and refused to stop
2  the harassment and take remedial measures.  Instead of stopping the harassment
3  and taking remedial measures, the City terminated Miller.

4      100.  Miller was also terminated shortly after he: 1) reported that access to
5  Fire Department was required to ensure the City and Fire Department complied
6  with conciliation agreements with the EEOC that required the proper investigation
7  of EEO complaints in the Fire Department; and 2) reported that he was going to
8  report on the Fire Department's failure to properly investigate an EEO complaint.

9      101.  Instead of taking appropriate disciplinary action against those who
10  the City its elected officers, managers, appointed officials and employees knew
11  had filed maliciously false accusations of race and gender discrimination, in an
12  attempt to retaliate against Miller for expressing valid criticism of erroneous legal
13  advice, the City of Los Angeles violated Title VII and FEHA by terminating
14  Miller's employment only because he complained that he was being harassed and
15  discriminated against on the basis of his race, color, gender and his
16  whistleblowing activities.

17      102.  As a proximate result of the conduct of the defendants, plaintiff has
18  suffered from an unmitigated hostile work environment, which defendants had a
19  duty to address. Their failure to mitigate the hostile work environment resulted in
20  damages, for which plaintiff should be compensated.

21                      **PRAYER**
22  **WHEREFORE,** plaintiff demands judgment against defendants as
23  follows:
24      1.  For compensatory damages, in an amount to be determined according
25          to proof at trial;
26      2.  For punitive damages against the individual defendants only in an
27          amount to be determined according to proof at trial;
28

39

3. For reasonable attorney's fees and costs, pursuant to 42 U.S.C. § 1988 Labor Code Section 1102.5 and /or Code of Civil Procedure 1021.5, or as allowable by law;

4. For costs of suit incurred in this action; and

5. For such other and further relief as the Court deems proper.

Dated: June 16, 2014

Respectfully submitted;
WAGNER & PELAYES, LLP

MARY E. COLLINS, Esq.
TRISTAN G. PELAYES, Esq.
DENNIS E. WAGNER, Esq.
Attorneys for Plaintiff

40

## DEMAND FOR JURY TRIAL

1         Plaintiff STEPHEN MILLER hereby demands a jury trial on all issues in
2
3 this matter.
4
5 Dated: June /6, 2014                 WAGNER & PELAYES, LLP
6
7
8
9                              MARY E. COLLINS, Esq.
                             TRISTAN G. PELAYES, Esq.
10                              DENNIS E. WAGNER, Esq.
                             Attorneys for Plaintiff
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

41

PROOF OF SERVICE

STATE OF CALIFORNIA        )
                           ) ss:
COUNTY OF RIVERSIDE        )

I, the undersigned, declare:

I am employed in the County of Riverside, State of California. I am over the age of 18 years and not a party to this action; my business address is 1325 Spruce Street, Ste. 200, Riverside, California 92507.

On the date written below, I served the document named below on the parties indicated below, in the following manner:

☒ **(By Personal Service)** I am familiar with this office's practice for the personal service of documents. I caused said document(s) to be delivered by hand to the offices of the addressee.

**DOCUMENT:**      **FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

**PARTIES SERVED:**

| | |
|---|---|
| Brian P. Walter, Esq.<br>Hengameh S. Safaei, Esq.<br>LIEBERT CASSIDY WHITMORE<br>6033 West Century Blvd., 5th Fl<br>Los Angeles, CA 90045<br>Tel: (310) 981-2000<br>Fax: (310) 337-0837 | *Attorneys for Defendants* |

☒ **(FEDERAL)** I declare under penalty of perjury that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on ~~April 8,~~ June 16, 2014 at Riverside, California.

*K. Connelly*

KIM CONNELLY, Declarant

42

CAPTION