# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 13-5148-GW(CWx) | Date | August 7, 2014 |
|---|---|---|---|
| Title | *Stephen Miller v. City of Los Angeles, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Javier Gonzalez | Katie Thibodeaux | | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. | |

Attorneys Present for Plaintiffs:  
Dennis E. Wagner

Attorneys Present for Defendants:  
Hengameh S. Safaei

**PROCEEDINGS:** **DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FOURTH AMENDED COMPLAINT AND MOTION FOR MORE DEFINITE STATEMENT [109]**

The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. Defendants' motion is GRANTED IN PART and DENIED IN PART. The Court GRANTS the Motion to Dismiss the § 1983 claim against Feuer WITH PREJUDICE; DENIES the Motion to Dismiss the § 1983 claims against Garcetti and Llewellyn, although with the proviso that Garcetti and Llewellyn may raise qualified immunity again at a later stage; and DENIES the City's Motion for a More Definite Statement. The city will file a responsive pleading on or before September 5, 2014.

: 03

Initials of Preparer  JG

<u>**Stephen Miller v. City of Los Angeles, et al.**</u>, Case No. CV-13-5148-GW(CWx)
Tentative Ruling on Defendants' Motions to Dismiss

Plaintiff Stephen Miller ("Miller") first filed suit against the City of Los Angeles ("the City") and various public officials in July 2013 (collectively, "Defendants"). *See generally* Docket No. 1. Following orders dismissing his Second and Third Amended Complaints, Miller filed the instant Fourth Amended Complaint ("4AC"), naming: (1) the City, (2) Mike Feuer ("Feuer"), the current Los Angeles City Attorney; (3) Eric Garcetti ("Garcetti"), the Mayor of Los Angeles; (4) Richard Llewellyn ("Llewellyn"), Legal Counsel to Mayor Garcetti (Feuer, Garcetti, and Llewellyn are, collectively, the "Moving Defendants"); (5) Delia Ibarra ("Ibarra"), the Fire Commission President; (6) Andrew Glazier ("Glazier"), the Fire Commission Vice President; (7) Steven Fazio ("Fazio"), a Fire Commissioner; (8) Jimmie Woods-Gray ("Woods-Gray"), a Fire Commissioner; and (9) Jimmy Hara ("Hara"), a Fire Commissioner (collectively, the "Fire Commission Defendants"). *See* 4AC, Docket No. 107, ¶¶ 4-11. Miller brings claims against the individual defendants for First Amendment (free speech) retaliation in violation of 42 U.S.C. § 1983. *Id.* at ¶¶ 63-80. Miller's claims against the City include municipal/*Monell* liability, retaliation in violation of Cal. Lab. Code § 1102.5, race/gender discrimination in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1), and retaliation in violation of Title VII, 42 U.S.C. § 2000e-2, and California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940(h). *See id.* ¶¶ 63-102. Now before the Court are the Moving Defendants' and the City's Motion to Dismiss and Motion for a More Definite Statement. Docket No. 109. The Motion to Dismiss (1) seeks to dismiss the § 1983 claim against Moving Defendants, and (2) asks that the Court order Miller to re-plead his Title VII/FEHA cause of action as separate claims. *See* Mot. at 1:3-3:2. For the reasons discussed below, the Court would GRANT-IN-PART and DENY-IN-PART the motion.

I. **Background**

After four prior pleadings, the Court is very familiar with Miller's allegations. *See* Docket No. 106 at 1-5.[1] In March 2009, the City amended its Charter to create the position of Independent Assessor ("IA") for the Los Angeles Fire Department ("LAFD"). 4AC ¶ 16; Defendants' Request for Judicial Notice ("Def.'s RJN"), Docket No. 110, Ex. 1. Per the Charter, the IA's responsibilities include: (1) assisting the Fire Commission[2] in auditing and assessing the LAFD's handling of employee misconduct complaints, (2) conducting audits or assessments approved by the Fire Commission, (3) initiating LAFD audits or assessments, and (4) communicating with the Fire Commission about audits and assessments. Def.'s RJN, Ex. 1. The Charter states that the IA "shall have the same access to Fire Department information as the [Fire Commission]." *Id.* The Charter further states that the Fire Commission has the authority to appoint and remove the IA, and that the

---

[1] As a result, the Court attempts to limit its recitation to those allegations relevant to the current motion.

[2] The Fire Commission Defendants state that the Fire Commission is a "civilian panel that oversees the Los Angeles Fire Department." Docket No. 79 at 1:7-8.

Fire Commission's decisions are exempt from City Council review. Def.'s RJN, Exs. 2-3.[3]

In October 2009, Miller began working as the City's first IA. *Id.* ¶ 19. From the time he started working as the IA until sometime in mid-2010, Miller allegedly received unfettered access to LAFD complaint and personnel files, and attended the "Fire Chief's discipline meetings[,] where highly confidential personnel investigations and discipline matters were discussed[.]" *Id.*

In March 2010, Miller published an "Assessment of the [LAFD's] Disciplinary Process and Professional Standards Division" (the "Assessment"). *Id.* ¶ 22. While primarily an audit and review of how the LAFD's handled employee-misconduct complaints, the Assessment also criticized the Los Angeles City Attorney's Office ("City Attorney's Office") for the legal advice it gave (or failed to give) the LAFD. *Id.*; Def.'s RJN, Ex. 5. Miller contends that, as a result of the Assessment, individuals in the City Attorney's Office started an organized campaign to retaliate against him and interfere with his ability to perform his role as the IA.

At the heart of this supposed retaliation campaign is a 2010 legal opinion. In August 2010, about five months after Miller issued the Assessment, the City Attorney's Office issued a legal opinion, addressed to Miller and the Fire Commission, entitled "Los Angeles Fire Assessor's Authority to Access Fire Department Personnel and Disciplinary Records and Information" (the "Access Memo"). *Id.* ¶ 31. Miller contends that the Access Memo "falsely states that neither the Fire Commission nor the [IA] may access confidential personnel information in the Fire Department and that the Fire Commission may not hold closed session meetings to review such matters." *Id.* ¶¶ 25-30. Miller alleges the City Attorney's Office issued this legally-inaccurate opinion to interfere with his watchdog role and retaliate against him for criticizing the City Attorney's Office. *Id.*

Over the next year and a half, Miller unsuccessfully lobbied individuals in the City Attorney's Office and then-Mayor Antonio Villaraigosa's Office to revisit the Access Memo and "restore" the IA's alleged unfettered access to confidential information. *Id.* ¶¶ 30-31. After failing to make any progress, Miller filed a State Bar complaint against members of the City Attorney's Office in February 2012. *Id.* ¶¶ 32-33. While the entire substance of the State Bar complaint is not clear from the 4AC, at a minimum, it charged that members of the City Attorney's Office issued the legally-inaccurate Access Memo to retaliate against Miller's criticisms. *Id.* Miller filed a second State Bar complaint in June 2012, again charging that, in retaliation for Miller's criticisms, individuals in the City Attorney's Office issued legally-inaccurate advice designed to curtail Miller's access to confidential LAFD information. *Id.* ¶ 36.

As time progressed, Miller's interactions with the City Attorney's Office became increasingly personal and acrimonious. *See, e.g.,* 4AC ¶¶ 31, 39-40. In October 2012, three Deputy City Attorneys filed a complaint with the Mayor's Office alleging that Miller was creating a hostile work environment on the basis of race and gender. *Id.* ¶ 41. In December 2012, Miller filed a tort claim with the City setting forth the same charges as those raised in his State Bar complaints (and various complaints to City departments). *Id.* ¶ 44. In the following month (January 2013), Miller issued a press release stating he had filed a complaint with the State Bar and a tort claim with the City because he "had reasonable cause to believe" that the City Attorney's Office had "violat[ed] . . . state law." *Id.* ¶ 45. The following day, an official from the City Attorney's Office was quoted in the Los

---

[3]Charter Section 245(d)(7) exempts from City Council review "individual personnel decisions of boards of commissioners other than the Police Board of Commissioners." *See* Def.'s RJN, Ex. 3.

Angeles Times stating that Miller was targeting minorities and women. *Id.* ¶ 46. In March 2013, Miller filed a second tort claim with the City and requested a Department of Fair Employment and Housing ("DFEH") Right-to-Sue letter. *Id.* ¶¶ 47-48. Both the tort claim and Right-to-Sue request charged the Deputy City Attorneys who had sued him for discrimination did so to retaliate against Miller for reporting the City Attorney's Office's legal violations; both complaints further charged that, rather than being discriminated against, the attorneys who filed discrimination complaints against Miller were discriminating against him on the basis of race (white) and gender (male). *Id.* ¶¶ 47-48. Miller filed a substantially-similar discrimination claim with the City in May 2013. *Id.* ¶ 49.

As might be expected, Miller's long-running feud with the City Attorney's Office eventually wound its way to the courts. Between June and early July 2013, the three Deputy City Attorneys complaining of race and gender harassment served Miller with discrimination lawsuits. *Id.* ¶ 50. On July 17, 2013, Miller filed the first iteration of the present lawsuit in this Court. *Id.* ¶ 51.[4] In August 2013, Miller filed an EEOC discrimination charge against the three Deputy City Attorneys charging him with discrimination and an amended complaint in this case. *Id.* ¶ 52.

On September 10, 2013, Miller presented another tort claim with the City. This claim alleged that the City wrongly refused to indemnify Miller for defending against meritless discrimination claims; the tort claim also repeated the charges raised in Miller's State Bar complaints and complaints to City departments. *Id.* ¶ 55. On September 11, 2013, Miller sent Feuer two written complaints. The first alleged that the Deputy City Attorneys who sued Miller for discrimination had filed knowingly false complaints; the second repeated Miller's allegation that the City Attorney's Office issued incorrect legal advice and took other unlawful actions to retaliate against Miller for criticizing its work. *Id.* ¶¶ 56-57. Approximately a month later, in October 2013, the Fire Commission Defendants voted to terminate Miller as the IA. *Id.* ¶ 59.

Though the Fire Commission Defendants took the ultimate vote to terminate Miller, Miller contends that Moving Defendants were also responsible for the decision. As to Feuer, Miller alleges that he "is informed, believes and alleges that instead of undertaking the unpleasant task of taking disciplinary action against [the] senior African-American female attorneys in his office [who accused Miller of discrimination], Feuer chose to lobby the Mayor's Office to have Miller terminated from his employment[.]" *Id.* ¶ 71. As to Garcetti and Llewellyn, Miller contends that "Ibarra and Glazier told Miller that Llewellyn had directed the Fire Commission to terminate Miller without cause." *Id.* ¶¶ 59, 74. Ibarra and Glazier also told Miller that "'we all serve at the pleasure of the mayor.'" *Id.*

## II. Legal Standard
### A. *Motion to Dismiss Under Rule 12(b)(6)*

Under Rule 12(b)(6), a complaint is deficient and warrants dismissal when it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint may fail to state a claim upon which relief can be granted for one of two reasons: (1) lack of a cognizable legal theory or (2) failure to allege sufficient facts under a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In determining whether a complaint survives this test, courts "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint,

---

[4]Except for the City, none of the present parties were named in the initial Complaint. *See* Docket No. 1.

and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). In so doing, courts must accept the complaint's factual allegations as true, and construe them in the light most favorable to the plaintiff. *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002). But a court should not accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009), or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001).

Where a plaintiff facing a 12(b)(6) motion has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the motion should be denied. *Iqbal*, 556 U.S. at 678; *Sylvia Landfield Trust v. City of Los Angeles*, 729 F.3d 1189, 1191 (9th Cir. 2013). But "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). In addition, "shotgun pleadings," meaning "pleadings that overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses" are generally "unacceptable" under Rule 8. *Sollberger v. Wachovia Sec.*, LLC, No. CV 09-0766-AG, 2010 U.S. Dist. LEXIS 6623, at *11 (C.D. Cal. June 30, 2010).

### B. *Motion for a More Definite Statement Under Rule 12(e)*

A party may request a more definite statement "[i]f a pleading . . . is so vague and ambiguous that a party cannot reasonably be required to frame a responsive pleading[.]" Fed. R. Civ. P. 12(e). "However, motions for a more definite statement are disfavored, and ordinarily restricted to situations where a pleading suffers from unintelligibility rather than want of detail." *Medrano v. Kern Cnty. Sheriff's Officer*, 921 F.Supp.2d 1009, 1013 (E.D. Cal. 2013) (citations and quotations omitted). "A Rule 12(e) motion is proper only where the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted and therefore cannot reasonably be expected to frame a proper response." *Gregory Vill. Partners, L.P. v. Chevron U.S.A., Inc.*, 805 F.Supp.2d 888, 896 (N.D. Cal. 2011) (citations and quotations omitted). The court must deny the motion if the complaint is specific enough to notify defendant of the substance of the claim being asserted, *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1461 (C.D. Cal. 1996), or if the detail sought by a motion for a more definite statement is obtainable through the discovery process, *Beery v. Hitachi Home Electronics (America), Inc.*, 157 F.R.D. 477, 480 (C.D. Cal. 1993). *See generally* Schwarzer, Tashima, et al., Fed. Civ. Pro. Before Trial (2012) §§ 9:347-50, at 9-129-30. In ruling on a 12(e) motion, "[t]he court has wide discretion and may require that the complaint be amended, or that the information sought be supplied by declarations or other means." Schwarzer, Tashima, et al., Fed. Civ. Pro. Before Trial (2012) § 9:365, at 9-133 (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1970)).

### III. Analysis

Moving Defendants contend that Miller's § 1983 claim against them should be dismissed because Miller has failed to allege facts demonstrating a causal connection between Moving Defendants' conduct and any adverse employment action. Mot. at 5:13-8:20. Alternatively, Moving Defendants contend that Miller's § 1983 claim against them should be dismissed because they are entitled to qualified immunity. *Id.* at 8:21-12:7. In addition, the City contends the Court should

require Miller to re-plead his currently-joined Title VII/FEHA claims separately. *Id.* at 12:8-13:9.

### A. *Motion to Dismiss*
#### 1. **Failure to State a Claim**

A defendant can be liable under § 1983 only if he caused or was personally involved in the alleged constitutional deprivation. *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) ("Liability under § 1983 must be based on the personal involvement of the defendant"); *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994). Thus, to state a § 1983 claim against a specific defendant, "[a] plaintiff must allege facts, not simply conclusions, that show that [the defendant] [caused or] was personally involved in the deprivation of his civil rights." *Barren*, 152 F.3d at 1194. "The requisite causal connection can be established" by alleging facts indicating that a defendant set "in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Redman*, 942 F.2d at 1447 (citing *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). When evaluating § 1983 causation, courts typically apply proximate causation standards. Martin Schwartz, Sec. 1983 Litig. Claims & Defenses (2014) § 6.03 ("United States Supreme Court and lower court decisional law holds that a § 1983 claimant who seeks to impose liability upon a particular official must establish that the official's conduct was the proximate cause of the violation of her federal rights"); *Martinez v. State of Cal.*, 444 U.S. 277, 285 (1980).

Frequently, "[d]ifficult questions are raised when multiple officials or public bodies play some role in the [alleged] violation of plaintiff's rights," Schwartz, Sec. 1983 Litig. Claims & Defenses § 6.03. This scenario is commonly present when the alleged constitutional violation results from an employment decision. Indeed, the Ninth Circuit has developed a whole body of law addressing when, in a multiple-official or subordinate/supervisor scenario, improper motives or adverse actions can be imputed "upstream" or "downstream" to impose personal liability under § 1983. *See Lakeside-Scott v. Multnomah Cnty.*, 556 F.3d 797, 804 (9th Cir. 2009); *Gilbrook v. City of Westminster*, 177 F.3d 839, 854-56 (9th Cir. 1999). While those cases may have provide some tangential insight here, however, the relevant question here is fortunately much simpler. For present purposes, the question is whether Miller has alleged specific facts plausibly indicating that Moving Defendants set in motion a series of acts which they reasonably should have known would result in a constitutional deprivation. *Johnson*, 588 F.2d at 743. Or, to put it in case-specific terms, did Miller allege specific facts plausibly indicating that Moving Defendants (in retaliation for his protected speech) set in motion a series of acts which they reasonably should have known would cause the Fire Commission to terminate Miller? *See Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003) (describing plaintiffs' *prima facie* First Amendment retaliation burden under § 1983: "(1) that he or she engaged in protected speech; (2) that the [defendant] took 'adverse employment action'; and (3) that his or her speech was a 'substantial or motivating' factor for the adverse employment action").

#### a. **Feuer**

When it comes to Feuer, the answer is no. Though the 4AC is littered with allegations of purported impropriety at the City Attorney's Office, Miller ultimately fails to allege specific facts

demonstrating Feuer's personal participation in, or causal connection to, his termination.[5] Instead, Miller alleges only that he:

> [I]s informed, believes and alleges that instead of undertaking the unpleasant task of taking disciplinary action against [the] senior African-American female attorneys in his office [who accused Miller of discrimination], Feuer chose to lobby the Mayor's Office to have Miller terminated from his employment in an attempt to stop Miller.

*Id.* ¶ 71. This allegation does not strike the Court as so different from the ones rejected in *Iqbal*. There, the plaintiff alleged that the Attorney General "knew of, condoned, and willfully and maliciously agreed to subject [him]" to harsh conditions on account of the plaintiff's religion, and that the Attorney General was the "principal architect" of a discriminatory policy. *Iqbal*, 556 U.S. at 680. The Supreme Court rejected those allegations as too conclusory to withstand a motion to dismiss, emphasizing that the "formulaic recitation of the elements of a constitutional discrimination claim" will not suffice. *Iqbal*, 556 U.S. at 681 (quotations omitted). Here, the elements of a § 1983 cause of action include a showing that the defendant personally participated in or caused the purported constitutional violation. While Miller uses slightly different words than the ones used in *Iqbal* (*e.g.*, "agreed to," "architect," etc.), this Court does not believe he can withstand a motion to dismiss on the causation issue by vaguely alleging on "information and belief" that Feuer "lobbied" or "conspired with" or "agreed with" the Mayor's Office to violate his rights. The Court recognizes that "information and belief" pleading is allowed – indeed, necessary at times – but the words are not talismanic, and a plaintiff cannot avoid Rule 12 simply by slapping the "information and belief" label onto speculative or conclusory allegations. *Twombly*, 550 U.S. at 557; *Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 926-27 (9th Cir. 2013) (citing *Chavez v. United States*, 683 F.3d 1102, 1110 (9th Cir. 2012); *Tarantino v. Gawker Media, LLC*, No. 14-CV-603-JFW(FFMx), 2014 U.S. Dist. LEXIS 77726, at *14 & n.4 (C.D. Cal. Apr. 22, 2014) (collecting cases); Schwarzer, Tashima, et al., Fed. Prac. and Proc. Before Trial (2012) § 8:128.22, at 8-32-33 ("[C]onclusory allegations based on nothing more than 'information and belief' will not suffice"). After multiple attempts, Miller has again failed to allege specific facts from which

---

[5] At certain points, Miller argues that Feuer is liable under § 1983 because he "ratified" or "failed to control" the conduct of the Deputy City Attorneys who sued Miller for discrimination. *See generally* Opposition at Motion to Dismiss and Motion for a More Definite Statement ("Opp."), Docket No. 114, at 7:6-10:9. This argument is convoluted, but seems to suggest, in part, that Feuer should be liable for violating Miller's First Amendment rights because he failed to promptly investigate or discipline the Deputy City Attorneys at Miller's insistence. At the same time, Miller seems to argue that this supposed ratification is actionable because it resulted his termination. *See* Opp. at 8:4-19, 10:1. To the extent Miller is arguing that Feuer's failure to investigate or discipline the Deputy City Attorneys for filing discrimination complaints – which would, in effect, constitutionalize his demand for action – the Court does not see how, without more, that constitutes actionable First Amendment retaliation or an act that would "chill or silence a person of ordinary firmness from future First Amendment activities." *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005). Indeed, to hold otherwise would mean that, upon request, government officials would be forced to choose between immediately investigating and/or terminating any employee who filed an unsuccessful discrimination claim (and being sued for race discrimination and retaliation) or not immediately investigating and being sued for First Amendment retaliation. For obvious reasons, that is not reasonable. In any event, Miller has failed to allege any specific facts demonstrating that Feuer failed to do what Miller asked *because* Miller exercised protected speech. At this point, Miller's has had multiple opportunities to articulate his theory of liability against Feuer. The Court is proceeding on the one alleged in the 4AC – that Feuer lobbied the Mayor to have Miller fired.

the Court can plausibly infer Feuer's personal participation in, or causal connection to, Miller's termination. The Court would therefore DISMISS the claim against Feuer WITH PREJUDICE.

### b. Garcetti and Llewellyn

The Court would reach the opposite conclusion for Garcetti and Llewellyn, at least insofar as causation and motive are concerned. The 4AC alleges that, on the day Miller was fired, two of the Commissioners who voted to terminate Miller told him that "Llewellyn had directed the Fire Commission to terminate Miller without cause." *Id.* ¶¶ 59, 74. By way of explanation these commissioners also said to Miller that "'[they] serve at the pleasure of the mayor.'" *Id.* Accepting these allegations as true, as the Court must at this stage, the 4AC seems to *clearly* allege facts indicating that Garcetti and Llewellyn set in motion a series of acts leading to Miller's termination.

Now, Moving Defendants argue that these allegations fail to establish causation because the 4AC does not demonstrate that the Fire Commission "ceded [its] authority" to Garcetti and Llewellyn and accepted the "termination order." Mot. at 7:3-16. On this point, Moving Defendants make much of the fact that the Charter vests the Fire Commission with exclusive authority over IA personnel decisions. See Mot. at 7:5-12. But Moving Defendants ignore the fact that the Mayor of Los Angeles has the authority to appoint and remove members from the Fire Commission. *See* Charter §§ 502(a), (d) ("Unless otherwise provided in the Charter, commissioners of Charter created boards and of standing commissions created by ordinance that are advisory to, or manage a department or appointed office, or perform regulatory functions, shall be appointed by the Mayor, subject to the approval of the Council . . . . Members of a board or commission, other than the City Ethics Commission and the Police Commission, who are appointed by the Mayor subject to approval by the Council, may be removed by the Mayor without Council confirmation"), *available at* http://goo.gl/AGm7E3 (last visited August 3, 2014). At this stage, the Court does not find it implausible that the Fire Commission – which in fact *does* serve "at the pleasure of the mayor" – might respond to a direct order from the Mayor's office to fire Miller. *See, e.g., Harper v. City of Los Angeles*, 533 F.3d 1010, 1027 (9th Cir. 2008) (explaining that a § 1983 plaintiff can rebut the *strong* presumption of prosecutorial independence "by showing that the [prosecutor] was pressured or caused by the investigating officers to act contrary to his independent judgment") (citations and quotations omitted, punctuation altered); *Gilbrook*, 177 F.3d at 855 (explaining that a person may be liable under § 1983 if he recommends a retaliatory termination to another person or group who makes the ultimate decision, even if the final decision-maker had a legitimate purpose, where the decision-maker never would have considered the dismissal but for the retaliatory recommendation); *Ostad v. Oregon Health Sciences Univ.*, 327 F.3d 876, 883 (9th Cir. 2003) (similar).

Moving Defendants also argue that the allegations against Garcetti and Llewellyn are insufficient because Miller does not allege facts indicating a retaliatory or improper motive. Mot. at 6:16-22; Reply at 4:14-16. The Court would reject this argument, too. To show that the protected speech was a "substantial or motivating factor" for the government employer's "adverse employment action," "very little" direct evidence is required. *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 980 (9th Cir. 2002). Rather, "a plaintiff can show that retaliation [for free speech rights known to have been exercised] was a substantial or motivating factor behind a defendant's adverse employment actions by introducing evidence (1) of the proximity in time between the protected action and the allegedly retaliatory employment decision, from which a jury logically could infer

[that the plaintiff] was terminated in retaliation for his speech; (2) of the employer's expression of opposition to [the] speech, either to [the employee] or others; or (3) that the employer's proffered explanations for the adverse employment action were false and pre-textual." *Eng v. Cnty. of Los Angeles*, 737 F.Supp.2d 1078, 1094 (C.D. Cal. 2010) (citing and quoting *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 751-52 (9th Cir. 2001)) (quotations omitted, punctuation altered); *see also Anthoine v. N. Cent. Counties Consortium*, 605 F.3d 740, 750 (9th Cir. 2010); *Allen v. Iranon*, 283 F.3d 1070, 1078 (9th Cir. 2002) ("[P]roximity in time constitutes circumstantial evidence of retaliatory motive"). "As with proof of motive in other contexts, this element of a First Amendment retaliation suit may be met with either direct or circumstantial evidence, and involves questions of fact that normally should be left for trial." *Ulrich*, 308 F.3d at 979 (citations omitted).

Here, the 4AC alleges that Miller engaged in a variety of First Amendment activity about which the Mayor's Office was almost certainly aware. *See* 4AC ¶¶ 72-74. Around the same time as Miller was engaging in this activity, Garcetti's legal counsel instructed the Fire Commission to fire Miller. *Id.* ¶ 74. At this stage, the Court should find that the facts alleged give rise to a plausible inference of retaliatory motive. While the actual facts may be different, Miller is not required to prove his case at the pleading stage; at this point, he need only allege facts from which wrongdoing can be plausibly inferred. The Court would DENY the Motion to Dismiss as to Garcetti and Llewellyn on the grounds that Miller has failed to state a claim.

### 2. Qualified Immunity

As a result, the question becomes whether Garcetti and Llewellyn are entitled to qualified immunity. In determining whether an official is entitled to qualified immunity, the court decides whether he or she violated a plaintiff's constitutional right; if the answer to that inquiry is "yes," the court determines whether the constitutional right was "clearly established in light of the specific context of the case" at the time of the events in question. *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009) (citation omitted). While the Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation," *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citations omitted), the Ninth Circuit has cautioned that seeking qualified immunity at the motion to dismiss stage "is not a wise choice in every case" since courts can only consider the allegations pled and draw all inferences in the plaintiff's favor. *Kwai Fun Wong v. United States*, 373 F.3d 952, 957 (9th Cir. 2004).

As discussed above, the 4AC plausibly alleges that Garcetti and Llewellyn directed the Fire Commission to fire Miller in retaliation for his speech. Causing someone to be fired in retaliation for *protected* speech is indisputably a clearly established First Amendment violation. *See generally Coszalter*, 320 F.3d at 975. The pertinent qualified immunity question, then, is whether clearly-established law treated Miller's speech as protected. "'Clearly established' for purposes of qualified immunity means that the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Wilson v. Layne*, 526 U.S. 603, 614-15 (1999) (citations and quotations omitted, punctuation altered). That "is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful," "but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citations and quotations omitted).

As discussed at length in the Court's prior orders, employee speech is protected under the

first amendment when it (i) can fairly be considered to relate to an issue of public concern, *Connick v. Myers*, 461 U.S. 138, 146 (1983), and (ii) was spoken in the employee's capacity as a private citizen, rather than a public employee, *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). *See also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008). As relevant here, Miller contends that he engaged in protected speech by: (1) issuing the Assessment, 4AC ¶ 64(a); (2) publishing and/or filing complaints against attorneys in the City Attorney's Office with the State Bar and various government agencies, *id.* ¶¶ 64(b)-(c); (3) filing government tort claims with the City, *id.* ¶¶ 64(e), (g), (m); (4) issuing a press release criticizing the City Attorney's Office, *id.* ¶ 64(f); (5) requesting a DFEH right-to-sue letter and filing an EEOC discrimination charge, *id.* ¶¶ 64(h)-(i); (6) sending complaint letters to Feuer, *id.* ¶¶ 64(n)-(o); and (7) filing the current lawsuit, *id.* ¶¶ 64(j), (l). Miller further alleges that Garcetti and Llewellyn became aware of several instances of protected speech which occurred both before and after Garcetti became the Mayor. *See id.* ¶ 72.

### a. Public Concern

"Although the boundaries of the public concern test are not well defined," *City of San Diego, Cal. v. Roe*, 543 U.S. 77, 83 (2004), speech can fairly be considered to relate to a matter of public concern when it touches on "matter[s] of political, social, or other concern to the community," *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1057 (9th Cir. 2013). By contrast, speech that "deals with individual personnel disputes and grievances and that would be of no relevance to the public's evaluation of the performance of governmental agencies is generally not of 'public concern.'" *Desrochers v. City of San Bernardino*, 572 F.3d 703, 710 (9th Cir. 2009). "The same is true of speech that relates to internal power struggles within the workplace, and speech which is of no interest beyond the employee's bureaucratic niche." *Id.* (citations and quotations omitted). In evaluating whether speech touches on matters of public or private concern, courts should consider the content, form, and context of the statements, *Ulrich*, 308 F.3d at 978, including, sometimes, the employee's motivation, *Desrochers*, 572 F.3d at 710. Determining whether speech implicates a "public concern" is purely a legal question. *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009).

Here, the 4AC alleges that Miller issued a press release, filed a lawsuit, and filed a tort claim alleging that several members of the City Attorney's Office engaged in racial discrimination and provided knowingly inaccurate legal advice to silence a critical watchdog. At the time Garcetti and Llewellyn allegedly directed the Fire Commission to fire Miller, clearly-established law deemed speech on these subjects a matter of public concern. *See Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 927 (9th Cir. 2004) ("[I]f a witness's testimony directly addresses governmental corruption or discrimination, it can satisfy the public concern test, even if it is offered in the course of a judicial or administrative proceeding that involves only purely private grievances or issues. So long as either the public employee's testimony or the underlying lawsuit meets the public concern test, the employee may, in accord with *Connick*, be afforded constitutional protection against any retaliation that results.") (citations omitted); *Thomas v. City of Beaverton*, 379 F.3d 802, 809 (9th Cir. 2004) ("Unlawful conduct by a government employee or illegal activity within a government agency is a matter of public concern") (collecting cases); *Ceballos v. Garcetti*, 361 F.3d 1168, 1174 (9th Cir. 2004), *rev'd and remanded on other grounds*, 547 U.S. 410 (2006) ("[W]hen government employees speak about corruption, wrongdoing, misconduct, wastefulness, or inefficiency by other government employees, including law enforcement officers, their speech is . . . a matter of public concern").

### b. Private Citizen v. Public Employee Status

Clearly-established law also indicates that Miller engaged in at least some of this speech in his capacity as a private citizen, rather than as a public employee. While "no single formulation of factors can encompass the full set of inquiries relevant to determining the scope of a plaintiff's job duties," *Dahlia v. Rodriguez*, 735 F.3d 1060, 1074 (9th Cir. Aug. 21, 2013) (en banc), the case law, starting with *Garcetti*, identifies several potentially-useful guideposts. *First*, particularly in a hierarchical environment, whether "the employee confined his communications to his chain of command is a relevant . . . factor in determining whether he spoke pursuant to his official duties." *Dahlia*, 735 F.3d at 1074. "When a public employee communicates with individuals or entities outside of his chain of command, it is unlikely that he is speaking pursuant to his duties." *Id.* (citations omitted). Thus, if "a public employee takes his job concerns to persons outside the workplace in addition to raising them up the chain of command at his workplace, then those external communications are ordinarily not made as an employee, but as a citizen." *Id.*; *see also Freitag v. Ayers*, 468 F.3d 528, 545 (9th Cir. 2006) (finding that officer's internal harassment complaints were unprotected, but communications with state senator and inspector general were protected speech); *Alaska v. EEOC*, 564 F.3d 1062, 1074 (9th Cir. 2009) (en banc) (finding that act of holding a press conference to protest discrimination was protected speech because it employee's job "official duties didn't require her to . . . bring the alleged sexual harassment to the public's attention").

*Second*, the form and subject matter of the communication is "highly relevant to the ultimate determination whether the speech is protected by the First Amendment." *Dahlia*, 735 F.3d at 1074-75. As the Ninth Circuit explained in *Dahlia*:

> When an employee prepares a routine report, pursuant to normal departmental procedure, about a particular incident or occurrence, the employee's preparation of that report is typically within his job duties. By contrast, if a public employee raises within the department broad concerns about corruption or systemic abuse, it is unlikely that such complaints can reasonably be classified as being within the job duties of an average public employee, except when the employee's regular job duties involve investigating such conduct, e.g., when the employee works for Internal Affairs or another such watchdog unit.

735 F.3d at 1075 (citations omitted). *See also Garcetti*, 547 U.S. at 421-22 (finding legal memo unprotected because writing the memo was "part of what [the employee], as a calendar deputy, was employed to do"); *see also id.* at 422 ("When he went to work and performed the tasks he was paid to perform, [the employee] acted as a government employee"); *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1071 (9th Cir. 2012) ("The Supreme Court has explained that 'work product' [owing] its existence to a public employee's professional responsibilities is not protected by the First Amendment because an employer may exercise control over what the employer itself has commissioned or created") (citing and quoting *Garcetti*, 547 U.S. at 421-22) (quotations omitted); *see also Huppert v. City of Pittsburg*, 574 F.3d 696, 704 (9th Cir. 2009) *over'd on other grounds by Dahlia*, 735 F.3d at 1071 ("If the public employee was paid for the speech – e.g., drafting a memorandum, creating a report, advising a supervisor – then that compensation might be indicative of the nature of the speech") (citing *Garcetti*, 547 U.S. at 422).

*Third*, "when a public employee speaks in direct contravention to his supervisor's orders, that

speech may often fall outside of the speaker's professional duties." *Dahlia*, 735 F.3d at 1075. To be clear, this focus of this factor is on whether the employee spoke in direct contravention of his employer's orders *not to speak*, rather than whether the content of the employee's speech contradicted his employer's viewpoint. *Compare Dahlia*, 735 F.3d at 1075 (finding external communication about misconduct protected speech, in part, because employee lodged complaint "in contravention of the numerous threats and admonitions from his superiors not to reveal the misconduct to anyone") *with Garcetti*, 547 U.S. at 421-22 (finding that employee speech was unprotected, although vigorously opposed by supervisors, because employee's speech was part of what he "was employed to do"). *See also Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 833 (1995) ("[W]hen the government appropriates public funds to promote a particular policy of its own it is entitled to say what it wishes").

  Here, at a minimum, issuing a press release and filing the present lawsuit clearly were not activities that Miller undertook in his capacity as a public employee. *See Karl*, 678 F.3d at 1072 (affirming denial of qualified immunity and finding that testimony in § 1983 lawsuit was not given in capacity as public employee, even though plaintiff testified on matters relating to her public employment, because testimony was not "commissioned or created" by public employment); *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1106 (9th Cir. 2011) (similar); *Alaska v. EEOC*, 564 F.3d 1062, 1074 (9th Cir. 2009) (en banc) (finding that act of holding a press conference to protest discrimination was protected speech because it employee's job "official duties didn't require her to ... bring the alleged sexual harassment to the public's attention"). Based on the facts alleged, it is reasonable to infer that Garcetti and Llewellyn knew about this speech when they supposedly directed the Fire Commission to terminate Miller. *See* 4AC ¶¶ 72-73. And, at that point in time, it was "undebatably" unlawful to fire someone for participating in a lawsuit or issuing a press release charging public illegality or discrimination. *See Lane v. Franks*, 134 S.Ct. 2639, 2383 (June 19, 2014) (in similar circumstances, defining qualified immunity question as whether it was "beyond debate" when defendant took the adverse action that employee's speech was entitled to protection).

  Moving Defendants argue that qualified immunity is proper here – and in almost every first amendment retaliation case – because *Pickering* balancing requires a fact-sensitive inquiry. *See* Mot. at 10:18-12:8; Reply at 6:1-13 (repeatedly citing *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 979-80 (9th Cir. 1998) ("Because, under *Pickering*, the determination whether an employee's expression is constitutionally protected requires a fact-sensitive, context-specific balancing of competing interests, the law regarding public-employee free speech claims will rarely, if ever, be sufficiently 'clearly established' to preclude qualified immunity under *Harlow* and its progeny")). But at the motion to dismiss stage, this Court can only evaluate whether, considering the allegations in the pleadings and judicially-noticeable materials, and drawing all factual inferences in Miller's favor, Miller has stated a cognizable claim under clearly established law. *See Hollister v. Tuttle*, 210 F.3d 1033, 1035 (9th Cir. 2000) (explaining that, in motion to dismiss or quasi-motion to dismiss context, where defendant has not presented any justification for adverse action, qualified immunity question boils down to whether plaintiff's claim is cognizable under clearly-established law). For the reasons discussed above, the Court would find that he has. Accordingly, at this point in time, Garcetti and Llewellyn's request for dismissal on qualified immunity grounds would be DENIED. The denial is, of course, WITHOUT PREJUDICE to a renewed qualified immunity challenge following further factual development.

**B.** *Motion for a More Definite Statement*

The City seeks a more definite statement for Miller's fourth claim, arguing that "Title VII and FEHA are two distinct claims with different statutory provisions." Mot. at 13:6-9. Thus, "[t]o avoid confusion," the City wants Miller to allege his Title VII and FEHA claims separately. *Id.*

Properly directed, a 12(e) motion targets pleadings that are so vague and ambiguous that a party cannot reasonably be required to frame a responsive pleading. Fed. R. Civ. P. 12(e). Here, the City's challenge is not really that Miller's claim is indefinite or wholly lacking in detail. Instead, the City seeks to have Miller make his Complaint clearer by pleading his Title VII and FEHA claims separately. Since the pleading is specific enough to notify the City of the substance of the claims being asserted, the Court would DENY the City's Rule 12(e) motion. *E.g., Bureerong*, 922 F.Supp. at 1461; *see also Guitron v. Wells Fargo Bank, N.A.*, No. 10-CV-3461-CW, 2012 U.S. Dist. LEXIS 93883, at *55 (N.D. Cal. July 6, 2012) (considering Title VII and FEHA claims jointly).

**IV. Conclusion**

For the reasons discussed above, the Court should: (1) GRANT the Motion to Dismiss the § 1983 claim against Feuer WITH PREJUDICE; (2) DENY the Motion to Dismiss the § 1983 claims against Garcetti and Llewellyn, although with the proviso that Garcetti and Llewellyn may raise qualified immunity again at a later stage; (3) DENY the City's Motion for a More Definite Statement. The City shall file a responsive pleading on or before August 29, 2014.