Mary E. Collins, Esq., CA Bar No. 296536
Dennis E. Wagner, Esq., CA Bar No. 99190
WAGNER & PELAYES, LLP
1325 Spruce Street, Suite 200
Riverside, CA 92507
Tel: (951) 686-4800
Fax: (951) 686-4801
mec@wagner-pelayes.com
dew@wagner-pelayes.com

Stephen Miller, CA Bar No. 106534
1325 Spruce Street, Suite 200
Riverside, CA 92507
Tel: (951) 686-4800

Attorneys for Plaintiff,
STEPHEN MILLER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN MILLER,<br><br>    Plaintiff,<br><br>vs.<br><br>CITY OF LOS ANGELES, et al.,<br><br>    Defendants. | CASE NO.: CV13-05148 GW (CWx)<br><br>**DISCOVERY MATTER**<br><br>**NOTICE OF MOTION AND LOCAL RULE 37-1 JOINT STIPULATION RE: PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSES TO DEMAND FOR DOCUMENTS, SET TWO AND REQUEST FOR AN ORDER FOR EVIDENTIARY SANCTIONS**<br><br>**PART 1** [*of 2*]<br><br>**DATE:**    April 14, 2015<br>**TIME:**    10:00 a.m.<br>**CRTRM:**    640<br><br>*Magistrate Judge Carla Woehrle* |

NOTICE OF MOTION AND LOCAL RULE 37-1 JOINT STIPULATION RE: PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSES TO DEMAND FOR DOCUMENTS, SET TWO AND REQUEST FOR AN ORDER FOR EVIDENTIARY SANCTIONS

PLEASE TAKE NOTICE that on April 14, 2015 at 10:00 a.m. in Courtroom 640 of the above-entitled court located in the Edward E. Roybal Federal Building, 255 E. Temple Street, Los Angeles, CA 90012, Plaintiff hereby moves the Court for an order requiring the Defendants to preserve and produce further discovery and request for an order for evidentiary sanctions.

This Motion is based on the attached Joint Stipulation of Discovery Dispute, and Declaration of Mary E. Collins, Esq., with attached exhibits, all pleadings, papers, and proceedings in this action, and such other matters, as the Court deems proper. This motion is made following the conference of Counsel pursuant to Local Rules 37-1 thru 37-4 that took place on December 19, 2015 regarding issues relating to the motion, and further communications between Counsels.

Dated: March 19, 2015

WAGNER & PELAYES, LLP

DENNIS E. WAGNER, Esq.
MARY E. COLLINS, Esq.
Attorneys for Plaintiff,
STEPHEN MILLER

i

NOTICE OF MOTION AND LOCAL RULE 37-1 JOINT STIPULATION RE: PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSES TO DEMAND FOR DOCUMENTS, SET TWO AND REQUEST FOR AN ORDER FOR EVIDENTIARY SANCTIONS

# TABLE OF CONTENTS

I. INTRODUCTORY STATEMENTS ................................................................. 1

    PLAINTIFF'S INTRODUCTORY STATEMENT: .................................. 1

        A. THE NATURE OF THE CASE AND DISPUTE .......................... 1

        B. THE NATURE OF THE RELIEF SOUGHT ............................... 3

    DEFENDANTS' INTRODUCTORY STATEMENT: ............................. 4

II. PRIVILEGE LOG FOR GREGG KETTLES HAS NOT BEEN PROVIDED AND PRIVILEGES HAVE BEEN IMPROPERLY ASSERTED TO HIDE CITY MISCONDUCT ........................................... 7

    PLAINTIFF'S CONTENTIONS: .............................................................. 7

        A. THE DEFENSE HAS FAILED TO PROVIDE A PRIVILEGE LOG FOR COMMUNICATIONS SAVED ON KETTLES' HARD DRIVE ..................................................................... 7

        B. KETTLES' DOCUMENTS ARE NOT PROTECTED BY WORK PRODUCT PRIVILEGE ............................................ 9

        C. THE CITY'S DOCUMENTS ARE NOT PROTECTED BY THE DELIBERATIVE PROCESS PRIVILEGE ................................... 11

    DEFENDANTS' CONTENTIONS: ........................................................ 13

        A. DEFENDANTS' DOCUMENT PRODUCTION AND DOCUMENTS STORED ON GREG KETTLES HOME COMPUTER DEFENDANTS HAVE DILIGENTLY PRODUCED DOCUMENTS AND PRIVILEGE LOGS ............... 13

        B. THE DOCUMENTS STORED ON GREGG KETTLES HOME COMPUTER HARD DRIVE ARE PRIVILEGED AND A PRIVILEGE LOG WILL BE PROVIDED TO PLAINTIFF .......... 14

        C. PLAINTIFF HAS NOT IDENTIFIED ANY DOCUMENTS IT SEEKS TO COMPEL TO WHICH DEFENDANTS HAVE ASSERTED THE DELIBERATIVE PROCESS PRIVILEGE ........................................................................ 16

III. PLAINTIFF HAS GOOD CAUSE TO REQUEST LEAVE FOR MORE THAN TEN DEPOSITIONS .................................................... 17

ii

PLAINTIFF'S CONTENTIONS: ................................................................ 17

DEFENDANTS' CONTENTIONS: ............................................................ 18

   A. PLAINTIFF HAS NOT DEMONSTRATED GOOD CAUSE FOR TAKING AT LEAST ANOTHER 21 DEPOSITIONS .......... 19

   B. PLAINTIFF HAS NOT ARTICULATED GROUNDS TO TAKE DEPOSITIONS OF MAYOR GARCETTI AND FORMER AND CURRENT CITY ATTORNEYS TRUTANICH AND FEUER ........................................................ 21

IV. THE ATTORNEY-CLIENT PRIVILEGE HAS BEEN  IMPROPERLY RAISED WITHIN DEPOSITIONS .......................................................... 24

PLAINTIFF'S CONTENTIONS: ................................................................ 24

   A. GREGG KETTLES' DEPOSITION ...................................................... 26

     1. Kettles, As  Former Counsel to the Mayor, Is Incorrect In Raising the  Attorney-Client Privilege ........................ 28

       a.  On page 42 ........................................................................ 29

       Defendants' Position: ........................................................ 29

     2. The Defense is Incorrect in Raising the Attorney-Client Privilege for Communications Made in the Mere Presence of Attorneys ........................................................ 33

       a.  On page 68-69: .............................................................. 33

       Defendants' Position: ...................................................... 34

     3. The Attorney-Client Privilege Was Improperly Raised Where Kettles Was Asked to Reveal Facts About Whether a Communication Took Place, Not Its Substance ...................... 37

       a.  On page 77 ...................................................................... 37

       Defendants' Position: ...................................................... 37

         1) The Information Sought Is Protected by the Attorney-Client Privilege .............................................. 38

         2) Kettles Did Not Waive the Attorney-Client Privilege ......................................................................... 41

//

iii

4. The Attorney-Client Privilege was Improperly Raised to Conceal Unlawful Conduct ...................................................... 43

    a. On page 88 .......................................................................... 43

        Defendants' Position: ...................................................... 44

            1) The Information Sought is Protected by the Attorney-Client Privilege ........................................ 44

            2) Kettles Did Not Waive the Attorney-Client Privilege ................................................................. 46

    a. On page 90 .......................................................................... 48

        Defendants' Position: ...................................................... 49

5. In Kettles' Deposition, Attorney-Client Privilege was Used as an Objection to Hide Whether Certain Conversations Took Place, Regardless of the Opinions or Communications Given. ............................................................................................ 49

    a. On page 139, lines 1-8 ....................................................... 49

        Defendants' Position: ...................................................... 50

            1) The Information Sought is Protected by the Attorney-Client Privilege ........................................ 50

6. In Kettles' Deposition, the Attorney-Client Privilege was Used to Protect Documents for which Kettles Waived the Privilege .................................................................................................. 52

    a. On page 140, line 25, to page 141 lines 1 through 20 ....... 52

        Defendants' Position: ...................................................... 55

7. The Attorney-Client Privilege was Improperly Raised to Protect Facts Showing Defendants Retaliation Against Miller ..................................................................................................... 57

    a. On page 97 .......................................................................... 58

        Defendants' Position: ...................................................... 58

            1) The Information Sought Is Protected by the Attorney-Client Privilege ........................................ 58

//

2) Kettles Did Not Waive the Attorney-Client Privilege ........................................................ 60

a. On page 157 ................................................................. 62

Defendants' Position: ................................................. 63

1) The Information Sought is Protected by the Attorney-Client Privilege .................................... 63

2) Kettles Did Not Waive the Attorney-Client Privilege ........................................................ 66

a. On page 158-159 ......................................................... 68

Defendants' Position: ................................................. 69

1) The Information Sought Is Protected by the Attorney-Client Privilege .................................... 69

2) Kettles Did Not Waive the Attorney-Client Privilege ........................................................ 72

a. On page 160-161 ......................................................... 74

Defendants' Position: ................................................. 74

1) The Information Sought is Protected by the Attorney-Client Privilege .................................... 75

2) Kettles Did Not Waive the Attorney-Client Privilege ........................................................ 77

a. On page 163: .............................................................. 79

Defendants' Position: ................................................. 79

a. On page 165 ................................................................. 80

Defendants' Position: ................................................. 82

a. On page 169 ................................................................. 85

Defendants' Position: ................................................. 86

8. Kettles Improperly Refused to Produce a Privilege Log ............ 87

a. On page 176-179 ......................................................... 87

Defendants' Position: ................................................. 91

//

v

B. RAELYNN NAPPER DEPOSITION ............................................. 93

   1. The Attorney-Client Privilege was Improperly Raised for Napper's discussion With Investigator Angela Reddock-Wright ...................................................... 94

      a. On page 77-79: .......................................... 94

         Defendant's Position: ................................ 96

      a. On page 111: ............................................ 98

         Defendants' Position: ............................... 99

   2. Attorney-Client Privilege Was Improperly Raised For Napper's Personal, Non-Legal Opinion .................................. 101

      a. On page 56, line 17: ................................. 101

         Defendants' Position: ............................... 102

C. ANGELA REDDOCK-WRIGHT DEPOSITION ......................... 104

   1. Reddock-Wright was Retained as an Investigator, Not as An Attorney, so Her Communications are Not Privileged ....... 106

      a. On page 14-16 ......................................... 106

         Defendants' Position: ............................... 107

      a. On page 32 .............................................. 109

         Defendants' Position: ............................... 110

      a. On page 157-158: .................................... 110

         Defendants' Position: ............................... 113

   2. Reddock-Wright Had No Attorney-Client Relationship with the City's Outside Counsel, So Any Privilege Objections Are Improper ....................................................... 114

      a. On page 19-20 ......................................... 114

         Defendants' Position: ............................... 115

      a. On page 29 .............................................. 115

         Defendants' Position: ............................... 115

      a. On page 35-36 ......................................... 117

         Defendants' Position: ............................... 118

a. On page 37.................................................................. 120

Defendants' Position: ................................................ 121

a. On page 141-142:..................................................... 121

Defendants' Position: ................................................ 122

3. The Mere Presence of Attorneys Does Not Trigger the Privilege.................................................................... 123

a. On page 23.................................................................. 123

Defendants' Position: ................................................ 124

D. DELIA IBARRA DEPOSITION.............................................. 126

1. Plaintiff's Counsel Sought to Come to a Consensus on the Disputes Herein by Meeting and Conferring With Counsel During the Deposition as Objections Were Raised................... 126

a. On page 74.................................................................. 126

Defendants' Position: ................................................ 128

1) The Information Sought Is Protected by the Attorney-Client Privilege...................................... 129

2) Defendants' Qualified Immunity Defense Does Not Waive the Attorney-Client Privilege .............. 131

2. Defense Counsel Improperly Raised the Privilege for Meetings Based Upon the Mere Presence of an Attorney ........ 135

a. On page 108-109 ......................................................... 135

Defendants' Position: ................................................ 136

1) Ibarra Was Permitted to Testify About Closed Session Communications That Occurred Outside the Presence of Counsel Even Though They Are Privileged Under the California Ralph M. Brown Act ("Brown Act")..................... 137

2) Closed Session Discussions That Occurred In the Presence of Counsel Are Subject to the Attorney-Client Privilege....................................... 137

3) The Crime Fraud Exception Does Not Apply...... 139

E.  GENETHIA HUDLEY-HAYES DEPOSITION ......................... 140

    1.  Hudley-Hayes' Deposition Holds the Power to Waive the  Attorney-Client Privilege for Communications Made to Her When She was a Fire Commissioner ................... 140

        a.  On page 32-33 ............................................................... 140

            Defendants' Position: ....................................................... 141

            1)The Fire Commissioners Did Not Have the Power to Waive the Attorney-Client Privilege ...... 141

    2.  There is No Attorney-Client Privilege for Communications Between  Hudley-Hayes and Erwin Chemerinsky, a Legal Scholar and Acquaintance ................................................ 143

        a.  On page 44.................................................................... 143

            Defendants' Position: ....................................................... 144

    3.  Hudley-Hayes Waived Attorney-Client Privilege When She Sent Emails to Miller and to The City Attorneys .............. 146

        a.  On page 68-69 .............................................................. 146

            Defendants' Position: ....................................................... 147

    4.  A Non-Legal Discussion About Miller's Character Should Not Trigger The Attorney-Client Privilege ............................. 149

        a.  On pages 88-89.............................................................. 149

            Defendants' Position: ....................................................... 151

V. THE PARTIES HAVE ATTEMPTED TO MEET AND  CONFER ON THESE ISSUES IN GOOD FAITH .............................................. 152

# TABLE OF AUTHORITIES

<u>**Cases:**</u>

*Admiral Ins. Co. v. District Court,*
881 F.2d 1492 (9TH Cir. 1989) .................................................................. 36

*Alpert v. Riley,*
2010 U.S. Dist. LEXIS 38331 (S.D. Tex. Apr. 19, 2010) ........................... 11

*Am. Re-Ins. Co. v. U.S. Fid. & Guar. Co.,*
837 N.Y.S.2d 616, 622 (App. Div. 1st Dept. 2007) ................................... 128

*AMCO Ins. Co. v. Madera Quality Nut LLC,*
2006 WL 931437 at *9 (E.D. Cal. Apr. 11, 2006) ....................................... 80

*Archer Daniels Midland Company v. Aon Risk Services, Inc. of Minnesota,*
187 F.R.D. 578, 587 (D. Minn. 1999) ........................................................ 20

*Arizona Dream Act Coalition v. Brewer,*
2014 WL 171923*6 (D. Ariz. 2014) ......................................................... 131

*Authentec, Inc. v. Atrua Technologies, Inc.,*
2008 WL 5120767, at *1 (N.D. Cal. 2008) ................................................. 21

*Barrow v. Greenville Independent Sch. Dist.,*
202 F.R.D. 480, 482-483 (N.D. Texas 2001) .............................................. 21

*Bell v. Fowler,*
99 F.3d 262, 271, 1996 U.S. App. LEXIS 27445, 22, 36 Fed. R. Serv. 3d
(Callaghan) 657 (8th Cir. S.D. 1996) ........................................................ 17

*Bittaker v. Woodford,*
331 F.3d 715, 718 (9th Cir. 2003) (en banc) ............................................ 128

*Capitol Vending Co. v. Baker,*
36 F.R.D. 45, 46 (D.D.C. 1964) ................................................................. 22

*Chi. Title Ins. Co. v. Superior Court,*
174 Cal. App. 3d 1142, 1149 (Cal. App. 1st Dist. 1985) ............................... 3

*City & County of San Francisco v. Sup. Ct.,*
37 Cal.2d 227, 234-235 (1951) .................................................................. 80

*Clark v. United States,*
289 U.S. 1, 15 (1933) ............................................................................... 136

ix

*Clarke v. Am. Commerce National Bank,*
   974 F.2d 127, 129 (9th Cir. 1992) ..........................................................8

*Coleman v. Schwarzenegger,*
   2008 WL 4300437, at *2 (E.D. Cal. 2008) .........................................23

*Commodity Futures Trading Commission v. Weintrab,*
   471 U.S. 343, 348 (1985) ............................................26, 81, 83, 86, 87, 89

*Community Federal Savings and Loan Assn. v. Federal Home Loan Bank Bd.,*
   96 F.R.D. 619, 621 (D.C.D.C. 1983)...................................................22

*Diversified Industries, Inc. v. Meredith,*
   572 F. 2d 596, 602 (8th Cir. 1977)...............15, 42, 47, 55, 57, 61, 67, 73, 78,
   84, 92, 143, 146, 149

*Dole v. Milonas,*
   889 F.2d 885, 888 n. 3 (9th Cir. 1989) .................................................8

*Domar Electric, Inc. v. City of Los Angeles,*
   9 Cal.4th 161, 170 (1994)..................................31, 35, 40, 46, 52, 60, 65, 71, 76

*Duplan Corp. v. Deering Milliken, Inc.,*
   397 F. Supp. 1146, 1190-91 (D.S.C. 1975).........................................28

*Fisher v. United States,*
   425 U.S. 391, 403 (1976) ..........32, 36, 39, 45, 51, 59, 64, 70, 75, 103, 130, 139

*Fletcher v. Union Pacific R.R. Co.,*
   194 F.R.D. 666, 670 (S.D. Cal. 2000) ..................................................9

*FTC v. Warner Comm's., Inc.,*
   742 F.2d 1156, 1161 (9th Cir. 1984) ..............................................11, 12

*Galarza v. United States,*
   179 FRD 291, 295 (SD CA 1998) .....................32, 39, 45, 51, 59, 64, 70,
   75, 103, 130, 139

*Green v. Baca,*
   226 F.R.D. 624, 651 (C.D. Cal. 2005)...........................................8, 10, 25

*Griffith v. Davis,*
   161 F.R.D. 687, 695 (C.D. Cal. 1995)................................................33

x

*Hearn v. Rhay,*
    68 F.R.D. 574, 581, 583 (E.D. Wash. 1975).................24, 48, 124, 126, 127, 131, 132, 150

*High Point Sarl v. Sprint Nextel Corp.,*
    2012 U.S. Dist. LEXIS 8435, 59, 2012 WL 234024 (D. Kan. Jan. 25, 2012)..90

*Home Indem. Co. v. Lane Powell Moss & Miller,*
    43 F.3d 1322, 1326 (9th Cir. 1995) ................................................... 127, 132

*In re Bieter Co.,*
    16 F.3d 929, 936 (8th Cir. 1994) ........................................................ 116, 119

*In re Bruce R. Lindsey,*
    158 F. 3d 1263 (D.C. Cir. 1998)................................................................. 113

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.,*
    658 F. 2d 1355, 1361, fn. 7 (9th Cir. 1981) ....................15, 42, 47, 55, 56, 61, 67, 73, 78, 84, 92, 143, 146, 149

*In re County of Erie,*
    473 F. 3d 413, 419 (2nd Cir. 2007) ................32, 40, 45, 59, 65, 70, 75, 103, 130, 131, 132, 139

*In re CV Therapeutics, Inc. Sec. Litig.,*
    2006 U.S. Dist. LEXIS 41568, 2006 WL 1699536 (N.D. Cal. June 16, 2006) ......................................................................................8

*In re Fischel,*
    557 F.2d 209, 211 (9th Cir. 1977) ..............................................................8

*In re Grand Jury Proceedings,*
    87 F.3d 377, 381-382 (9th Cir. 1996)........................................................ 140

*In re Grand Jury Proceedings,*
    220 Cal. Rptr. 507, 512 (Cal. Ct. App. 1985)............................................ 124

*In re Grand Jury Subpoena (Mark Torf/Torf Environmental Management),*
    357 F.3d 900, 907 (9th Cir. 2004) ..............................................................10

*In re Grand Jury Subpoena Duces Tecum,*
    112 F.3d 910, 913, 915, 921 (8th Cir. Ark. 1997)................................25, 113

//

xi

*In re Kellogg Brown & Root,*
2014 WL 2895939, at *3 (D.C. Cir. June 27, 2014) ...................................... 111

*In re Oracle Sec. Litig.,*
2005 WL 6768164, at *4 (N.D. Cal. 2005)..............15, 42, 47, 56, 61, 66, 72, 77, 84, 92

*In re Pac Pictures Corp.,*
679 F.3d 1121, 1130 (9th Cir. 2012) ............16, 43, 48, 57, 62, 67, 73, 78, 85, 92

*In re Sealed Case,*
737 F. 2d 94, 99 (DC Cir. 1984)..................32, 36, 40, 46, 51, 59, 65, 71, 76, 103, 131, 139

*In re UMW Emple. Benefit Plans Litig.,*
159 F.R.D. 307, 310, 1994 U.S. Dist. LEXIS 19151, 6-7 (D.D.C. 1994) ........ 28

*Kaiser Foundation Hospitals v. Superior Court,*
66 Cal.App.4th 1217, 1226-1228 (1998)..........97, 98, 100, 108, 109, 116, 117, 119, 120, 125

*Kyle Engineering Co. v. Kleppe,*
600 F.2d 226, 231 (9th Cir. 1979) .................................................................. 22

*Lewis v. Wells Fargo & Co.,*
266 F.R.D. 433, 441-442 (N.D. Cal. 2010)................................................. 32, 36

*Maricopa Audubon Soc. v. United States Forest Service,*
108 F. 3d 1089, 1092 (9th Cir. 1997)............31, 36, 39, 45, 51, 59, 64, 70, 75, 102, 130, 139

*McCafferty's, Inc. v. The Bank of Glen Burnie,*
179 F.R.D. 163, 169-170 (D. Md. 1998).....16, 43, 48, 57, 62, 67, 73, 78, 85, 93

*McCaugherty v. Siffermann,*
132 F.R.D. 234, 239 (N.D.Cal.1990) ...................................................... 116, 119

*Nagle v. Superior Court of the City and County of San Francisco,*
28 Cal.App.4th 1465, 1467-68 (1994)............................................................ 22

*National Wildlife Federation v. United States Forest Service,*
861 F.2d 1114, 1116 (9th Cir. Or. 1988)......................................................... 11

//

xii

*O'Rourke v. Darbishire,*
    loc. cit., supra; also pp. 614, 622, 631, 633 (1920). ........................................ 136

*Pearson v. Callahan,*
    555 U.S. 223, 232 (2009) ........................................ 133

*Philadelphia v. Westinghouse Electric Corp.,*
    205 F. Supp. 830, 831 (ED Pa. 1962) ........................................ 50

*Phillips v. C.R. Bard, Inc.,*
    290 F.R.D. 615, 627 (D. Nev.2013) ........................................ 8

*Quiksilver, Inc. v. Kymsta Corp.,*
    247 F.R.D. 579, 584 (C.D. Cal. 2007) ........ 16, 43, 48, 57, 62, 68, 74, 79, 85, 93

*Rein v. United States Patent & Trademark Office,*
    553 F. 3d 353, 376 (4th Cir. 2009) ........... 32, 36, 39, 45, 51, 59, 64, 70, 75, 102, 130, 139

*Rhone-Poulenc Rorer Inc. v. Home Indem. Co.,*
    32 F.3d 851, 864 (3d Cir. 1994) ........................................ 131

*Seaman v. Sedgwick, LLP,*
    2014 U.S. Dist. LEXIS 104098, 5, 2014 WL 3738055 (C.D. Cal. July 28, 2014) ........................................ 127

*SmithKline Beecham Corp. v. Apotex Corp.,*
    232 F.R.D. 467, 480 (E.D. Pa. 2005) ........................................ 51, 64

*Southern Union Co. v. Southwest Gas Corp.,*
    205 F.R.D. 542, 549 (D. Ariz. 2002) ........................................ 10

*St. Croix v. Superior Court,*
    228 Cal.App.4th 434 (2014) ................ 31, 35, 40, 46, 51, 52, 60, 65, 71, 76

*Tennenbaum v. Deloitte & Touche,*
    77 F.3d 337, 340 (9th Cir. 1996) ............ 16, 43, 48, 57, 62, 67, 68, 73, 78, 79, 85, 92, 93

*Thomas v. Cate,*
    715 F. Supp. 2d 1012, 1019, 2010 U.S. Dist. LEXIS 21750, 6 (E.D. Cal. 2010) ........................................ 12, 25

//

xiii

*Thykkuttathil v. Keese,*
  294 F.R.D. 597, 600 (W.D. Wash. 2013)............................................................20

*U.S. v. Amlani,*
  169 F.3d 1189, 1195 (9th Cir. 1999) .....................................................132, 133

*Union Savings Bank of Patchogue, N.Y. v. Saxon,*
  209 F. Supp. 319, 320 (D.D.C. 1962)..............................................................23

*United States v. Bd. of Trade of Chi.,*
  1973 U.S. Dist. LEXIS 11307, 9 (1973) ......................................................53, 82

*United States v. El Paso Co.,*
  682 F.2d 530, 541 (5th Cir. 1982) ....................................................................9

*United States v. International Broth. of Teamsters, Chauffeurs,*
  *Warehousemen & Helpers of America, AFL-CIO,*
  119 F. 3d 210, 215 (2nd Cir. 1997)..............15, 42, 47, 55, 56, 61, 66, 72, 77,
  84, 92, 143, 146, 149

*United States v. Louisville & Nashville R. Co.,*
  236 U.S. 318, 336 (1915) ..............................................................................89

*United States v. Martin,*
  278 F.3d 988, 999 (9th Cir. 2002) ..............................................................8, 25

*United States v. Miracle Recreation Equip. Co.,*
  118 F.R.D. 100, 104 (S.D. Iowa 1987)............................................................22

*United States v. National Ass'n of Realtors,*
  242 FRD 491, 496) (ND IL 2007)..............33, 36, 40, 46, 52, 60, 65, 71, 76,
  103, 131, 139

*United States v. Rockwell International,*
  897 F.2d 1255, 1265 (3rd Cir. 1990)..............................................................33

*United States v. Salsedo,*
  607 F.2d 318, 320 (9th Cir.1979)..............15, 42, 47, 56, 61, 66, 72, 77, 84, 92

*Upjohn Co. v. United States,*
  449 US 383, 390, 101 S. Ct. 677, 683, 685 (1981)..........26, 31, 32, 35, 36, 39,
  40, 45, 46, 50, 51, 59, 63, 64, 65, 70, 72, 75, 76, 79, 80, 86, 89, 102, 103, 115,
  119, 130, 131, 138, 139

xiv

*Walker v. County of Contra Costa*,
227 F.R.D. 529, 535, 536 (N.D. Cal. 2005) ...............98, 100, 101, 109, 111, 117, 120, 125, 126

*Warzon v. Drew*,
155 F.R.D. 183, 185 (E.D. Wis. 1994)..........................................................23

*Weil v. Investment/Indicators, Research & Mgt., Inc.*,
647 F. 2d 18, 23 (9th Cir. 1981)......................15, 24, 25, 42, 47, 55, 56, 61, 66, 72, 77, 84, 91, 112, 142, 146, 149

*Wyoming v. U.S. Dept. of Agriculture*,
239 F.Supp.2d 1219, 1231 (D. Wyo. 2002) .....................................................10

**Statutes:**

42 U.S.C. § 1983 ...........................................................................................127

Gov. Code § 54963(a).....................................................................................137

Gov. Code § 54963(b).....................................................................................137

**Other Authorities:**

*Restatement (Third) of the Law Governing Lawyers* § 97 Cmt. c (2000) ...........53

**Rules:**

Fed. Rules Civ. Proc., rule 26(b)(2).......................................................17, 19, 21

Fed. Rules Civ. Proc., rule 26(b)(3).............................................................9, 10

Fed. Rules Civ. Proc., rule 26(b)(5)(A) ...............................................................2

Fed. Rules Civ. Proc., rule 26(b)(5)(A)(ii) ...............................................93, 119

Fed. Rules Civ. Proc., rule 26(b)(5)(B) .......................................................27, 54

Fed. Rules Civ. Proc., rule 30(a)(2).........................................................19, 21

Fed. Rules Civ. Proc., rule 30(a)(2)(i) ...............................................................17

Fed. Rules Civ. Proc., rule 31 ...........................................................................17

Fed. Rules Civ. Proc., rule 37(a).........................................................................1

Fed. Rules Civ. Proc., rule 45(d).........................................................................1

Fed. Rules Evid., rule 401 ..............................................................................114

Fed. Rules Evid., rule 402..............................................................................114

xv

Fed. Rules Evid., rule 403 ....................................................................... 114

Fed. Rules Evid., rule 502 .................................................................... 11, 24

Fed. Rules Evid., rule 502(a) ............................................................... 10, 28

Fed. Rules Evid., rule 502(b) ............................................................... 27, 54

Fed. Rules Evid., rule 502(d)(6) ............................................................. 112

Fed. Rules Evid., rule 503(d)(3) ............................................................... 54

Fed. Rules Evid., rule 701 ....................................................................... 104

Fed. Rules Evid., rule 702 ............................................................... 104, 114

Fed. Rules. Civ. Proc., rule 30 .......................................................... 6, 20, 24

Fed. Rules. Evid., rule 503 (b) ................................................................. 34

Local Rule 37 ............................... 1, 16, 37, 44, 50, 58, 63, 69, 74, 79, 82, 86, 91, 96, 108, 113, 115, 124

Local Rule 37-1 ................................................................................... i, 3

Local Rule 45-1 ....................................................................................... 1

NOTICE OF MOTION AND LOCAL RULE 37-1 JOINT STIPULATION RE: PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSES TO DEMAND FOR DOCUMENTS, SET TWO AND REQUEST FOR AN ORDER FOR EVIDENTIARY SANCTIONS

COMES NOW, Plaintiff STEPHEN MILLER by and through counsel, and respectfully requests pursuant to Rule 37(a) and 45(d) of the Federal Rules of Civil Procedure and L.R. 45-1, this Court for a determination of issues in a discovery dispute concerning matters and communications at issue.

Pursuant to Local Rule 37, Plaintiff Stephen Miller, and Defendants County of Los Angeles, Eric Garcetti, Richard Llewellyn, Delia Ibarra, Andrew Glazier, Steve Fazio, Jimmie Woods-Gray, and Jimmy Hara M.D. by and through their respective counsels, submit this joint statement for Plaintiff's motion. This motion will be based on this statement and attached declaration and Exhibits, Request for Judicial Notice, subsequent pleadings and any such pleading or evidence or oral argument as allowed by the court.

## I.

## INTRODUCTORY STATEMENTS

## PLAINTIFF'S INTRODUCTORY STATEMENT:

### A. THE NATURE OF THE CASE AND DISPUTE

This is a civil rights action. Stephen Miller was employed as the Independent Assessor of the Los Angeles Fire Department. His position was created as a watchdog position by Los Angeles City Charter section 523. In this position, Miller's job was to audit, assess and review the Fire Department's handling of complaints of misconduct committed by employees, sworn or civilian, of the Fire Department. In one report, Miller included comments criticizing City Attorney's Office. From that moment on, the city attorneys began to engineer ways to retaliate against Miller and to limit and adversely affect his employment.

While the retaliatory motive originated with the city attorneys, they soon passed on their behavior to the new mayor and fire commissioners. The city attorneys got the Mayor's Office and Fire Commission to comply by issuing false and fraudulent legal advice. As a result of the protected speech Miller made

1

criticizing the Los Angeles City Attorney's Office, Miller endured retaliation that eventually lead to his termination.

There are three major discovery issues in dispute. First, the document production has been incomplete. In part this is because of the massive quantity of documents held within the email servers for the City. However, the Plaintiff's counsel is not satisfied with the production. Gregg Kettles, counsel to the former Mayor, brought home and stored on a personal hard drive. The Defense has failed to provide any documents or privilege log from this hard drive, and has failed to provide a privilege log for these documents, although one was promised on page 179 of Kettles' deposition. (Decl. Mary E. Collins, Exh. A, pg. 179).

The Defense has produced documents on the morning of depositions. Deponents like Raelynn Napper, had their privilege logs provided after the deposition, which made it difficult for the Plaintiff's counsel to object or review the man documents provided. FRCP Rule 26(b)(5)(A) sets forth requirements for a privilege log, for documents redacted or withheld on the basis of privilege. This method of discovery has been burdensome for the Plaintiff's counsel, because inadequate document review may be completed prior to deposing each witness.

The second question of dispute has been the number of depositions. The Plaintiff needs more than ten depositions, because of the number of witnesses and the eight defendants.

The third issue of ongoing discovery dispute has been the improper use of the attorney-client privilege objection in all depositions where the witness happens to have a license from the State Bar. This action implicates many officials within the City of Los Angeles government. Many of them, like Miller, are attorneys, though their employment with the City does not call on them to practice law. Some work as investigators and managers, while others provide legal counsel to the Mayor's Office or to the City in general as city attorneys. Not all communications

2

made in the presence of attorneys are privileged.

This motion follows the Rule 37-1 efforts by counsel for the parties to resolve these issues. Emails and letters have been exchanged. Discovery issues have also been discussed through phone calls and in person during depositions. Prior to filing this stipulation, drafts outlining the discovery issues were exchanged and discussed. (Please see the attached correspondence, Decl. Mary Collins, ¶11).

## B. THE NATURE OF THE RELIEF SOUGHT

Plaintiff seeks an order to compel disclosure of documents and testimony, which the Defendants have refused to disclose because of the attorney-client privilege. Privilege can be waived when a client has, "placed in issue a communication which goes to the heart of the claim in controversy." *Chi. Title Ins. Co. v. Superior Court,* 174 Cal. App. 3d 1142, 1149 (Cal. App. 1st Dist. 1985).

The privilege must be waived for all communications made between the deputy city attorneys and any members of the City of Los Angeles, where the discussion concerned Stephen Miller. The communications between the disgruntled city attorneys Janet Jackson, Zna Houston and Vivienne Swanigan which were made in retaliation against Miller's criticism, are of central importance in this matter, waiving the privilege. The city attorneys abused their discretion when they gave legal counsel to the City which was not based on legal principles, but based on personal vendettas to retaliate against Miller for criticizing the work of the City Attorney's Office. The legal advice had been placed squarely at issue through the Plaintiff's claims.

Plaintiff seeks leave from the court for additional depositions. Five have been taken, and additional twenty-one are set to be scheduled. In addition Plaintiff would like leave to retake the depositions already taken, because of the improper use of attorney-client privilege.

Plaintiff also seeks to have document discovery completed, including

3

production and privilege logs for the documents which Gregg Kettles put on his hard drive.

## DEFENDANTS' INTRODUCTORY STATEMENT:

Plaintiff's lawsuit arises from a dispute over legal advice that the City of Los Angeles' City Attorney's office gave to the City's Fire Commission in 2010. Miller was appointed to the new position of Independent Assessor ("IA") for the Los Angeles Fire Department in October 2009 and reported directly to the Board of Fire Commissioners. Miller's official duties included auditing and assessing the Fire Department's handling of disciplinary matters. Following Miller's appointment, questions arose regarding the IA's ability to access confidential personnel records of Fire Department employees. In response to the Fire Commission's request for legal advice regarding these questions, the City Attorney's office provided a written legal opinion in August 2010 to the Fire Commission, concluding that the IA was not entitled to access confidential personnel records. Miller disagreed with the City Attorney's opinion and claims that the City Attorney gave the Fire Commission bad advice.

Miller relentlessly attacked the City Attorney's Office and its attorneys by filing State of Bar complaints against several different attorneys in the City Attorney's office, issuing a press release, and filing multiple tort claims and this lawsuit. Miller alleges that the City discriminated and retaliated against him for criticizing the City Attorney's legal services in a March 2010 report and disagreeing with the City Attorney's opinion regarding the IA's access to confidential personnel files. Because Miller's allegations focus largely on the conduct of the City Attorney's office, the key players in this lawsuit are attorneys in the City Attorney's office, the Mayor's office and outside legal counsel to the City. As a result, some of the discovery that Miller seeks involves attorney-client

4

privileged communications.

Most of the communications that Miller seeks to obtain fall into one of three categories: (1) communications between the Mayor's legal counsel Gregg Kettles, the Mayor's office and/or the City Attorney's office; (2) communications between the City's independent investigator Angela Reddock, the City's outside legal counsel Irma Rodriguez Moisa and the City's EEO and Employee Development Manager Raelynn Napper; and (3) communications between the Fire Commissioners, the Mayor's legal counsel and/or the City Attorney's office. Miller believes these communications are not privileged because they involved "third parties".

Miller's attempt to compel further deposition testimony is meritless because it is based upon a fundamental misunderstanding of how the attorney-client privilege operates for entities and who holds the privilege. For an entity like the City of Los Angeles, the City's attorney-client privilege protects not only the giving of legal advice to those who can act on it but also the giving of information to the attorney from any persons within the client's organization to enable the attorney to give informed advice. (See *Upjohn Co. v. United States,* (1981) 449 US 383, 390, 101 S. Ct. 677, 683.) The communications of attorneys in the City Attorney's Office with other City employees are privileged. The City – not Miller or other employees – holds the privilege as to privileged communications by attorneys within the City Attorney's Office. In addition, the Mayor's Office has its own staff of attorneys for that office, and their communications are also privileged as to that Office. Finally, the privilege can also apply to communications with outside investigators retained through an attorney of the entity to conduct workplace investigations.

Second, Miller seeks leave of court to take at least 21 depositions in addition

5

to the five he has already taken.  Included among the deponents Miller seeks to depose are high-ranking elected officials Mayor Eric Garcetti, former City Attorney Carmen Trutanich and current City Attorney Michael Feuer.  Miller fails to demonstrate the good cause required by FRCP Rule 30 for taking 16 depositions above the ten deposition limit.  Not only does Miller fail to articulate reasons why the depositions sought are necessary to his discovery, but he also makes no effort to explain why the four already taken were necessary.  As to the high-ranking elected officials, Miller has not shown that they have information relating to Miller's claims and that there are no other sources available for that information.  Miller's request should also be denied because it is premature as he has yet to even take 10 depositions.  Courts generally do not grant leave to conduct more depositions until the moving party has exhausted the 10 depositions permitted by the FRCP.

Finally, Miller complains that Defendants' document production is incomplete, that the Mayor's former legal counsel Gregg Kettles should produce City documents that currently exist on his home computer and that a privilege log should be provided for the documents on Kettles home computer.  All of Miller's contentions in this regard are without merit.  Defendants' review of approximately 277,000 electronic documents for this lawsuit took much longer than expected, as explained further in the three stipulations filed by the parties in October, January and March to extend the discovery cut-off.  Defendants have produced nearly 29,000 pages of documents and have provided privilege logs for those productions.  Because over one dozen key players in this case are attorneys, Defendants are required to carefully review the contents of each document to evaluate whether the document is privileged.  Notwithstanding, Defendants have been diligent and anticipate completing the rest of the document production by the end of this month,

6

prior to the Court's hearing on this motion.

The documents on Kettles home computer are protected from disclosure by the attorney-client and attorney work product privileges. Miller's contention that Kettles waived privileges when he took these documents home is without merit. Kettles is not the holder of the privileges and, therefore, he cannot waive them. Further, Kettles maintained the confidential nature of the documents at issue at all times. Accordingly, Miller's claim of waiver of privileges by Kettles should be denied. Defendants will provide a privilege log for those documents.

## II.

## PRIVILEGE LOG FOR GREGG KETTLES HAS NOT BEEN PROVIDED AND PRIVILEGES HAVE BEEN IMPROPERLY ASSERTED TO HIDE CITY MISCONDUCT

## PLAINTIFF'S CONTENTIONS:

### A. THE DEFENSE HAS FAILED TO PROVIDE A PRIVILEGE LOG FOR COMMUNICATIONS SAVED ON KETTLES' HARD DRIVE

Defendants' counsel has failed to provide an adequate privilege log for records not produced. The privilege logs which have been produced are incomplete and redacted. (Decl. Mary E. Collins, Exhibits F, G, H, I). Under the FRCP 26(b)(5), "when a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications or tangible things not produced or disclosed- and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." This requirement is commonly satisfied by filing a privilege log, with adequate descriptions of the nature of the documents and the reason for their privilege.

As the party asserting the attorney-client privilege, Defendants "have the

7

burden of proving that the documents submitted for *in camera* review are indeed privileged." *In re CV Therapeutics, Inc. Sec. Litig.*, 2006 U.S. Dist. LEXIS 41568, 2006 WL 1699536 (N.D. Cal. June 16, 2006); *See also United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002). Defendants must show that the documents adhere to the essential elements of the attorney-client privilege: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.'" 974 F.2d at 1071, n.2 (citing *In re Fischel*, 557 F.2d 209, 211 (9th Cir. 1977)). Each of these elements must be satisfied document by document by the privilege log and supporting declarations.

Without the production of a privilege log, there is no showing of proof that documents are privileged. The Ninth Circuit has found a privilege log which contains the following information to be sufficient: "(a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated." *Phillips v. C.R. Bard, Inc.*,290 F.R.D. 615, 627 (D. Nev.2013) (citing *Dole v. Milonas*, 889 F.2d 885, 888 n. 3 (9th Cir. 1989)).A party claiming attorney-client privilege must identify specific information and communications that are privileged and the grounds supporting invocation of the privilege for each allegedly privileged piece of evidence. Blanket assertions of the privilege are "extremely disfavored." *Green v. Baca*, 226 F.R.D. 624, 651 (C.D. Cal. 2005), citing *Clarke v. Am. Commerce National Bank*, 974 F.2d 127, 129 (9th Cir. 1992). "Such assertions disable the court and the adversary party from testing the merits of the claim of privilege." *Id.*, citing *United States v.*

8

*El Paso Co.*, 682 F.2d 530, 541 (5th Cir. 1982).  No privilege log, of any kind, has been provided for the documents which Kettles took from the City and stored on a hard drive.

## B. KETTLES' DOCUMENTS ARE NOT PROTECTED BY WORK PRODUCT PRIVILEGE

Like the attorney-client privilege, the work product privilege is narrowly construed. Under the work product doctrine outlined in Rule 26(b)(3) of the Federal Rules of Civil Procedure, a party may not discover materials prepared in anticipation of litigation by an opposing party's counsel unless the party has "substantial need" for the materials and is "unable without undue hardship to obtain the substantial equivalent of the materials by other means." FED.R.CIV.PROC. 26(b)(3). "The work product doctrine attempts to strike a balance between the policy of open discovery and an attorney's need to analyze and prepare a client's case without interference or free-riding by an opposing party." *Fletcher v. Union Pacific R.R. Co.*, 194 F.R.D. 666, 670 (S.D. Cal. 2000).

Miller has a substantial need for the communications, work product, and internal memoranda of the City. He has no ability to access the communications made in which Deputy City Attorneys Swanigan, Jackson and Houston allegedly ordered City government officials, through fraudulent legal advice, to retaliate against and eventually terminate Miller for his speech. These communications and documentation are held exclusively by the City, and are of central importance to Miller's governmental tort and First Amendment retaliation claims. The need is even greater for documents taken by Gregg Kettles, former counsel to the mayor, because he took his documents and communications home and stored them on a personal hard drive. Only Gregg Kettles knows what is stored on that hard drive, because Gregg Kettles has possession of this hard drive. It is impossible for the plaintiff to know what documents Kettles took without balancing the interests of

9

the plaintiff and Kettles, a former employee and witness.

The need for the City to keep Kettles' documents confidential is de minimus. The City waived the privilege to Kettles' communications and work product which he took home. The City was aware that Kettles took these communications and work product with him, and took no steps to regain the privilege. Any lasting claim of privilege is outweighed by Miller's need to know if his termination was based upon unlawful retaliation.

The privileges for attorney work product is limited to work prepared in anticipation of litigation. The Ninth Circuit has held that to qualify for protection against discovery under Rule 26(b)(3), material must have two characteristics: (1) it must be prepared in anticipation of litigation or for trial; and (2) it must be prepared by or for another party or by or for that other party's representative. *In re Grand Jury Subpoena (Mark Torf/Torf Environmental Management)*, 357 F.3d 900, 907 (9th Cir. 2004). "The burden of establishing protection of materials as work product is on the proponent, and it must be specifically raised and demonstrated rather than asserted in a blanket fashion." *Green v. Baca*, 226 F.R.D. 624, 652, (C.D. Cal. 2005); citing *Southern Union Co. v. Southwest Gas Corp.*, 205 F.R.D. 542, 549 (D. Ariz. 2002); see *Wyoming v. U.S. Dept. of Agriculture*, 239 F.Supp.2d 1219, 1231 (D. Wyo. 2002) ("A blanket claim as to the applicability of the work product doctrine will not satisfy this burden"). The City's claim of privilege should be limited to the work product and communications made in planning for this particular litigation. The City has made numerous blanket claims of attorney-client privilege, in discovery responses and in depositions.

The privilege should be limited for the non-entity Defendants as well. Rule 502(a) of the Federal Rules of Evidence says that privileged information "in a federal proceeding" shall not be disclosed unless a waiver occurs. However, the attorney-client privilege may not be used to safeguard emails and other

10

communications made "before a federal case was initiated or contemplated," because the privilege of Rule 502 does not apply. *Alpert v. Riley*, 2010 U.S. Dist. LEXIS 38331 (S.D. Tex. Apr. 19, 2010)). Many relevant communications occurred before the Defendants contemplated the initiation of Miller's action in federal court. The deputy City Attorneys Jackson, Swanigan, and Houston began retaliating against Miller and his speech in 2011, and continued until he was eventually terminated and brought claims against the City in 2013. The City and its officers made communications in preparation for litigation for a relatively brief time. Communications or work product made outside of this zone of time should not be protected by attorney-client privilege. The City has failed to confine the use of the privilege to the communications made in contemplation of federal litigation.

## C. THE CITY'S DOCUMENTS ARE NOT PROTECTED BY THE DELIBERATIVE PROCESS PRIVILEGE

Public entities, like the City of Los Angeles, defendants have a special privilege known as the deliberative process privilege. The deliberative process privilege exempts from discovery information reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which government decisions and policies are formulated. *FTC v. Warner Comm's., Inc.,* 742 F.2d 1156, 1161 (9th Cir. 1984). The privilege shields from public disclosure confidential inter-agency memoranda on matters of law or policy. *National Wildlife Federation v. United States Forest Service*, 861 F.2d 1114, 1116 (9th Cir. Or. 1988).

The burden of establishing application of the deliberative process privilege is on the party asserting it. *e.g. North Pacifica,* 274 F.Supp. 2d at 1121. Assertion of the deliberative process privilege requires: (1) a formal claim of privilege by the head of the department having control over the requested information; (2) assertion of the privilege based on actual personal consideration by that official;(3) a

11

detailed specification of the information for which the privilege is claimed, with an explanation why it properly falls within the scope of the privilege; and (4) a showing that the material for which the privilege is asserted has been kept confidential. *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1019, 2010 U.S. Dist. LEXIS 21750, 6 (E.D. Cal. 2010).

The City has failed to show why the documents and communications that have been withheld on the basis of privilege satisfy any of the factors for establishing deliberative process. None of the documents requested has been subject to a formal claim of privilege by the mayor or any other government official based on actual consideration.

The deliberative process privilege exempts from discovery information reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which government decisions and policies are formulated. *FTC v. Warner Comm's.*, Inc., 742 F.2d 1156, 1161 (9th Cir. 1984). At the heart of Miller's complaint is a claim that the City allowed the City Attorney's Office to form policy around him, not based on law, but on unlawful retaliation. Deputy City Attorneys Houston and Swanigan published a memorandum dated August 23, 2010, titled "L.A. Fire Department Independent Assessor's Authority to Access Fire Department Personnel and Disciplinary Records and Information." This memorandum was not based on law or policy, but was written to limit Miller's authority to access records that were vital to performing his work as the Independent Assessor. The Memorandum was in direct contravention of the Los Angeles City Charter Section 523, which said that the Independent Assessor "shall have the same access to Fire Department information as the Board of Fire Commissioners."

The advice which the City Attorneys communicated within the City about Miller are not subject to the deliberative process privilege because they were made

12

not based on legitimate reflections and discussions of law and policy, but by an improper motive of retaliation against Miller's speech.

**DEFENDANTS' CONTENTIONS:**

### A. DEFENDANTS' DOCUMENT PRODUCTION AND DOCUMENTS STORED ON GREG KETTLES HOME COMPUTER DEFENDANTS HAVE DILIGENTLY PRODUCED DOCUMENTS AND PRIVILEGE LOGS

Defendants have approximately 277,000 electronic documents that may be relevant to this lawsuit, either as Rule 26 disclosures and/or as responsive to various discovery requests from Plaintiff. Defendants have been diligently reviewing the documents to determine if they are relevant and if any of the documents are protected from disclosure by the attorney-client privilege, attorney work product privilege and/or deliberative process privilege. The parties have acknowledged the significant effort and expense required to review these documents in three separate stipulations to extend the discovery cut-off. (Dkt. # 120, 122, 126.) Nearly 29,000 pages of documents have been produced along with privilege logs and Defendants anticipate completing the document review by the end of March. Because most of the key players in this case are attorneys, some of whom are only functioning as attorneys in certain instances, Defendants could not easily cull out the privileged documents by conducting a word search of defense counsel's names, unlike in other cases. Rather, Defendants were required to carefully review the contents of each document to evaluate whether the document was privileged. Defendants then had to evaluate whether the privilege could be protected by redacting a portion of the document, which is even more time consuming, and then complete a privilege log. This was and continues to be a complex process that takes a substantial amount of time at significant expense to

13

the City.  (Declaration of Brian P. Walter ("Walter Decl."), ¶¶2-4.)

The time required to review, identify and produce documents has continually impacted Defendants' ability to provide Plaintiff with all necessary documents and privilege logs.  Defendants expressly advised Plaintiff of this in advance of the deposition of Raelynn Napper, and asked Plaintiff to postpone her deposition in order to allow Defendants time to complete the document review so that Plaintiff would have all necessary documents prior to the deposition.  When Plaintiff refused to postpone the depositions, Defendants informed Plaintiff that they would use their best efforts to provide documents related to Napper on the eve of her deposition.  Plaintiff did not object to this arrangement.  (Walter Decl., ¶¶2-4; Walter Decl., Ex. 4.)  Notwithstanding, for the other depositions taken by Plaintiff, the notice of deposition did not include any document requests requiring the deponents to produce documents.  When Plaintiff asked about the documents during the depositions, Defendants informed Plaintiff that they would be provided as expeditiously as possible.  Further, in subsequent meet and confer meetings regarding the discovery, Plaintiff agreed to extend the discovery cut-off date three separate times in order to give Defendants more time to complete the document review.  (Dkt. # 120, 122, 126.)  Therefore, Plaintiff's complaints about being provided with documents on the day of depositions and his contention that he is not satisfied with Defendants "incomplete" document production is not well-taken in light of Defendants diligent efforts to complete the document review.

## B. THE DOCUMENTS STORED ON GREGG KETTLES HOME COMPUTER HARD DRIVE ARE PRIVILEGED AND A PRIVILEGE LOG WILL BE PROVIDED TO PLAINTIFF

During his deposition, Kettles testified that while he was employed by the City, he made a copy of one of the computer hard drives at the City where he saved

14

his work. Without citing any authority whatsoever, Plaintiff claims that this somehow constitutes a waiver of the attorney-client privilege. This argument must be rejected. At no time did Kettles waive the attorney-client or attorney work product privileges regarding documents stored on his home computer. Where the client is an entity, the privilege belongs to and may be waived only by the entity and not individual employees. (*Weil v. Investment/Indicators, Research & Mgt., Inc.*, 647 F. 2d 18, 23 (9th Cir. 1981); *United States v. International Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL-CIO*, 119 F. 3d 210, 215 (2nd Cir. 1997); *In re Oracle Sec. Litig.*, 2005 WL 6768164, at *4 (N.D. Cal. 2005) *citing to United States v. Salsedo*, 607 F.2d 318, 320 (9th Cir.1979) ("[l]ike the attorney-client privilege, the holder of the work product privilege may waive it").) Further, privileged communications that occur during the period of employment do not lose their protection when the employee leaves the client entity. (*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 658 F. 2d 1355, 1361, fn. 7 (9th Cir. 1981).) The attorney-client privilege is absolute, and evidence protected by the privilege may not be ordered disclosed regardless of its relevance. (*See, Diversified Industries, Inc. v. Meredith*, 572 F. 2d 596, 602(8th Cir. 1977).) Here, there is no evidence that either the City, the Mayor's Office, or Kettles ever disclosed privileged communications in Kettles' possession to anyone outside the attorney-client relationship, or that any of them intended to waive the privilege at any time. Further, there is no evidence that Kettles did not take precautions to safeguard the documents from being viewed by persons outside the attorney-client relationship.

More importantly, Plaintiff has not – and cannot – cite any authority to support waiver of the privileges simply because Kettles took home work documents. Indeed, Plaintiff's contention means that the privileges are waived any

15

time an attorney takes work home or works from a personal computer. Under Plaintiff's theory, an attorney who stores privileged documents on a laptop waives the privilege by taking the laptop home or away from the work site. The law of waiver of the attorney-client privilege does not operate in such an absurd prejudicial fashion. (*Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340 (9th Cir. 1996) ("The doctrine of waiver of the attorney-client privilege is rooted in notions of fundamental fairness"); *In re Pac Pictures Corp.*, 679 F.3d 1121, 1130 (9th Cir. 2012) (holding involuntary disclosures do not automatically waive the attorney-client privilege); *McCafferty's, Inc. v. The Bank of Glen Burnie*, 179 F.R.D. 163, 169-170 (D. Md. 1998) (holding memo sent by attorney to corporate employee was not inadvertently waived when employee tore up the memo and threw it in the trash can from which it was retrieved by a private investigator).) As the Ninth Circuit has noted, "the focal point of privilege waiver analysis should be the holder's disclosure of privileged communications to someone outside the attorney-client relationship[.]" (*Quiksilver, Inc. v. Kymsta Corp.*, 247 F.R.D. 579, 584 (C.D. Cal. 2007), *quoting Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 341 (9th Cir.1996).)

Finally, Defendants will agree to provide Plaintiff with a log regarding the privileged documents on Kettles home computer.

### C. PLAINTIFF HAS NOT IDENTIFIED ANY DOCUMENTS IT SEEKS TO COMPEL TO WHICH DEFENDANTS HAVE ASSERTED THE DELIBERATIVE PROCESS PRIVILEGE

Although Plaintiff contends Defendants have improperly withheld documents based on the deliberative process privilege, Plaintiff fails to identify one single document Defendants have withheld for this reason in his motion to compel as required by Local Rule 37. Because Plaintiff has failed to identify

16

specific documents it seeks to compel, Defendants are unable to sufficiently respond to Plaintiff's arguments regarding the deliberative process privilege. Therefore, Plaintiff's argument that Defendants are improperly asserting the deliberative process privilege is premature and should be rejected at this time.

## III.

## PLAINTIFF HAS GOOD CAUSE TO REQUEST LEAVE FOR MORE THAN TEN DEPOSITIONS

### PLAINTIFF'S CONTENTIONS:

The third issue in dispute has been the number of depositions set by the Plaintiff. Under the Federal Rules of Civil Procedure, Rule 30(a)(2)(i), A party must obtain leave of court for a deposition if the parties have not stipulated to the deposition and "if the deposition would result in more than 10 depositions being taken under this rule or Rule 31 by the plaintiffs." The Court must grant leave consistent with Rule 26(b)(2). The court may grant additional depositions where there is "good reason" for them, which means that they will not be "cumulative" and will serve a "proper purpose." *Bell v. Fowler*, 99 F.3d 262, 271, 1996 U.S. App. LEXIS 27445, 22, 36 Fed. R. Serv. 3d (Callaghan) 657 (8th Cir. S.D. 1996).

As of February 26, 2015, the parties have taken the depositions of Genethia Hudley-Hayes, Gregg Kettles, Angela Reddock-Wright, Raelynn Napper, and Delia Ibarra. The additional proposed depositions are not cumulative.

More than ten depositions is required in this case, because there are seven natural person defendants and one entity defendant. These defendants include the five current Fire Commission members, as well as Garcetti, the current mayor, and Llewellyn, the current mayor's counsel. Additional witnesses who are not parties need to be deposed because of their active participation in the events leading up to the suit. This suit's entity defendant, the City of Los Angeles, requires depositions of the persons most knowledgeable on a variety of issues. In addition, the City's

17

internal structure is made up of a web of public officials who contributed to, witnessed, condoned, or attempted to stop the retaliation Miller faced as a result of his speech. As a way of illustration, below are some of the non-party witnesses which the Plaintiff seeks to depose:

The former Fire Commissioner and Casimiro Tolentino worked closely with Miller and witnessed the retaliation he endured as the City Attorney's Office engineered ways to lock him out of meetings.

Deputy City Attorneys Zna Houston, Vivienne Swanigan, and Janet Jackson had state lawsuits against Miller, and are the individuals who began the campaign of retaliation.

Current City Attorney Michael Feuer is alleged to have recommended Miller's dismissal to the new Mayor, who in turn recommended it to the Fire Commissioner defendants.

Former Chief Deputy City Attorney William Carter and Former City Attorney Carmen Trutanich oversaw and condoned the retaliation which Houston, Jackson and Swanigan perpetrated against Miller.

Former Deputy Mayor Eileen Decker may have recommended that the current Mayor's Office to terminate Miller.

In addition, it has been difficult to set the depositions of all witnesses, because of scheduling and availability. If the Plaintiff was limited to ten depositions, he would lose the opportunity to depose some of the most important witnesses, simply because of the order in which the depositions were scheduled.

The parties met and conferred on the number of deposition issues on February 26, 2015. If the parties cannot stipulate to more than ten depositions, the Plaintiff asks the court for leave to increase the number of depositions.

**DEFENDANTS' CONTENTIONS:**

## A. PLAINTIFF HAS NOT DEMONSTRATED GOOD CAUSE FOR TAKING AT LEAST ANOTHER 21 DEPOSITIONS

When evaluating a request for leave to take additional depositions, the court will consider whether: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. (Fed. R. Civ. P. 26(b)(2) and 30(a)(2).)

On April 22, 2014, the parties filed a Joint Conference Scheduling Report. (Dkt. # 84.)  In Section II regarding the parties' respective discovery plans, Plaintiff makes no mention of the need for taking more than the statutory limit of 10 depositions.  Thereafter, Plaintiff took the depositions of Gregg Kettles, Angela Reddock-Wright, Raelynn Napper, Delia Ibarra, and began the deposition of Genethia Hudley-Hayes.  In addition to these five depositions, Plaintiff now seeks to take the depositions of the following 22 individuals: Genethia Hudley-Hayes[1], Casimiro Tolentino, Richard Llewellyn, Miguel Santana, Maggie Whelan, U.S. District Court Judge Andre Birotte, Andrew Glazier, George Kolambatovich, William Carter, Steve Fazio, Eileen Decker, Zna Houston, Janet Jackson, Vivienne Swanigan, Peter Echeverria, Sue Stengel, Paul Hayashida, Alexander Bustamante, Mayor Eric Garcetti, Alan Skobin, former City Attorney Carmen Trutanich and

---

[1] The deposition of Genethia Hudley-Hayes was started on October 23, 2014 but was not completed.

19

City Attorney Michael Feuer. (*See* Ex. 5 to the Walter Decl.[2]) Further, Plaintiff also seeks leave to retake the depositions of Kettles, Reddock-Wright, Napper and Ibarra because of Defendants' alleged improper use of the attorney-client privilege. Thus, Plaintiff seeks to take or retake a total of 26 depositions between now and the July 24, 2015 discovery cut-off date. (Walter Decl., ¶5; Walter Decl., Ex. 5.)

Although Plaintiff argues that he needs to take more than 10 depositions, he fails to show good cause for taking more than twice the statutory limit. Plaintiff also fails to demonstrate why each deponent's testimony is essential to discovery and not cumulative. "By specifically limiting the number of depositions, the drafters of Rule 30 clearly did not contemplate that depositions should either be unlimited in quantity, or be available without a showing of need." Thus, a party seeking to exceed the presumptive limit bears the burden of making a "particularized showing" of the need for additional depositions. (*Thykkuttathil v. Keese*, 294 F.R.D. 597, 600 (W.D. Wash. 2013).) Broad statements of the supposed relevance of the proposed deponents' testimony are insufficient. (*Archer Daniels Midland Company v. Aon Risk Services, Inc. of Minnesota*, 187 F.R.D. 578, 587 (D. Minn. 1999).) Rather, the party seeking additional depositions must show that each deponent is essential to discovery and is not merely a replication of discovery that could be best accomplished with the number of deponents previously allocated. (*Id.*)

Also, where the party had already taken the maximum number of depositions allowed under FRCP 30, the party must also show the necessity of each deposition previously taken. (*Barrow v. Greenville Independent Sch. Dist.*,

---

[2] Although Plaintiff's counsel did not identify former City Attorney Carmen Trutanich and current City Attorney Michael Feuer in their emails about the depositions, Plaintiff's portion of the joint statement suggests that they wish to take the former and current City Attorneys' depositions.

20

202 F.R.D. 480, 482-483 (N.D. Texas 2001).) The rationale for this standard is to discourage parties from taking non-essential depositions first. If parties were allowed to take non-essential depositions first, a party could indirectly circumvent the cap on depositions by exhausting the maximum allotted number by taking those that a party could not justify under the Rule 26(b)(2) standards, and then seek leave to exceed the limit in order to take those depositions that could be substantiated as essential. (*Id.* at 483.) The purpose of the 10 deposition limit would be subverted "unless a party who takes the maximum number of depositions allowed, and then seeks leave to conduct more, is required to show the necessity of all the depositions the party took in reaching the prescribed limit." (*Id.*) To that end, courts will generally not grant leave to expand the number of depositions until the moving party has exhausted the ten depositions permitted as of right under Rule 30(a)(2). (*Authentec, Inc. v. Atrua Technologies, Inc.*, 2008 WL 5120767, at *1 (N.D. Cal. 2008).)

Because Plaintiff has not taken 10 depositions yet, his request for leave to take additional depositions must be denied. Notwithstanding, even if the Court considers Plaintiff's request, it still should be denied because Plaintiff fails to articulate the necessity of the five depositions he has already taken. Indeed, Plaintiff suggests in his portion of the joint statement that the depositions he previously took were not the most important, but were taken due to scheduling difficulties. (*See* Plaintiff's portion in Section III of the joint statement which states "[i]n addition, it has been difficult to set the depositions of all witnesses, because of scheduling and availability. If the Plaintiff was limited to ten depositions, he would lose the opportunity to depose some of the most important witnesses, simply because of the order in which the depositions were scheduled.")

## B. PLAINTIFF HAS NOT ARTICULATED GROUNDS TO TAKE

21

## DEPOSITIONS OF MAYOR GARCETTI AND FORMER AND CURRENT CITY ATTORNEYS TRUTANICH AND FEUER

Plaintiff's request to take the depositions of elected officials Mayor Eric Garcetti, City Attorney Mike Feuer, former City Attorney Carmen Trutanich should be denied because Plaintiff offers no evidence that each official actually has some relevant personal knowledge of information that is necessary for Plaintiff's discovery in this case and cannot be obtained through other sources. The heads of agencies and other top governmental executives are normally not subject to depositions. (*Kyle Engineering Co. v. Kleppe*, 600 F.2d 226, 231 (9th Cir. 1979); *Nagle v. Superior Court of the City and County of San Francisco*, 28 Cal.App.4th 1465, 1467-68 (1994).) "The rationale pursuant to this policy is that such officials must be free to conduct their jobs without the constant interference of the discovery process." (*Church of Scientology of Boston v. I.R.S., supra*, 138 F.R.D. at 12 (*citing United States v. Miracle Recreation Equip. Co.*, 118 F.R.D. 100, 104 (S.D. Iowa 1987); *Community Federal Savings and Loan Assn. v. Federal Home Loan Bank Bd.*, 96 F.R.D. 619, 621 (D.C.D.C. 1983) (deposition of agency official permitted only when official has relevant first-hand knowledge of matters not available from another source); *Capitol Vending Co. v. Baker*, 36 F.R.D. 45, 46 (D.D.C. 1964) (oppressive to require government official to submit to interrogation that would disturb government business).)

The general rule that high-ranking government officials should not normally be required to sit for a deposition is based upon the recognition that:

> [A]n official's time and the exigencies of his everyday business would be severely impeded if every plaintiff filing a complaint against an agency head, in his official capacity, were allowed to take his oral deposition. Such procedure would be contrary to the public interest, plus the fact that

22

ordinarily the head of an agency has little or no knowledge of the facts in the case. (*Union Savings Bank of Patchogue, N.Y. v. Saxon,* 209 F. Supp. 319, 320 (D.D.C. 1962).)

Immunity from deposition may be granted in order to allow top officials freedom to perform their jobs without disruption from the discovery process. (*Warzon v. Drew*, 155 F.R.D. 183, 185 (E.D. Wis. 1994).) Further, limiting depositions of high-ranking officials serves to prevent a party from seeking discovery from the official without first establishing that the official has personal knowledge of a specific incident or event at issue in the case.

Plaintiff has not offered any evidence that Garcetti, Trutanich or Feuer have direct personal factual information pertaining to material issues in this case and that the information to be gained is not available through any other sources. (*Coleman v. Schwarzenegger*, 2008 WL 4300437, at *2 (E.D. Cal. 2008).) Indeed, Trutanich and Feuer are not defendants, and any information they might possess about the case would be privileged. Although Garcetti is named as a defendant, Plaintiff has not shown that Garcetti has any personal knowledge relating to his claims. Additionally, Plaintiff seeks to depose several other high ranking individuals in both the Mayor's Office and the City Attorney's Office who are likely to have all information – if any exists - that could be obtained from the current and former elected officials. Specifically, Plaintiff seeks to depose Richard Llewellyn, Eileen Decker and George Klomobatovich, all of whom were officials in the Mayor's Office under either the former and/or current Mayor. Plaintiff also seeks to depose William Carter and Pedro Echeverria, who were top deputies in the City Attorney's Office under Carmen Trutanich.

Since Plaintiff has not shown that the current and former elected officials have any relevant non-privileged knowledge and that they are the only available source for that knowledge, Plaintiff should be barred from taking Garcetti,

23

Trutanich and Feuer depositions (in addition to the fact that those depositions will exceed the FRCP Rule 30 limit.)

## IV.

## THE ATTORNEY-CLIENT PRIVILEGE HAS BEEN IMPROPERLY RAISED WITHIN DEPOSITIONS

## PLAINTIFF'S CONTENTIONS:

The attorney-client privilege has been raised many times in each deposition taken in this matter. The attorney-client privilege is a limited privilege under Rule 502 of the Federal Rules of evidence. "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Id.* (quoting *Weil v. Investment/Indicators, Research & Management, Inc.* 647 F.2d 18, 24 (9th Cir. 1981)).

By raising the defense of qualified immunity, the Fire Commission and Mayor's Office defendants have waived their attorney-client privilege. In *Hearn v. Rhay,* 68 F.R.D. 574, 583 (E.D. Wash. 1975), the court held that "by asserting their qualified immunity as an affirmative defense, defendants impliedly waived the right to assert the attorney-client privilege with respect to any legal advice or confidential communications with the Washington Attorney General that relate to the issues of malice toward plaintiff or knowledge of plaintiff's constitutional rights." In similar fashion, the Fire Commissioners and Mayor's Office cannot claim that they followed the advice given to them by attorneys within the immunity of their offices, without also revealing the advice communicated. The defendants have waived the right to attorney-client privilege for communications related to the unconstitutional conduct against Miller.

The attorney-client privilege should not be raised to hide the unlawful acts of a government entity or its officers. In the Eighth Circuit, the court reversed a decision denying a motion to compel, finding that the federal government may not

24

use the attorney-client privilege to avoid complying with a subpoena by a federal grand jury. The court held that, even where a governmental attorney-client privilege may exist "the White House may not use the privilege to withhold potentially relevant information from a federal grand jury." *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 915 (8th Cir. Ark. 1997).

This matter arises in the Ninth Circuit, and is a civil matter, but the principles are applicable. It is an improper use of the attorney-client privilege to use it to shield government misconduct. The City of Los Angeles, a governmental entity, may not cower behind the attorney-client privilege in order to escape liability for violating Miller's constitutional right to speech. The communications that are relevant to Miller's suit are not protected by the City's deliberative process privilege, because this public entity has involved itself in an action at which these communications are of central importance. In California's Eastern District, the court held that "the fact that a governmental entity's action is the focal point of litigation weighs against upholding the deliberative process privilege. *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1028, (E.D. Cal. 2010).

The City employs many individuals with bar licenses, who may use their knowledge and experience in law, without acting as counsel for the City. The Defendants have raised the attorney-client privilege in every situation where an attorney is present, regardless of their relationship to the City. In *Green v. Baca*, the Central District of California said that "The fact that a person is a lawyer does not make all communications with that person privileged." *Baca*, 226 F.R.D. at 650, citing *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002).

It is worth repeating that "because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Weil v. Investment/Indicators, Research & Management, Inc.* 647 F.2d 18, 24 (9th Cir. 1981)).

25

## A. GREGG KETTLES' DEPOSITION

Gregg Kettles was deputy counsel to the previous mayor, Antonio Villaraigosa. Kettles has asserted privilege, throughout his deposition, Kettles said that his client was the mayor, not the City, but attempted to invoke the privilege for any communications relevant to the City. (All page numbers in this section reference the deposition transcript of Gregg Kettles, See Decl. Mary E. Collins, ¶ 1, Exhibits A). Plaintiff's Counsel sought to come to a consensus on the disputes herein by meeting and conferring with counsel during the deposition as objections were raised.

In *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981), the Supreme Court held that entity parties may hold the attorney-client privilege. However, entities are nonliving, non-speaking clients, so "the power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors." *Commodity Futures Trading Commission v. Weintrab,* 471 U.S. 343, 348 (1985). The City of Los Angeles is an entity party to this action, analogous to a corporate entity contemplated in *Weintraub.* As the Counsel to the Mayor, Kettles had an attorney-client relationship with the mayor and his staff. He was also a high-ranking officer in the City government, with the executive power to waive the attorney-client privilege, acting as the voice of the client entity the City. He was attorney for the mayor's office, but acting client for the City, and as such could waive the privilege on behalf of the City. Kettles waived the privilege on behalf of the City when he took documents and communications home on a personal hard drive.

In this position, Kettles had many conversations about Miller's lack of access to information "many of those conversations were attorney client-privileged conversations either between me and the city attorney's office or I was present when the city attorney's office was talking. Some of those conversations

26

were between me and other members of the mayor's office staff which I also regard as attorney-client privileged communications." (See Exhibit A, pg. 41, ln. 11-17). Kettles was in the unique position of both receiving City Attorney communications in his capacity as the representative for the client entity, and giving advice directly to the mayor and his office. Through executive representation of the City, he was a client of the City Attorney. At the same time, he was an attorney and had an attorney relationship and duties owed to mayor's office.

As a representative of the City, a client entity, Kettles had the power to waive the attorney-client privilege. Kettles waived the privilege on behalf of the City by bringing saving work, emails and documents to a personal hard drive, starting a few months before his position with the City ended. Kettles made an intentional waiver of attorney-client privilege with respect to the City, because he intentionally brought home information he knew to be privileged and stored it on a hard drive for his personal use. When asked about who gave him permission to walk away with a hard drive of documents, Kettles answered "Nobody gave me permission to do this. I didn't think that permission was required." (Deposition of Gregg Kettles, page142, ln. 13-14)

Even if the new administration did not know about Kettles' withdrawal of documents at the time, Garcetti and Llewellyn ratified the waiver of attorney-client privilege because they failed to regain the confidentiality by taking back these records after he left. Evidence rule 502(b) says that an inadvertent disclosure does not occur if the holder of the privilege took reasonable steps to prevent the disclosure or the holder took reasonable steps to rectify the error. Rule 26(b)(5)(B) says that the error of disclosure may be rectified by notification to the party that took the privileged information. The new administration cannot claim that the disclosure was inadvertent. Gregg Kettles was deposed and revealed that he

27

waived the attorney-client privilege on October 10, 2014. In the four months since this revelation, the City has not made any attempts to regain control of Kettles' communications and work.

The waiver of attorney-client privilege for Kettles' documents extends to the rest of the attorney-client communications that have not yet been disclosed. Evidence Rule 502(a) says that "when the disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if the waiver is intentional, the disclosed and undisclosed communications or information concern the same subject matter, and they ought in fairness be considered together." It is well settled that any disclosure of documents inconsistent with the confidential nature of the attorney-client relationship waives the attorney-client privilege not only as to the documents actually disclosed, but also as to all other communications related to the same subject matter. *In re UMW Emple. Benefit Plans Litig.*, 159 F.R.D. 307, 310, 1994 U.S. Dist. LEXIS 19151, 6-7 (D.D.C. 1994), citing *In re Sealed Case,* 877 F.2d at 980-81. The subject matter waiver applies only to the attorney-client privilege, not to the attorney work product privilege. *Id.* at 311, citing *Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1190-91 (D.S.C. 1975). If the privilege is waived for communications made on one subject, the same waiver of privilege applies for all communications, even those not yet produced, concerning a particular subject.

Kettles disclosed information, waiving the attorney-client privilege, for email communications regarding the retaliation against and ultimate termination of Miller. He revealed that he waived this privilege during his deposition. The defendants' undisclosed information should be revealed.

**1. Kettles, As Former Counsel to the Mayor, Is Incorrect In**

28

## Raising the Attorney-Client Privilege

### a. On page 42

Q: "Who would you view as a client of yours when you were working for the city?"

A: "The mayor and the mayor's staff."

Q: "Okay. Anybody else?"

A: "At the moment I can't think of anyone else."

Q: "All right. And the privileged communications that we're also discussing are communications that involve attorneys in the city attorney's office; is that right?"

A: "I did have communications with the city attorney's office; that's correct."

Q: "So you believe that those would be covered by the attorney-client privilege?"

**Mr. Walter:** "Objection to the extent it calls for a conclusion, but you can answer."

A: "Yes, I believe my communications with the city attorney's office were attorney-client privileged."

Kettles has included conversations with City Attorneys in his attorney-client privilege, although they are not his clients and he is not theirs. As an employee and officer of the City, Kettles owes a basic fiduciary duty. However, he was Deputy Counsel to the Mayor, which means that his client is the Mayor and Mayor's Office, not the City. The City Attorneys, likewise represent the City, not Kettles.

**Defendants' Position:**

Plaintiff's request to compel should be denied because Plaintiff has not identified a pending question that requires further testimony from Kettles.  Plaintiff

29

asked Kettles who he believed to be his client and whether Kettles believes his communications with the City Attorney's Office were subject to the attorney-client privilege. Kettles responded to both of those questions without objection. There is nothing further to compel.

Plaintiff's argument also demonstrates his fundamental misunderstanding of the attorney-client privilege. Plaintiff fails to appreciate that discussions that attorneys for the Mayor's Office have with the City Attorney's Office are privileged because the employees of the Mayor's Office are employees of the City, and the City Attorney's Office is the attorney for the City. Further, as Deputy Counsel for the Mayor, Kettles discussions with the Mayor and employees of the Mayor's Office is also privileged. Thus, Kettles discussions with Mayor's Office employees are privileged because Kettles is acting as a lawyer for the Mayor's office, and Kettles discussions with attorneys from the City Attorney's Office are privileged because those attorneys are acting as lawyers for the City and consulting with Kettles in his capacity as an employee of the City.

The City Charter establishes an attorney-client relationship between the City Attorney's office and Deputy Counsel Kettles who is considered to be an officer of the City. Section 271(b) of the Los Angeles Charter expressly provides: "The City Attorney shall be the legal advisor to the City, and to all City boards, departments, officers and entities." Section 200 of the City Charter states "officers" of the City include the Mayor, members of the City Council and members of the boards or commissions of the departments and the chief administrative officer of each department and office. (See Exs. 1 and 2 to Defendants Request for Judicial Notice.) Consequently, as Deputy Counsel to the Mayor and as a City officer, Kettles' confidential communications involving the City Attorney's office and the Mayor's office are protected by the attorney-client privilege. The Los Angeles

30

City Charter is the "supreme law" regarding the City's municipal affairs. (*Domar Electric, Inc. v. City of Los Angeles*, 9 Cal.4th 161, 170 (1994) ["We begin with the cardinal principle that the charter represents the supreme law of the City, subject only to conflicting provisions in the federal and state Constitutions and to preemptive state law"]; *St. Croix v. Superior Court,* (2014) 228 Cal.App.4th 434.).

Although Kettles' client is not the City Attorney's Office, the discussions between Kettles and the City Attorney's Office are still protected by the attorney-client privilege because in those discussions, the attorney for purposes of giving or receiving legal advice is the attorney in the City Attorney's Office, not Kettles. The exchange of information between attorneys in the City Attorney's Office and attorney Kettles enables each of them to give sound and informed advice to their respective clients. If Kettles sought information from the City Attorney's office to enable him to give legal advice to the Mayor and the Mayor's Office or to manage conflict cases, his communications with the City Attorney's office would still be privileged because he, as an employee of the City, is seeking legal advice from the City's attorneys. Conversely, if the City Attorney sought information from Kettles to enable them to give legal advice to the City, those discussions would also be privileged. If Kettles then provides legal advice to the Mayor's Office, or the CAO in managing conflicts cases, he is then acting as an attorney providing legal advice, and those communications are similarly privileged.

Corporations, partnerships, and other groups and entities, including government agencies, who retain the services of an attorney are "clients" protected by the attorney-client privilege. (*Upjohn Co. v. United States* (1981) 449 US 383, 390, 101 S. Ct. 677, 683 – corporation; *see Maricopa Audubon Soc. v. United States Forest Service,* 108 F. 3d 1089, 1092 (9th Cir. 1997) (holding that a public entity can be a client); *see also Rein v. United States Patent & Trademark Office,*

31

553 F. 3d 353, 376 (4th Cir. 2009) (same).) The privilege protects confidential communications between a client and attorney for purposes of either obtaining or rendering legal assistance. (*Fisher v. United States*, 425 U.S. 391, 403 (1976).) Communications between a government employee and government attorney are privileged to the same extent as those between a corporate employee and corporate attorney. (*Galarza v. United States*, 179 FRD 291, 295 (SD CA 1998); *see also In re County of Erie*, 473 F. 3d 413, 419 (2nd Cir. 2007) ("At least in civil litigation between a government agency and private litigants, the government's claim to the protections of the attorney-client privilege is on par with the claim of an individual or a corporate entity.").)

Generally, the attorney-client privilege *extends to any employee* communicating on matters within the scope of his or her employment when that employee is aware that he or she is being questioned in confidence in order for his or employer to obtain legal advice. (*Upjohn Co. v. United States, supra*, 449 US at 391, 202 S. Ct. at 685). Under *Upjohn*, the attorney-client privilege applies to communications by any corporate employee regardless of position when the communications concern matters within the scope of the employee's corporate duties and the employee is aware that the information is being furnished to enable the attorney to provide legal advice to the corporation. (*Lewis v. Wells Fargo & Co.*, 266 F.R.D. 433, 441-442 (N.D. Cal. 2010) *quoting Admiral Ins. Co. v. District Court*, 881 F.2d at 1492 (*citing to Upjohn*, 449 U.S. at 394).) The privilege also applies to communications from attorney to client as long as it is based, at least in part, upon a confidential communication from the client to the attorney. (*In re Sealed Case*, 737 F. 2d 94, 99 (DC Cir. 1984).) Finally, the privilege extends to documents prepared by an attorney or at an attorney's request for the purpose of advising a client, if the documents are based on and would tend

NOTICE OF MOTION AND LOCAL RULE 37-1 JOINT STIPULATION RE: PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSES TO DEMAND FOR DOCUMENTS, SET TWO AND REQUEST FOR AN ORDER FOR EVIDENTIARY SANCTIONS

to reveal the client's confidential communications. (*United States v. National Ass'n of Realtors*, 242 FRD 491, 496) (ND IL 2007).)

### 2. The Defense is Incorrect in Raising the Attorney-Client Privilege for Communications Made in the Mere Presence of Attorneys

#### a. On page 68-69:

**Q:** "Did you ever have any discussions with anybody about my suitability for being the EEO monitor on behalf of the EEOC for these conciliation agreements?"

**A:** "I recall going to a meeting regarding this EEOC matter early in my time in the mayor's office. I believe Vivienne Swanigan was there. I believe two other members of the fire department were there. There may have been other people there. I don't recall. The meeting was in City Hall East I believe in a conference room at the city attorney's office. This was early in my time at the mayor's office, and I recall that there was discussion--"

**Mr. Walter:** "Well hold on a second. If this was a meeting with the city attorney's office, this sounds like an attorney-client privileged communication, and if so, I would instruct you not to reveal in your answer any attorney-client privileged communications."

Defense counsel (Mr. Walter) has asserted the privilege based on the presence of attorneys. However, Kettles violates a presence of third parties. Attorney-client confidentiality may be defeated where the client "knowingly makes the communication in the presence of a third party." *United States v. Rockwell International,* 897 F.2d 1255, 1265 (3rd Cir. 1990); *Griffith v. Davis,* 161 F.R.D. 687, 695 (C.D. Cal. 1995). Kettles waived any privilege he might have held to this communication on behalf of the City, by the presence of third parties.

33

Kettles also failed to establish that the subject matter of his conversation would be protected by attorney-client privilege. The privilege extends to only to communications specifically for the purpose of obtaining legal services for the client. *See* Fed. R. Evid. 503 (b). The conversation that Kettles was asked about concerned the plaintiff's personal suitability for a particular job. Kettles was not asking the city attorneys present for any legal advice. This is another example of a conversation that happened to involve city attorneys, for which no proof of privilege has been established. Thus, Kettles should be ordered to ensure.

**Defendants' Position:**

Plaintiff's request to compel should be denied because there is no pending question that requires further testimony from Kettles. Plaintiff asked Kettles if he had any discussions with "anybody" about Plaintiff's suitability for being an EEO monitor. Kettles responded to this question by testifying that he did have a discussion with two members of the Fire Department, with attorney Vivienne Swanigan of the City Attorney's office and possibly with others whose names he could not remember. Further, Plaintiff did not ask Kettles the substances of those discussions. Therefore, Kettles fully answered Plaintiff's question and there is nothing further to compel here.

Notwithstanding Kettles' complete answer, Plaintiff's assertion that Kettles' discussions regarding Plaintiff's suitability to be an EEO monitor is not subject to the attorney-client privilege because it was made in front of third parties is without merit, as those "third parties" were other employees of the City (Kettles and two fire department employees.) Plaintiff's argument demonstrates his misunderstanding of the attorney-client privilege. Plaintiff fails to appreciate that discussions attorneys for the Mayor's office have with the City Attorney's office are privileged because the employees of the Mayor's office are employees of the

34

City, and the City Attorney's office is acting as the attorney for the City. Under *Upjohn*, those discussions are unquestionably privileged.

The City Charter establishes an attorney-client relationship between the City Attorney's office and Kettles who is considered to be an officer of the City. Section 271(b) of the Los Angeles Charter expressly provides: "The City Attorney shall be the legal advisor to the City, and to all City boards, departments, officers and entities." Section 200 of the City Charter states "officers" of the City include the Mayor, members of the City Council and members of the boards or commissions of the departments and the chief administrative officer of each department and office. (See Exs. 1 and 2 to Defendants Request for Judicial Notice.) Consequently, as Deputy Counsel to the Mayor and as a City officer, Kettles' confidential communications involving the City Attorney's office and the Mayor's office are protected by the attorney-client privilege. The Los Angeles City Charter is the "supreme law" regarding the City's municipal affairs. (*Domar Electric, Inc. v. City of Los Angeles*, 9 Cal.4th 161, 170 (1994) ["We begin with the cardinal principle that the charter represents the supreme law of the City, subject only to conflicting provisions in the federal and state Constitutions and to preemptive state law"]; *St. Croix v. Superior Court*, 228 Cal.App.4th 434 (2014).)

Although Kettles' client is not the City Attorney's office, the discussions between Kettles and the City Attorney's office are still protected by the attorney-client privilege if the giving of information to one another enables each of them to give sound and informed advice to their respective clients. Corporations, partnerships, and other groups and entities, including government agencies, who retain the services of an attorney are "clients" protected by the attorney-client privilege. (*Upjohn Co. v. United States* (1981) 449 US 383, 390, 101 S. Ct. 677, 683 – corporation; *see Maricopa Audubon Soc. v. United States Forest Service*,

35

108 F. 3d 1089, 1092 (9th Cir. 1997) (holding that a public entity can be a client); *see also Rein v. United States Patent & Trademark Office* (4th Cir. 2009) 553 F. 3d 353, 376 (same).)  The privilege protects confidential communications between a client and attorney for purposes of either obtaining or rendering legal assistance. (*Fisher v. United States*,  425 U.S. 391, 403 (1976).)

Generally, the attorney-client privilege *extends to any employee* communicating on matters within the scope of his or her employment when that employee is aware that he or she is being questioned in confidence in order for his or employer to obtain legal advice. (*Upjohn Co. v. United States, supra*, 449 US at 391, 202 S. Ct. at 685).  Under *Upjohn*, the attorney-client privilege applies to communications by any corporate employee regardless of position when the communications concern matters within the scope of the employee's corporate duties and the employee is aware that the information is being furnished to enable the attorney to provide legal advice to the corporation. (*Lewis v. Wells Fargo & Co.*, 266 F.R.D. 433, 441-442 (N.D. Cal. 2010) *quoting Admiral Ins. Co. v. District Court*, 881 F.2d at 1492 (*citing to Upjohn*, 449 U.S. at 394).)  The privilege also applies to communications from attorney to client as long as it is based, at least in part, upon a confidential communication from the client to the attorney. (*In re Sealed Case*, 737 F. 2d 94, 99  (DC Cir. 1984).)  Finally, the privilege extends to documents prepared by an attorney or at an attorney's request for the purpose of advising a client, if the documents are based on and would tend to reveal the client's confidential communications. (*United States v. National Ass'n of Realtors*, 242 FRD 491, 496) (ND IL 2007).)

Discussions attorneys for the Mayor's office have with the City Attorney's office are privileged because the employees of the Mayor's office are employees of the City, and the City Attorney's office is the attorney for the City.  The discussion

36

Kettles had on this topic was with an attorney for the City Attorney's office, at the City Attorney's Office, about his suitability for an EEO position. Kettles was functioning as an employee of the Mayor's Office consulting with an attorney for the City about the suitability of an employee for a position involving legal compliance issues. This is precisely the type of communication between an attorney for an entity and an employee of the entity that is privileged under *Upjohn.*

### 3. The Attorney-Client Privilege Was Improperly Raised Where Kettles Was Asked to Reveal Facts About Whether a Communication Took Place, Not Its Substance

#### a. On page 77

**Q:** "And sir, you don't know why the city attorney issued that opinion. And let me ask you did you ever hear that the city attorney's office was upset about criticizing their legal services to the professional standards division at the fire department?

**A:** "I had a number of communications on this issue in my time at the mayor's office. Many of those conversations are protected by the attorney-client privilege, and so I don't want to give any information that would waive the privilege or disclose privileged communications."

Again, the attorney-client privilege has been asserted regardless of the substance of the communications. Kettles should be ordered to answer the questions.

### Defendants' Position:

Plaintiff's request to compel should be denied on the grounds that the requirements of Local Rule 37 have not been satisfied. Plaintiff fails to identify all contentions in support of his position compelling disclosure of attorney-client privileged communications with respect to this particular deposition excerpt.

37

Because Plaintiff's contentions are scattered throughout his portion of the joint stipulation, Defendants cannot adequately respond to Plaintiff's position because they are unable to determine which of his multiple contentions in Section II of his portion of the joint statement apply to this particular deposition excerpt.

Additionally, Plaintiff's request to compel is misleading because Plaintiff only included half of Kettles' answer to the question. Here is the full question and answer, from Page 77, line 15 to Page 78, line 4:

Q: "And sir, you don't know why the city attorney issued that opinion. And let me ask you did you ever hear that the city attorney's office was upset about criticizing their legal services to the professional standards division at the fire department?

A: "I had a number of communications on this issue in my time at the mayor's office. Many of those conversations are protected by the attorney-client privilege, and so I don't want to give any information that would waive the privilege or disclose privileged communications.

I do recall having conversations with you where you indicated you believed that the city attorney's office was not happy with one of the early assessments you wrote about that office." (*See* excerpt from Kettles Depo. attached as Ex. 10 to Walter Decl.)

Thus, Kettles fully answered Plaintiff's question by revealing all non-privileged information that he had on the topic. Plaintiff did not follow up or attempt to clarify Kettles' response.

### 1) The Information Sought Is Protected by the Attorney-Client Privilege

Kettles properly withheld communications regarding whether the City Attorney's office was upset about criticisms of their legal services, whether those

38

communications were with employees of the Mayor's Office (for whom Kettles was their attorney) or with employees of the City Attorney's Office (for whom the City Attorney was the attorney consulting with an employee of the City, Kettles.) Communications that Kettles had with attorneys in the City Attorney's Office about their assessment of Plaintiff's reports would ordinarily be privileged communications. The question asked by Plaintiff's counsel, and the one sentence assertion in his motion, offers no basis from which to infer that any of Kettles discussions regarding this issue were not privileged. Additionally, the manner in which the question was asked impliedly forces Kettles to reveal the substance of privileged communications.

From August 2009 to June 2013, Kettles was Deputy Counsel to former Mayor Antonio Villaraigosa. (Llewellyn Decl., ¶¶2-5.) His confidential communications with the City Attorney's Office and the Mayor's Office during this time are protected from disclosure pursuant to the attorney-client privilege. Corporations, partnerships, and other groups and entities, including government agencies, who retain the services of an attorney are "clients" protected by the attorney-client privilege. (*Upjohn Co. v. United States* (1981) 449 US 383, 390, 101 S. Ct. 677, 683 – corporation; *see Maricopa Audubon Soc. v. United States Forest Service,* 108 F. 3d 1089, 1092 (9th Cir. 1997) (holding that a public entity can be a client); *see also Rein v. United States Patent & Trademark Office* (4th Cir. 2009) 553 F. 3d 353, 376 (same).) The privilege protects confidential communications between a client and attorney for purposes of either obtaining or rendering legal assistance. (*Fisher v. United States,* 425 U.S. 391, 403 (1976).) Communications between a government employee and government attorney are privileged to the same extent as those between a corporate employee and corporate attorney. (*Galarza v. United States,* 179 FRD 291, 295 (SD CA 1998); *see also In*

39

*re County of Erie*, 473 F. 3d 413, 419 (2nd Cir. 2007) ("At least in civil litigation between a government agency and private litigants, the government's claim to the protections of the attorney-client privilege is on par with the claim of an individual or a corporate entity.").)

Generally, the attorney-client privilege *extends to any employee* communicating on matters within the scope of his or her employment when that employee is aware that he or she is being questioned in confidence in order for his or employer to obtain legal advice. (*Upjohn Co. v. United States, supra*, 449 US at 391, 202 S. Ct. at 685). The privilege also applies to communications from attorney to client as long as it is based, at least in part, upon a confidential communication from the client to the attorney. (*In re Sealed Case*, 737 F. 2d 94, 99 (DC Cir. 1984).) Furthermore, the privilege extends to documents prepared by an attorney or at an attorney's request for the purpose of advising a client, if the documents are based on and would tend to reveal the client's confidential communications. (*United States v. National Ass'n of Realtors*, 242 FRD 491, 496) (ND IL 2007).)

The Los Angeles City Charter is the "supreme law" regarding the City's municipal affairs. (*Domar Electric, Inc. v. City of Los Angeles*, 9 Cal.4th 161, 170 (1994) ["We begin with the cardinal principle that the charter represents the supreme law of the City, subject only to conflicting provisions in the federal and state Constitutions and to preemptive state law"]; *St. Croix v. Superior Court*, 228 Cal.App.4th 434 (2014).) Section 271(b) of the Los Angeles Charter expressly provides: "The City Attorney shall be the legal advisor to the City, and to all City boards, departments, officers and entities." Section 200 of the City Charter states "officers" of the City include the Mayor, members of the City Council and members of the boards or commissions of the departments and the chief

40

administrative officer of each department and office. (See Exs. 1 and 2 to Defendants Request for Judicial Notice.) Consequently, as Deputy Counsel to the Mayor, Kettles' confidential communications involving the City Attorney's Office and the Mayor's Office regarding the Fire Commission and the Independent Assessor are protected by the attorney-client privilege.

In addition, Kettles' confidential communications with the Fire Commission and the Mayor's Office are subject to the attorney-client privilege. For over two decades, it has been the practice of the Mayor's office to have its own Counsel. Both the attorneys who have served as the Mayor's Counsel and employees in the Mayor's office understand that an attorney-client relationship exists between them. (Llewellyn Decl., ¶4.) Because the Mayor can retain his own legal counsel, confidential communications between the Mayor and the Mayor's legal counsel are privileged.

Further, communications between the Mayor's legal counsel and the Fire Commissioners are also privileged because the Fire Commission is an extension of the Mayor's office and, consequently, the Mayor is ultimately responsible for its conduct. Section 502 of the City Charter which gives the Mayor the power the appoint and remove Fire Commissioners, Section 506 which states general rules adopted by the Fire Commissioners as the head of the Fire Department are subject to the Mayor's approval and, Admin. Code, §3.3 which states "[i]t shall be the duty of the Mayor … to exercise a constant supervision over the acts and conduct of all officers and employees; to receive and examine into all complaints made against them for violation or neglect of duty, and certify the same to the Council or proper board, and to secure cooperation between the various departments and offices of the City". (Llewellyn Decl., ¶6.)

### 2) Kettles Did Not Waive the Attorney-Client Privilege

41

Plaintiff also claims that Kettles waived the attorney-client privilege because email communications have already been disclosed. Plaintiff fails to offer any evidence or argument as to how the email communications related to this question were disclosed and how the attorney-client privilege was waived.

Where the client is an entity, the privilege belongs to and may be waived only by the entity and not individual employees. (*Weil v. Investment/Indicators, Research & Mgt., Inc.*, 647 F. 2d 18, 23 (9th Cir. 1981); *United States v. International Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL-CIO*, 119 F. 3d 210, 215 (2nd Cir. 1997); *In re Oracle Sec. Litig.*, 2005 WL 6768164, at *4 (N.D. Cal. 2005) *citing to United States v. Salsedo*, 607 F.2d 318, 320 (9th Cir.1979) ("[l]ike the attorney-client privilege, the holder of the work product privilege may waive it").) Further, privileged communications that occur during the period of employment do not lose their protection when the employee leaves the client entity. (*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 658 F. 2d 1355, 1361, fn. 7 (9th Cir. 1981).) The attorney-client privilege is absolute, and evidence protected by the privilege may not be ordered disclosed regardless of its relevance. (*See, Diversified Industries, Inc. v. Meredith*, 572 F. 2d 596, 602(8th Cir. 1977).) Here, there is no evidence that either the City (or Kettles) ever disclosed privileged communications to anyone outside the attorney-client relationship, or that either of them intended to waive the privilege at any time. Further, there is no evidence that Kettles did not take precautions to safeguard the documents from being viewed by persons outside the attorney-client relationship. Plaintiff's waiver argument is unavailing.

More importantly, Plaintiff has not – and cannot – cite any authority to support waiver of the privileges simply because Kettles took home work documents. Indeed, Plaintiff's contention means that the privileges are waived any

time an attorney takes work home or works from a personal computer. The law of waiver of the attorney-client privilege does not operate in such prejudicial fashion. (*Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340 (9th Cir. 1996) ("The doctrine of waiver of the attorney-client privilege is rooted in notions of fundamental fairness"); *In re Pac Pictures Corp.*, 679 F.3d 1121, 1130 (9th Cir. 2012) (holding involuntary disclosures do not automatically waive the attorney-client privilege); *McCafferty's, Inc. v. The Bank of Glen Burnie*, 179 F.R.D. 163, 169-170 (D. Md. 1998) (holding memo sent by attorney to corporate employee was not inadvertently waived when employee tore up the memo and threw it in the trash can from which it was retrieved by a private investigator).) As the Ninth Circuit has noted, "the focal point of privilege waiver analysis should be the holder's disclosure of privileged communications to someone outside the attorney-client relationship[.]" (*Quiksilver, Inc. v. Kymsta Corp.*, 247 F.R.D. 579, 584 (C.D. Cal. 2007), *quoting Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 341 (9th Cir.1996).)

### 4. The Attorney-Client Privilege was Improperly Raised to Conceal Unlawful Conduct

#### a. On page 88

**Q:** "What was discussed at the meeting [between Kettles, Eileen Decker from the Mayor's Office, and deputy City Attorneys Pete Echeverria and Zna Houston]?"

**Mr. Walter:** "Objection, calls for attorney-client privileged communications. Instruct the witness not to answer."

**Mr. Miller:** "Okay. Here is the two issues that I'm concerned about. One is that the August 23 advice, the commission waived the privilege. It's out there for the world to see."

**Mr. Walter:** "Commission doesn't have the authority to waive it."

43

**Mr. Miller**: "Well it's been waived, and there is a city attorney opinion that says the commission does have the authority to waive it. Whether they had the authority or not, it's been waived."

The attorney-client privilege was raised here in an attempt to obscure communications for which the privilege has already been waived.

Plaintiff challenges the use of the attorney-client privilege because the City Attorneys have used the privilege to protect themselves, rather than to protect the City. In addition, many of these emailed communications have already been disclosed, and cannot be subject to any privilege because the privilege has been waived. On page 90, Miller follows up his argument.

**Defendants' Position:**

Plaintiff's request to compel should be denied on the grounds that the requirements of Local Rule 37 have not been satisfied. Plaintiff fails to identify all contentions in support of his position compelling disclosure of attorney-client privileged communications with respect to this particular deposition excerpt. Because Plaintiff's contentions are scattered throughout his portion of the joint stipulation including in Section II, Defendants cannot adequately respond to Plaintiff's position because they are unable to determine which of his multiple contentions apply to this particular deposition excerpt.

## 1) The Information Sought is Protected by the Attorney-Client Privilege

Plaintiff, who was acting as his own attorney at this deposition, requests to compel testimony from Kettles regarding a discussion with Eileen Decker from the Mayor's Office and two attorneys from the City Attorney's Office. Plaintiff's request to disclose the contents of that meeting with two attorneys should be denied as clearly seeking privileged communications. There is also no basis for Plaintiff to require disclosure because the privileged communications may

44

"protect" the attorneys who participated in the privileged communication. Finally, Plaintiff fails to offer any evidence or argument as to how the email communications related to this question were disclosed and how the attorney-client privilege was waived.

From August 2009 to June 2013, Kettles was Deputy Counsel to former Mayor Antonio Villaraigosa. His confidential communications with the City Attorney's Office and the Mayor's Office during this time are protected from disclosure pursuant to the attorney-client privilege. Corporations, partnerships, and other groups and entities, including government agencies, who retain the services of an attorney are "clients" protected by the attorney-client privilege. (*Upjohn Co. v. United States* (1981) 449 US 383, 390, 101 S. Ct. 677, 683 – corporation; *see Maricopa Audubon Soc. v. United States Forest Service,* 108 F. 3d 1089, 1092 (9th Cir. 1997) (holding that a public entity can be a client); *see also Rein v. United States Patent & Trademark Office* (4th Cir. 2009) 553 F. 3d 353, 376 (same).) The privilege protects confidential communications between a client and attorney for purposes of either obtaining or rendering legal assistance. (*Fisher v. United States*, 425 U.S. 391, 403 (1976).) Communications between a government employee and government attorney are privileged to the same extent as those between a corporate employee and corporate attorney. (*Galarza v. United States*, 179 FRD 291, 295 (SD CA 1998); *see also In re County of Erie*, 473 F. 3d 413, 419 (2nd Cir. 2007) ("At least in civil litigation between a government agency and private litigants, the government's claim to the protections of the attorney-client privilege is on par with the claim of an individual or a corporate entity.").)

Generally, the attorney-client privilege *extends to any employee* communicating on matters within the scope of his or her employment when that employee is aware that he or she is being questioned in confidence in order for his

45

or employer to obtain legal advice. (*Upjohn Co. v. United States, supra*, 449 US at 391, 202 S. Ct. at 685). The privilege also applies to communications from attorney to client as long as it is based, at least in part, upon a confidential communication from the client to the attorney. (*In re Sealed Case*, 737 F. 2d 94, 99 (DC Cir. 1984).) Furthermore, the privilege extends to documents prepared by an attorney or at an attorney's request for the purpose of advising a client, if the documents are based on and would tend to reveal the client's confidential communications. (*United States v. National Ass'n of Realtors*, 242 FRD 491, 496) (ND IL 2007).)

The Los Angeles City Charter is the "supreme law" regarding the City's municipal affairs. *Domar Electric, Inc. v. City of Los Angeles*, 9 Cal.4th 161, 170 (1994) ["We begin with the cardinal principle that the charter represents the supreme law of the City, subject only to conflicting provisions in the federal and state Constitutions and to preemptive state law"]; *St. Croix v. Superior Court* (2014) 228 Cal.App.4th 434.) Section 271(b) of the Los Angeles Charter expressly provides: "The City Attorney shall be the legal advisor to the City, and to all City boards, departments, officers and entities." Section 200 of the City Charter states "officers" of the City include the Mayor, members of the City Council and members of the boards or commissions of the departments and the chief administrative officer of each department and office. (See Exs. 1 and 2 to Defendants Request for Judicial Notice.) Consequently, as Deputy Counsel to the Mayor, Kettles' confidential communications involving the City Attorney's Office and the Mayor's Office regarding the Fire Commission and the Independent Assessor are protected by the attorney-client privilege.

## 2) **Kettles Did Not Waive the Attorney-Client Privilege**

Plaintiff also claims that Kettles waived the attorney-client privilege because

46

unspecified and unattached email communications have already been disclosed. Plaintiff fails to offer any evidence or argument as to how the email communications related to this question were disclosed and how the attorney-client privilege was waived.

Where the client is an entity, the privilege belongs to and may be waived only by the entity and not individual employees. (*Weil v. Investment/Indicators, Research & Mgt., Inc.*, 647 F. 2d 18, 23 (9th Cir. 1981); *United States v. International Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL-CIO*, 119 F. 3d 210, 215 (2nd Cir. 1997); *In re Oracle Sec. Litig.*, 2005 WL 6768164, at *4 (N.D. Cal. 2005) *citing to United States v. Salsedo*, 607 F.2d 318, 320 (9th Cir.1979) ("[l]ike the attorney-client privilege, the holder of the work product privilege may waive it").) Further, privileged communications that occur during the period of employment do not lose their protection when the employee leaves the client entity. (*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 658 F. 2d 1355, 1361, fn. 7 (9th Cir. 1981).) The attorney-client privilege is absolute, and evidence protected by the privilege may not be ordered disclosed regardless of its relevance. (*See, Diversified Industries, Inc. v. Meredith*, 572 F. 2d 596, 602(8th Cir. 1977).) Here, there is no evidence that either the City (or Kettles) ever disclosed privileged communications to anyone outside the attorney-client relationship, or that either of them intended to waive the privilege at any time. Further, there is no evidence that Kettles did not take precautions to safeguard the documents from being viewed by persons outside the attorney-client relationship. Plaintiff's waiver argument is unavailing.

More importantly, Plaintiff has not -- and cannot -- cite any authority to support waiver of the privileges simply because Kettles took home work documents. Indeed, Plaintiff's contention means that the privileges are waived any

47

time an attorney takes work home or works from a personal computer. The law of waiver of the attorney-client privilege does not operate in such prejudicial fashion. (*Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340 (9th Cir. 1996) ("The doctrine of waiver of the attorney-client privilege is rooted in notions of fundamental fairness"); *In re Pac Pictures Corp.*, 679 F.3d 1121, 1130 (9th Cir. 2012) (holding involuntary disclosures do not automatically waive the attorney-client privilege); *McCafferty's, Inc. v. The Bank of Glen Burnie*, 179 F.R.D. 163, 169-170 (D. Md. 1998) (holding memo sent by attorney to corporate employee was not inadvertently waived when employee tore up the memo and threw it in the trash can from which it was retrieved by a private investigator).) As the Ninth Circuit has noted, "the focal point of privilege waiver analysis should be the holder's disclosure of privileged communications to someone outside the attorney-client relationship[.]" (*Quiksilver, Inc. v. Kymsta Corp.*, 247 F.R.D. 579, 584 (C.D. Cal. 2007), *quoting Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 341 (9th Cir.1996).)

### a. On page 90

**Mr. Miller:** "But the applicability of that privilege in circumstances with regard to Mr. Echeverria and Ms. Houston and Ms. Swanigan where they appear to be issuing advice that's inconsistent with what the voters approved and in the best interests of the city for their own personal purposes, and that's the contention."

The privilege is limited to communications expressly intended to be confidential, and some showing of an intention of secrecy must be made, so "the mere relation of attorney and client does not raise a presumption of confidentiality. Hence, the presence of third persons who are not essential to the transmittal of information will belie the necessary element of confidentiality and vitiate the privilege. *Hearn v. Rhay*, 68 F.R.D. 574, 579 (1975).

48

The privilege of attorney-client communication has been asserted several times for meetings in which an attorney was merely present. For example, in the deposition of Gregg Kettles, on page 88, the privilege was asserted when Miller asked "What was discussed at the meeting [between Kettles, Eileen Decker from the Mayor's Office, and deputy City Attorneys Pete Echeverria and Zna Houston]?" Defense counsel objected to this question, based on attorney-client privilege information, because attorneys were present at that meeting. However, the Defendants never properly asserted the privilege because they did not say that the meeting was for the purpose of obtaining legal advice. As employees of the City, the Deputy City Attorneys may take part or attend many meetings in which administrative and other normal business issues are discussed. The mere presence of a few attorneys does not make the subject of the meeting privileged.

Kettles should be compelled to answer the questions.

**Defendants' Position:**

Plaintiff's request to compel should be denied because there is no pending question that requires further testimony from Kettles. Rather, the above excerpt from Kettles' deposition only shows Plaintiff's disagreement with Defendants' assertion of the attorney-client privilege. In fact, the text quoted above is part of a 3 page discussion between Plaintiff, acting as his own attorney, and counsel for Defendants. Therefore, there is nothing further to compel here.

**5. In Kettles' Deposition, Attorney-Client Privilege was Used as an Objection to Hide Whether Certain Conversations Took Place, Regardless of the Opinions or Communications Given.**

*a. On page 139, lines 1-8*

**Q:** "Did you have any discussions with anybody in the mayor's office about that document?"

**A:** "If I did, I would object on the grounds of attorney-client privilege."

49

**Q:** "And did you discuss it with anybody in the city attorney's office?"

**A:** "If I did I would object on the grounds of attorney-client privilege."

The content of the communication is not at issue. The Plaintiff asked the Witness whether discussions took place, not what the contents of the communications were. The privilege has been improperly asserted.

The protection of the privilege extends only to *communications* and not to facts. The Supreme Court has opined that "the client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney." *Upjohn Co. v. United States*, 449 U.S. 383, 395-396 (U.S. 1981), *quoting Philadelphia* v. *Westinghouse Electric Corp.*, 205 F. Supp. 830, 831 (ED Pa. 1962). The fact that a communication may have taken place is a discoverable fact, not protected by privilege. Thus, Kettles should be ordered to answer.

**Defendants' Position:**

Plaintiff's request to compel should be denied on the grounds that the requirements of Local Rule 37 have not been satisfied. Plaintiff fails to identify all contentions in support of his position compelling disclosure of attorney-client privileged communications with respect to this particular deposition excerpt. Because Plaintiff's contentions are scattered throughout his portion of the joint stipulation, Defendants cannot adequately respond to Plaintiff's position because they are unable to determine which of his multiple contentions in Section II of his portion of the joint statement apply to this particular deposition excerpt.

### 1) The Information Sought is Protected by the Attorney-Client Privilege

Revealing whether discussions took place or not on a particular topic are privileged if the answer would reveal confidential information, such as where the

50

disclosure would show that the client received legal advice before engaging in specific conduct. In addition, where information is shared between client and counsel, those communications are privileged as long as it was made for the purpose of securing legal advice or legal services, or conveying legal advice. (*SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 480 (E.D. Pa. 2005).) From August 2009 to June 2013, Kettles was Deputy Counsel to former Mayor Antonio Villaraigosa. His confidential communications with the Mayor's Office during this time are protected from disclosure pursuant to the attorney-client privilege. (*Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981); *see also Maricopa Audubon Soc. v. United States Forest Service*, 108 F. 3d 1089, 1092 (9th Cir. 1997) (holding that a public entity can be a client); *Rein v. United States Patent & Trademark Office*, 553 F. 3d 353, 376 (4th Cir. 2009).) The privilege protects confidential communications between a client and attorney for purposes of either obtaining or rendering legal assistance. (*Fisher v. United States*, 425 U.S. 391, 403 (1976).) Communications between a government employee and government attorney are privileged to the same extent as those between a corporate employee and corporate attorney. (*Galarza v. United States*, 179 F.R.D. 291, 295 (S.D. Cal. 1998); *St. Croix v. Superior Court*, 228 Cal.App.4th 434 (2014).)

Generally, the attorney-client privilege extends to any employee communicating on matters within the scope of employment when that employee is aware that he or she is being questioned in confidence in order for the employer to obtain legal advice. (*Upjohn Co. v. United States, supra,* 449 US at 391, 202 S. Ct. at 685). The privilege also applies to communications from attorney to client as long as based, at least in part, upon a confidential communication from the client to the attorney. (*In re Sealed Case*, 737 F. 2d 94, 99 (DC Cir. 1984).) Furthermore, the privilege extends to documents prepared by an attorney or at an attorney's

51

request for the purpose of advising a client, if the documents are based on and would tend to reveal the client's confidential communications. (*United States v. National Ass'n of Realtors*, 242 F.R.D. 491, 496 (N.D. Ill. 2007).)

The Los Angeles City Charter is the "supreme law" regarding the City's municipal affairs. *Domar Electric, Inc. v. City of Los Angeles*, 9 Cal.4th 161, 170 (1994) ["We begin with the cardinal principle that the charter represents the supreme law of the City, subject only to conflicting provisions in the federal and state Constitutions and to preemptive state law"]; *St. Croix v. Superior Court* (2014) 228 Cal.App.4th 434.) For over two decades, it has been the practice of the Mayor's office to have its own Counsel. Both the attorneys who have served as the Mayor's Counsel and employees in the Mayor's office understand that an attorney-client relationship exists between them. (Llewellyn Decl., ¶¶2-5.) Because the Mayor can retain his own legal counsel, confidential communications between the Mayor and the Mayor's legal counsel are privileged.

### 6. In Kettles' Deposition, the Attorney-Client Privilege was Used to Protect Documents for which Kettles Waived the Privilege

#### a. On page 140, line 25, to page 141 lines 1 through 20

**Q:** "Where were these documents when you pulled them together to be sure that they were responsive to the request?"

**A:** "So these documents are electronic documents stored on a hard drive at my home."

**Q:** "Okay. So you have—you have these documents at home?"

**A:** "I have electronic copies of these documents at home."

…

**Q:** "Okay. So how did they get from the city to your hard drive at your house?"

**A:** "Oh, when I was still employed by the city, I made a copy of one of the

52

drives at the city where I saved my work."

Kettles admitted that he took all of his City documents, about Miller and other matters, home with him and stored these documents on a personal hard drive. Despite this, he claims that no attorney client privilege has been waived as to these documents, and refuses to produce or refer to them.  Nor is there any listing of the documents for any privilege log; because at this point no one has the documents except for the witness.

An implied waiver of attorney-client privilege occurs when there is conduct inconsistent with confidentiality. As counsel to the Mayor, Kettles was a managing member of the executive office for the City of Los Angeles. Therefore Kettles had the ability to waive the attorney-client privilege on behalf of the City. *See Restatement (Third) of the Law Governing Lawyers* § 97 Cmt. c (2000), ("For many reasons, the preferable approach… is to regard the respective agencies as the clients and to regard the lawyers working for the agencies as subject to the direction of those officers authorized to act in the matter involved in the representation.") Kettles was in the unique position of being attorney to the Mayor and officer to the City of Los Angeles, able to act on the entity's behalf like a managing officer.

Managing government officials, like Kettles, have the ability to waive the attorney-client privilege on behalf of a client entity like the City of Los Angeles. Managing officials have a relationship "more akin to the functioning of a high-level corporate officer seeking the views of other corporate division chiefs than to the traditional lawyer and client relationship." *United States v. Bd. of Trade of Chi.*, 1973 U.S. Dist. LEXIS 11307, 9 (1973).

In taking home emails for his own purposes, Kettles waived the attorney-client privilege on behalf of the City. His conduct in bringing home documents for his personal use was inconsistent with the principles of confidentiality. Kettles

NOTICE OF MOTION AND LOCAL RULE 37-1 JOINT STIPULATION RE: PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSES TO DEMAND FOR DOCUMENTS, SET TWO AND REQUEST FOR AN ORDER FOR EVIDENTIARY SANCTIONS

brought home these documents for his own personal use, because he started copying them when he knew that the then- mayor's administration was ending, and his time at the City of Los Angeles was ending. Kettles wanted to keep these communications available for his personal use after his employment had ended. Kettles did not give a reason why he took his work emails home with him. Kettles' taking of documents does not qualify for privilege as an inadvertent disclosure. When made in a federal proceeding or to a federal office or agency, the disclosure does not operate as a waiver in a federal or state proceeding if: (1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26 (b)(5)(B). *See* Fed. Rules Evid. §502(b). Kettles took to steps to prevent disclosure of the privileged emails. In fact, he purposefully and intentionally took these emails home, for his own purposes.

Again, Kettles did not say that he disclosed these emails and documents to an identified person. However, the implied purpose exists that Kettles may have brought these emails home as example work product, for his own purpose in securing his next employment. It is not incumbent on the Plaintiff to prove that the privilege has been waived, because the holder of the privilege has the burden of establishing its existence.

In taking home digital document and email files, Kettles acted in a manner inconsistent with maintaining confidentiality. No privilege exists "as to a communication relevant to an issue of breach of duty by lawyer to his client or by client to his lawyer." Proposed Fed. R. Evid. 503(d)(3). Kettles breached the duty of confidentiality he held as the representative of the client entity, the City of Los Angeles, and breached the same duty to the Mayor's Office as Counsel to Mayor Villaraigosa. Kettles has therefore waived all privilege to these documents on

54

behalf of the City, with whom he had a fiduciary duty as a managing government officer and as an attorney. Kettles should be ordered to answer these questions.

**Defendants' Position:**

Plaintiff's request to compel should be denied because Plaintiff has not identified a pending question that requires further testimony from Kettles. Kettles answered all questions asked of Plaintiff in this deposition excerpt without objection. There is nothing further to compel. Instead, Plaintiff appears to cite to this excerpt in support of his argument that Kettles waived the attorney-client when he took City documents home. This argument must be rejected.

Privileged communications that occur during the period of employment do not lose their protection when the employee leaves the client entity. *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.,* 658 F. 2d 1355, 1361, fn. 7 (9th Cir. 1981). Rather, where the client is an entity, the privilege belongs to and may be waived only by the entity and not individual employees. *Weil v. Investment/Indicators, Research & Mgt., Inc.,* 647 F. 2d 18, 23 (9th Cir. 1981); *United States v. International Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL-CIO,* 119 F. 3d 210, 215 (2nd Cir. 1997). The attorney-client privilege is absolute, and evidence protected by the privilege may not be ordered disclosed regardless of its relevance. *See, Diversified Industries, Inc. v. Meredith,* 572 F. 2d 596, 602(8th Cir. 1977).

During his deposition, Kettles testified that while he was employed by the City, he made a copy of one of the drives at the City where he saved his work. Without citing any authority whatsoever, Miller claims that this somehow constitutes a waiver of the attorney-client privilege. Plaintiff argues "Kettles took documents from the City and stored them on the hard drive, not so that he could work on them for the City, but in anticipation of the change in mayor's

administration, which would resulted in his termination. He knew that his job with the City was ending, and therefore took documents home for his own purposes, and stored them on a personal hard drive, where they could be used by him when he was no longer representing the City."

Plaintiff's conspiracy theory contentions are without merit. More importantly, Plaintiff has not – and cannot – cite any authority to support waiver of the attorney-client privilege simply because Kettles took home work documents. During his deposition, Kettles testified that while he was employed by the City, he made a copy of one of the drives at the City where he saved his work. Without citing any authority whatsoever, Plaintiff claims that this somehow constitutes a waiver of the attorney-client privilege. This argument must be rejected.

At no time did Kettles waive the attorney-client or attorney work product privileges regarding documents stored on his home computer. Where the client is an entity, the privilege belongs to and may be waived only by the entity and not individual employees. (*Weil v. Investment/Indicators, Research & Mgt., Inc.*, 647 F. 2d 18, 23 (9th Cir. 1981); *United States v. International Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL-CIO*, 119 F. 3d 210, 215 (2nd Cir. 1997); *In re Oracle Sec. Litig.*, 2005 WL 6768164, at *4 (N.D. Cal. 2005) *citing to United States v. Salsedo*, 607 F.2d 318, 320 (9th Cir.1979) ("[l]ike the attorney-client privilege, the holder of the work product privilege may waive it").) Further, privileged communications that occur during the period of employment do not lose their protection when the employee leaves the client entity. (*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 658 F. 2d 1355, 1361, fn. 7 (9th Cir. 1981).) The attorney-client privilege is absolute, and evidence protected by the privilege may not be ordered disclosed regardless of its relevance. (*See, Diversified Industries, Inc. v. Meredith*, 572 F. 2d

56

596, 602(8th Cir. 1977).)  Here, there is no evidence that either the City (or Kettles) ever disclosed privileged communications to anyone outside the attorney-client relationship, or that either of them intended to waive the privilege at any time.  Further, there is no evidence that Kettles did not take precautions to safeguard the documents from being viewed by persons outside the attorney-client relationship.

More importantly, Plaintiff has not – and cannot – cite any authority to support waiver of the privileges simply because Kettles took home work documents.  Indeed, Plaintiff's contention means that the privileges are waived any time an attorney takes work home or works from a personal computer, or takes a laptop computer out of his/her office.  The law of waiver of the attorney-client privilege does not operate in such prejudicial fashion.  (*Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340 (9th Cir. 1996) ("The doctrine of waiver of the attorney-client privilege is rooted in notions of fundamental fairness"); *In re Pac Pictures Corp.*, 679 F.3d 1121, 1130 (9th Cir. 2012) (holding involuntary disclosures do not automatically waive the attorney-client privilege); *McCafferty's, Inc. v. The Bank of Glen Burnie*, 179 F.R.D. 163, 169-170 (D. Md. 1998) (holding memo sent by attorney to corporate employee was not inadvertently waived when employee tore up the memo and threw it in the trash can from which it was retrieved by a private investigator).)  As the Ninth Circuit has noted, "the focal point of privilege waiver analysis should be the holder's disclosure of privileged communications to someone outside the attorney-client relationship[.]" (*Quiksilver, Inc. v. Kymsta Corp.*, 247 F.R.D. 579, 584 (C.D. Cal. 2007), *quoting Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 341 (9th Cir.1996).)

**7. The Attorney-Client Privilege was Improperly Raised to Protect Facts Showing Defendants Retaliation Against Miller**

57

### a. On page 97

**Q:** "Was there some other reason that you didn't want to file a declaratory relief action other than the fact that the city attorney's office wasn't amenable?"

**A:** "Again I had many conversations on this issue concerning the scope of your authority and how to increase, maximize the scope of your authority. Many of those conversations were privileged either because I was interacting with other mayor staffers or I was talking to the city attorney's office."

Kettles should be required to answer as there is no clear attorney-client privilege.

**Defendants' Position:**

Plaintiff's request to compel should be denied on the grounds that the requirements of Local Rule 37 have not been satisfied. Plaintiff fails to identify all contentions in support of his position compelling disclosure of attorney-client privileged communications with respect to this particular deposition excerpt. Because Plaintiff's contentions are scattered throughout his portion of the joint stipulation, Defendants cannot adequately respond to Plaintiff's position because they are unable to determine which of his multiple contentions in Section II of his portion of the joint statement apply to this particular deposition excerpt.

### 1) The Information Sought Is Protected by the Attorney-Client Privilege

Kettles properly withheld attorney-client conversations regarding the reasons for not filing a declaratory relief action. From August 2009 to June 2013, Kettles was Deputy Counsel to former Mayor Antonio Villaraigosa. His confidential communications with the City Attorney's Office, the Mayor's Office and outside legal counsel during this time are protected from disclosure pursuant to the

58

attorney-client privilege. (Llewellyn Decl., ¶¶2-5.)

Corporations, partnerships, and other groups and entities, including government agencies, who retain the services of an attorney are "clients" protected by the attorney-client privilege. (*Upjohn Co. v. United States* (1981) 449 US 383, 390, 101 S. Ct. 677, 683 – corporation; *see Maricopa Audubon Soc. v. United States Forest Service,* 108 F. 3d 1089, 1092 (9th Cir. 1997) (holding that a public entity can be a client); *see also Rein v. United States Patent & Trademark Office* (4th Cir. 2009) 553 F. 3d 353, 376 (same).) The privilege protects confidential communications between a client and attorney for purposes of either obtaining or rendering legal assistance. (*Fisher v. United States,* 425 U.S. 391, 403 (1976).) Communications between a government employee and government attorney are privileged to the same extent as those between a corporate employee and corporate attorney. (*Galarza v. United States,* 179 FRD 291, 295 (SD CA 1998); *see also In re County of Erie,* 473 F. 3d 413, 419 (2nd Cir. 2007) ("At least in civil litigation between a government agency and private litigants, the government's claim to the protections of the attorney-client privilege is on par with the claim of an individual or a corporate entity.").)

Generally, the attorney-client privilege *extends to any employee* communicating on matters within the scope of his or her employment when that employee is aware that he or she is being questioned in confidence in order for his or employer to obtain legal advice. (*Upjohn Co. v. United States, supra,* 449 US at 391, 202 S. Ct. at 685). The privilege also applies to communications from attorney to client as long as it is based, at least in part, upon a confidential communication from the client to the attorney. (*In re Sealed Case,* 737 F. 2d 94, 99 (DC Cir. 1984).) Furthermore, the privilege extends to documents prepared by an attorney or at an attorney's request for the purpose of advising a client, if the

59

documents are based on and would tend to reveal the client's confidential communications. (*United States v. National Ass'n of Realtors*, 242 FRD 491, 496) (ND IL 2007).)

The Los Angeles City Charter is the "supreme law" regarding the City's municipal affairs. *Domar Electric, Inc. v. City of Los Angeles*, 9 Cal.4th 161, 170 (1994) ["We begin with the cardinal principle that the charter represents the supreme law of the City, subject only to conflicting provisions in the federal and state Constitutions and to preemptive state law"]; *St. Croix v. Superior Court* (2014) 228 Cal.App.4th 434.) Section 271(b) of the Los Angeles Charter expressly provides: "The City Attorney shall be the legal advisor to the City, and to all City boards, departments, officers and entities." Section 200 of the City Charter states "officers" of the City include the Mayor, members of the City Council and members of the boards or commissions of the departments and the chief administrative officer of each department and office. (See Exs. 1 and 2 to Defendants Request for Judicial Notice.) Consequently, as Deputy Counsel to the Mayor, Kettles' confidential communications involving the City Attorney's Office and the Mayor's Office regarding the Fire Commission and the Independent Assessor are protected by the attorney-client privilege.

In addition, Kettles confidential communications with the Mayor's Office are subject to the attorney-client privilege. For over two decades, it has been the practice of the Mayor's office to have its own Counsel. Both the attorneys who have served as the Mayor's Counsel and employees in the Mayor's office understand that an attorney-client relationship exists between them. (Llewellyn Decl., ¶¶2-5.) Because the Mayor can retain his own legal counsel, confidential communications between the Mayor and the Mayor's legal counsel are privileged.

## 2) Kettles Did Not Waive the Attorney-Client Privilege

60

During his deposition, Kettles testified that while he was employed by the City, he made a copy of one of the drives at the City where he saved his work. Without citing any authority whatsoever, Plaintiff claims that this somehow constitutes a waiver of the attorney-client privilege. This argument must be rejected. At no time did Kettles waive the attorney-client or attorney work product privileges regarding documents stored on his home computer. Where the client is an entity, the privilege belongs to and may be waived only by the entity and not individual employees. (*Weil v. Investment/Indicators, Research & Mgt., Inc.*, 647 F. 2d 18, 23 (9th Cir. 1981); *United States v. International Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL-CIO*, 119 F. 3d 210, 215 (2nd Cir. 1997); *In re Oracle Sec. Litig.*, 2005 WL 6768164, at *4 (N.D. Cal. 2005) *citing to United States v. Salsedo*, 607 F.2d 318, 320 (9th Cir.1979) ("[l]ike the attorney-client privilege, the holder of the work product privilege may waive it").) Further, privileged communications that occur during the period of employment do not lose their protection when the employee leaves the client entity. (*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 658 F. 2d 1355, 1361, fn. 7 (9th Cir. 1981).) The attorney-client privilege is absolute, and evidence protected by the privilege may not be ordered disclosed regardless of its relevance. (*See, Diversified Industries, Inc. v. Meredith*, 572 F. 2d 596, 602(8th Cir. 1977).) Here, there is no evidence that either the City (or Kettles) ever disclosed privileged communications to anyone outside the attorney-client relationship, or that either of them intended to waive the privilege at any time. Further, there is no evidence that Kettles did not take precautions to safeguard the documents from being viewed by persons outside the attorney-client relationship. Plaintiff's waiver argument is unavailing.

More importantly, Plaintiff has not – and cannot – cite any authority to

NOTICE OF MOTION AND LOCAL RULE 37-1 JOINT STIPULATION RE: PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSES TO DEMAND FOR DOCUMENTS, SET TWO AND REQUEST FOR AN ORDER FOR EVIDENTIARY SANCTIONS

support waiver of the privileges simply because Kettles took home work documents. Indeed, Plaintiff's contention means that the privileges are waived any time an attorney takes work home or works from a personal computer. The law of waiver of the attorney-client privilege does not operate in such prejudicial fashion. (*Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340 (9th Cir. 1996) ("The doctrine of waiver of the attorney-client privilege is rooted in notions of fundamental fairness"); *In re Pac Pictures Corp.*, 679 F.3d 1121, 1130 (9th Cir. 2012) (holding involuntary disclosures do not automatically waive the attorney-client privilege); *McCafferty's, Inc. v. The Bank of Glen Burnie*, 179 F.R.D. 163, 169-170 (D. Md. 1998) (holding memo sent by attorney to corporate employee was not inadvertently waived when employee tore up the memo and threw it in the trash can from which it was retrieved by a private investigator).) As the Ninth Circuit has noted, "the focal point of privilege waiver analysis should be the holder's disclosure of privileged communications to someone outside the attorney-client relationship[.]" (*Quiksilver, Inc. v. Kymsta Corp.*, 247 F.R.D. 579, 584 (C.D. Cal. 2007), *quoting Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 341 (9th Cir.1996).)

### a. On page 157

**Q:** "Are you aware of any decision at any time, at any time that they were—the city was going to wait until the new mayor took office to seek my release or dismissal as the independent assessor?"

**A:** "I had a number of conversations over the years in the mayor's office concerning the scope of your authority and the issues that grew out of that dispute, many of which are subject to attorney-client privilege, conversations I had with the office of the city attorney, outside counsel to the city. I don't want to breach the privilege. So I'll answer by saying I'm not aware of conversations with—that are not subject to the privilege on

62

the subject of [Miller's] employment with the City."

Plaintiff did not ask for disclosure of communications. Plaintiff is already aware that decisions took place that resulted in his termination. Instead, Plaintiff asked Kettles, a former Defendant to this action, whether he had knowledge of the decision at the time it was made.

Attorney client privilege affects only the confidential communciations made between the attorney and client or representative. See Proposed Fed. R. Evid. 503(a)(3). It does not affect the personal knowledge of information, because facts are not protected by privilege. *Upjohn Co. v. United States*, 449 U.S. 383, 404 (1981). The witness's personal knowledge of facts should be available to inquiry, and Defense counsel in this instance misused the attorney-client privilege.

**Defendants' Position:**

Plaintiff's request to compel should be denied on the grounds that the requirements of Local Rule 37 have not been satisfied. Plaintiff fails to identify all contentions in support of his position compelling disclosure of attorney-client privileged communications with respect to this particular deposition excerpt. Because Plaintiff's contentions are scattered throughout his portion of the joint stipulation, Defendants cannot adequately respond to Plaintiff's position because they are unable to determine which of his multiple contentions in Section II of his portion of the joint statement apply to this particular deposition excerpt.

## 1) The Information Sought is Protected by the Attorney-Client Privilege

Kettles properly withheld attorney-client communications regarding Plaintiff's release from the Independent Assessor position. Plaintiff improperly attempts to characterize the question as asking whether Kettles had knowledge of the "decision at the time it was made", asserting that this knowledge is a fact that is not privileged. While Miller is correct that the termination of his employment is a

63

"fact" that in and of itself is not privileged, discussions with attorneys about that "fact" are still privileged. The very nature of Plaintiff's question to Kettles required Kettles to reveal privileged communications if he substantively answered the question. The fact that a decision had been made or had not been made to release Plaintiff from his employment after a new mayor took office would specifically reveal privileged discussions. Kettles answered the question in the best way he could without revealing the substance of a privileged communication by stating that he was not aware of any non-privileged communications relating to Miller's employment with the City.

Where information is shared between client and counsel, those communications are privileged as long as it was made for the purpose of securing legal advice or legal services, or conveying legal advice. (*SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 480 (E.D. Pa. 2005).) From August 2009 to June 2013, Kettles was Deputy Counsel to former Mayor Antonio Villaraigosa. Corporations, partnerships, and other groups and entities, including government agencies, who retain the services of an attorney are "clients" protected by the attorney-client privilege. (*Upjohn Co. v. United States* (1981) 449 US 383, 390, 101 S. Ct. 677, 683 – corporation; *see Maricopa Audubon Soc. v. United States Forest Service*, 108 F. 3d 1089, 1092 (9th Cir. 1997) (holding that a public entity can be a client); *see also Rein v. United States Patent & Trademark Office* (4th Cir. 2009) 553 F. 3d 353, 376 (same).) The privilege protects confidential communications between a client and attorney for purposes of either obtaining or rendering legal assistance. (*Fisher v. United States*, 425 U.S. 391, 403 (1976).) Communications between a government employee and government attorney are privileged to the same extent as those between a corporate employee and corporate attorney. (*Galarza v. United States*, 179 FRD 291, 295 (SD CA 1998); *see also In*

*re County of Erie*, 473 F. 3d 413, 419 (2nd Cir. 2007) ("At least in civil litigation between a government agency and private litigants, the government's claim to the protections of the attorney-client privilege is on par with the claim of an individual or a corporate entity.").)

Generally, the attorney-client privilege *extends to any employee* communicating on matters within the scope of his or her employment when that employee is aware that he or she is being questioned in confidence in order for his or employer to obtain legal advice. (*Upjohn Co. v. United States, supra*, 449 US at 391, 202 S. Ct. at 685). The privilege also applies to communications from attorney to client as long as it is based, at least in part, upon a confidential communication from the client to the attorney. (*In re Sealed Case*, 737 F. 2d 94, 99 (DC Cir. 1984).) Furthermore, the privilege extends to documents prepared by an attorney or at an attorney's request for the purpose of advising a client, if the documents are based on and would tend to reveal the client's confidential communications. (*United States v. National Ass'n of Realtors*, 242 FRD 491, 496) (ND IL 2007).)

The Los Angeles City Charter is the "supreme law" regarding the City's municipal affairs. *Domar Electric, Inc. v. City of Los Angeles*, 9 Cal.4th 161, 170 (1994) ["We begin with the cardinal principle that the charter represents the supreme law of the City, subject only to conflicting provisions in the federal and state Constitutions and to preemptive state law"]; *St. Croix v. Superior Court* (2014) 228 Cal.App.4th 434.) Section 271(b) of the Los Angeles Charter expressly provides: "The City Attorney shall be the legal advisor to the City, and to all City boards, departments, officers and entities." Section 200 of the City Charter states "officers" of the City include the Mayor, members of the City Council and members of the boards or commissions of the departments and the chief

NOTICE OF MOTION AND LOCAL RULE 37-1 JOINT STIPULATION RE: PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSES TO DEMAND FOR DOCUMENTS, SET TWO AND REQUEST FOR AN ORDER FOR EVIDENTIARY SANCTIONS

administrative officer of each department and office.  (*See* Exs. 1 and 2 to Defendants Request for Judicial Notice.)  Consequently, as Deputy Counsel to the Mayor, Kettles' confidential communications involving the City Attorney's Office and the Mayor's Office regarding the Fire Commission and the Independent Assessor are protected by the attorney-client privilege.

In addition, Kettles confidential communications with the Mayor's Office are subject to the attorney-client privilege.  For over two decades, it has been the practice of the Mayor's office to have its own Counsel.  Both the attorneys who have served as the Mayor's Counsel and employees in the Mayor's office understand that an attorney-client relationship exists between them.  (Llewellyn Decl., ¶¶2-5.)  Because the Mayor can retain his own legal counsel, confidential communications between the Mayor and the Mayor's legal counsel are privileged.

### 2) <u>Kettles Did Not Waive the Attorney-Client Privilege</u>

During his deposition, Kettles testified that while he was employed by the City, he made a copy of one of the drives at the City where he saved his work.  Without citing any authority whatsoever, Plaintiff claims that this somehow constitutes a waiver of the attorney-client privilege.  This argument must be rejected.  At no time did Kettles waive the attorney-client or attorney work product privileges regarding documents stored on his home computer.  Where the client is an entity, the privilege belongs to and may be waived only by the entity and not individual employees.  (*Weil v. Investment/Indicators, Research & Mgt., Inc.*, 647 F. 2d 18, 23 (9th Cir. 1981); *United States v. International Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL-CIO*, 119 F. 3d 210, 215 (2nd Cir. 1997); *In re Oracle Sec. Litig.*, 2005 WL 6768164, at *4 (N.D. Cal. 2005) *citing to United States v. Salsedo*, 607 F.2d 318, 320 (9th Cir.1979) ("[l]ike the attorney-client privilege, the holder of the work product privilege may waive

66

it").) Further, privileged communications that occur during the period of employment do not lose their protection when the employee leaves the client entity. (*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 658 F. 2d 1355, 1361, fn. 7 (9th Cir. 1981).) The attorney-client privilege is absolute, and evidence protected by the privilege may not be ordered disclosed regardless of its relevance. (*See, Diversified Industries, Inc. v. Meredith*, 572 F. 2d 596, 602(8th Cir. 1977).) Here, there is no evidence that either the City (or Kettles) ever disclosed privileged communications to anyone outside the attorney-client relationship, or that either of them intended to waive the privilege at any time. Further, there is no evidence that Kettles did not take precautions to safeguard the documents from being viewed by persons outside the attorney-client relationship. Plaintiff's waiver argument is unavailing.

More importantly, Plaintiff has not – and cannot – cite any authority to support waiver of the privileges simply because Kettles took home work documents. Indeed, Plaintiff's contention means that the privileges are waived any time an attorney takes work home or works from a personal computer. The law of waiver of the attorney-client privilege does not operate in such prejudicial fashion. (*Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340 (9th Cir. 1996) ("The doctrine of waiver of the attorney-client privilege is rooted in notions of fundamental fairness"); *In re Pac Pictures Corp.*, 679 F.3d 1121, 1130 (9th Cir. 2012) (holding involuntary disclosures do not automatically waive the attorney-client privilege); *McCafferty's, Inc. v. The Bank of Glen Burnie*, 179 F.R.D. 163, 169-170 (D. Md. 1998) (holding memo sent by attorney to corporate employee was not inadvertently waived when employee tore up the memo and threw it in the trash can from which it was retrieved by a private investigator).) As the Ninth Circuit has noted, "the focal point of privilege waiver analysis should be the

67

holder's disclosure of privileged communications to someone outside the attorney-client relationship[.]" (*Quiksilver, Inc. v. Kymsta Corp.*, 247 F.R.D. 579, 584 (C.D. Cal. 2007), *quoting Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 341 (9th Cir.1996).)

### a. On page 158-159

**Q:** "Did you have any discussions with anybody in the city attorney's office about the fact that the way to deal with ongoing complaints from Steve Miller would be dealt with by terminating his employment where those conversations took place with anybody in the mayor's office before July 1, 2013?"

**Mr. Walter:** "I'm going to object to that question as calling for attorney-client privileged communications. If you're able to answer it without revealing attorney-client privileged communications, you may."

**A:** "I can't answer that questions. If any such conversations took place, I would not be able to discuss them."

**Q:** "Did you have any conversations with anybody in the City Attorney's Office that the way to deal with Mr. Miller, Steve Miller's continuing complaints were—was to be his dismissal when the new mayor came into office after July 1, 2013?"

**Mr. Walter:** "I think that's the same question."

**Mr. Miller:** "No, I asked about the mayor's office. Now I'm asking about the city attorney's office."

**Mr. Walter:** "Okay. When you ask about the city attorney's office, that would call for attorney-client privileged communications. Therefore, I instruct the witness not to answer that and—well, not to answer it unless there's a way you can answer it without revealing attorney-client communications."

68

**A:** "If any such communications took place, I would not be able to reveal them since they are protected by the attorney-client privilege."

Here, the attorney-client privilege is used to protect the City Attorney and Mayor's Office from liability, not the City, which is the holder of the privilege.

**Defendants' Position:**

Plaintiff's request to compel should be denied on the grounds that the requirements of Local Rule 37 have not been satisfied. Plaintiff fails to identify all contentions in support of his position compelling disclosure of attorney-client privileged communications with respect to this particular deposition excerpt. Because Plaintiff's contentions are scattered throughout his portion of the joint stipulation, Defendants cannot adequately respond to Plaintiff's position because they are unable to determine which of his multiple contentions in Section II of his portion of the joint statement apply to this particular deposition excerpt.

### 1) The Information Sought Is Protected by the Attorney-Client Privilege

Kettles properly withheld attorney-client communications regarding whether he had discussions with the Mayor's Office or the City Attorney's Office about addressing Plaintiff's ongoing complaints. Plaintiff asks Kettles to reveal if he had a very specific discussion with attorneys for the City about his employment. The very nature of Plaintiff's question to Kettles required Kettles to reveal privileged communications if he substantively answered the question in any manner. There was no way for Kettles to answer the question without specifically revealing privileged discussions. Additionally, the only argument that Plaintiff makes to support his position – that the privilege is improperly being used to protect the Mayor's Office and City Attorney's Office from liability but not the City – is nonsensical. If the City has privileged communications, the City has the right to

69