Mary E. Collins, Esq., CA Bar No. 296536
Dennis E. Wagner, Esq., CA Bar No. 99190
WAGNER & PELAYES, LLP
1325 Spruce Street, Suite 200
Riverside, CA 92507
Tel: (951) 686-4800
Fax: (951) 686-4801
mec@wagner-pelayes.com
dew@wagner-pelayes.com

Stephen Miller, CA Bar No. 106534
1325 Spruce Street, Suite 200
Riverside, CA 92507
Tel: (951) 686-4800

Attorneys for Plaintiff,
STEPHEN MILLER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

STEPHEN MILLER,

    Plaintiff,

vs.

CITY OF LOS ANGELES, et al.,

    Defendants.

CASE NO.: CV13-05148 GW (CWx)

**DISCOVERY MATTER**

**NOTICE OF MOTION AND LOCAL RULE 37-1 JOINT STIPULATION RE: PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSES TO DEMAND FOR DOCUMENTS, SET TWO AND REQUEST FOR AN ORDER FOR EVIDENTIARY SANCTIONS**

**PART 2** [*of 2*]

**DATE:**    April 14, 2015
**TIME:**    10:00 a.m.
**CRTRM:**    640

*Magistrate Judge Carla Woehrle*

assert the privilege as to those communications, regardless of whether that assertion "protects" the Mayor's Office and the City Attorney's Office.

From August 2009 to June 2013, Kettles was Deputy Counsel to former Mayor Antonio Villaraigosa. (Llewellyn Decl., ¶4.) Corporations, partnerships, and other groups and entities, including government agencies, who retain the services of an attorney are "clients" protected by the attorney-client privilege. (*Upjohn Co. v. United States* (1981) 449 US 383, 390, 101 S. Ct. 677, 683 – corporation; *see Maricopa Audubon Soc. v. United States Forest Service,* 108 F. 3d 1089, 1092 (9th Cir. 1997) (holding that a public entity can be a client); *see also Rein v. United States Patent & Trademark Office* (4th Cir. 2009) 553 F. 3d 353, 376 (same).) The privilege protects confidential communications between a client and attorney for purposes of either obtaining or rendering legal assistance. (*Fisher v. United States,* 425 U.S. 391, 403 (1976).) Communications between a government employee and government attorney are privileged to the same extent as those between a corporate employee and corporate attorney. (*Galarza v. United States,* 179 FRD 291, 295 (SD CA 1998); *see also In re County of Erie,* 473 F. 3d 413, 419 (2nd Cir. 2007) ("At least in civil litigation between a government agency and private litigants, the government's claim to the protections of the attorney-client privilege is on par with the claim of an individual or a corporate entity.").)

Generally, the attorney-client privilege *extends to any employee* communicating on matters within the scope of his or her employment when that employee is aware that he or she is being questioned in confidence in order for his or employer to obtain legal advice. (*Upjohn Co. v. United States, supra,* 449 US at 391, 202 S. Ct. at 685). The privilege also applies to communications from attorney to client as long as it is based, at least in part, upon a confidential communication from the client to the attorney. (*In re Sealed Case,* 737 F. 2d 94,

70

99 (DC Cir. 1984).) Furthermore, the privilege extends to documents prepared by an attorney or at an attorney's request for the purpose of advising a client, if the documents are based on and would tend to reveal the client's confidential communications. (*United States v. National Ass'n of Realtors*, 242 FRD 491, 496) (ND IL 2007).)

The Los Angeles City Charter is the "supreme law" regarding the City's municipal affairs. *Domar Electric, Inc. v. City of Los Angeles*, 9 Cal.4th 161, 170 (1994) ["We begin with the cardinal principle that the charter represents the supreme law of the City, subject only to conflicting provisions in the federal and state Constitutions and to preemptive state law"]; *St. Croix v. Superior Court* (2014) 228 Cal.App.4th 434.) Section 271(b) of the Los Angeles Charter expressly provides: "The City Attorney shall be the legal advisor to the City, and to all City boards, departments, officers and entities." Section 200 of the City Charter states "officers" of the City include the Mayor, members of the City Council and members of the boards or commissions of the departments and the chief administrative officer of each department and office. (See Ex. __ to Defendants Request for Judicial Notice.) Consequently, as Deputy Counsel to the Mayor, Kettles' confidential communications involving the City Attorney's Office and the Mayor's Office regarding the Fire Commission and the Independent Assessor are protected by the attorney-client privilege. Although Kettles and the City Attorney's office are not clients of one another, their discussions are still protected by the attorney-client privilege if the giving of information to one another enables each of them to give sound and informed advice to their respective clients. In other words, if Kettles sought information from the City Attorney's office to enable him to give legal advice to the Mayor and the Mayor's Office, those discussions would be privileged even though the City Attorney's office is not

71

Kettles client. As discussed in *Upjohn*, the attorney-client privilege extends to other officers and agents of an employer who possess relevant information needed by counsel if he is adequately to advise the client with respect to an issue.

In addition, Kettles confidential communications with the Mayor's Office are subject to the attorney-client privilege. For over two decades, it has been the practice of the Mayor's office to have its own Counsel. Both the attorneys who have served as the Mayor's Counsel and employees in the Mayor's office understand that an attorney-client relationship exists between them. (Llewellyn Decl., ¶¶2-5.) Because the Mayor can retain his own legal counsel, confidential communications between the Mayor and the Mayor's legal counsel are privileged.

### 2) **Kettles Did Not Waive the Attorney-Client Privilege**

During his deposition, Kettles testified that while he was employed by the City, he made a copy of one of the drives at the City where he saved his work. Without citing any authority whatsoever, Plaintiff claims that this somehow constitutes a waiver of the attorney-client privilege. This argument must be rejected. At no time did Kettles waive the attorney-client or attorney work product privileges regarding documents stored on his home computer. Where the client is an entity, the privilege belongs to and may be waived only by the entity and not individual employees. (*Weil v. Investment/Indicators, Research & Mgt., Inc.*, 647 F. 2d 18, 23 (9th Cir. 1981); *United States v. International Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL-CIO*, 119 F. 3d 210, 215 (2nd Cir. 1997); *In re Oracle Sec. Litig.*, 2005 WL 6768164, at *4 (N.D. Cal. 2005) *citing to United States v. Salsedo*, 607 F.2d 318, 320 (9th Cir.1979) ("[l]ike the attorney-client privilege, the holder of the work product privilege may waive it").) Further, privileged communications that occur during the period of employment do not lose their protection when the employee leaves the client

entity. (*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 658 F. 2d 1355, 1361, fn. 7 (9th Cir. 1981).)  The attorney-client privilege is absolute, and evidence protected by the privilege may not be ordered disclosed regardless of its relevance. (*See, Diversified Industries, Inc. v. Meredith,* 572 F. 2d 596, 602(8th Cir. 1977).)  Here, there is no evidence that either the City (or Kettles) ever disclosed privileged communications to anyone outside the attorney-client relationship, or that either of them intended to waive the privilege at any time.  Further, there is no evidence that Kettles did not take precautions to safeguard the documents from being viewed by persons outside the attorney-client relationship.  Plaintiff's waiver argument is unavailing.

More importantly, Plaintiff has not – and cannot – cite any authority to support waiver of the privileges simply because Kettles took home work documents.  Indeed, Plaintiff's contention means that the privileges are waived any time an attorney takes work home or works from a personal computer.  The law of waiver of the attorney-client privilege does not operate in such prejudicial fashion. (*Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340 (9th Cir. 1996) ("The doctrine of waiver of the attorney-client privilege is rooted in notions of fundamental fairness"); *In re Pac Pictures Corp.,* 679 F.3d 1121, 1130 (9th Cir. 2012) (holding involuntary disclosures do not automatically waive the attorney-client privilege); *McCafferty's, Inc. v. The Bank of Glen Burnie*, 179 F.R.D. 163, 169-170 (D. Md. 1998) (holding memo sent by attorney to corporate employee was not inadvertently waived when employee tore up the memo and threw it in the trash can from which it was retrieved by a private investigator).)  As the Ninth Circuit has noted, "the focal point of privilege waiver analysis should be the holder's disclosure of privileged communications to someone outside the attorney-client relationship[.]" (*Quiksilver, Inc. v. Kymsta Corp.*, 247 F.R.D. 579, 584

(C.D. Cal. 2007), *quoting Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 341 (9th Cir.1996).)

### a. On page 160-161

**Q:** "Did the city attorney's office—did anybody in the city attorney's office either before July 1, or after July 1, 2013, request that I be fired?"

**A:** "I guess it's the same objection as before July 1st, 2013. Any communications that I was privy to or participated in on that subject if they occurred would be protected by the attorney-client privilege."

**Q:** "So you won't answer any of the questions as to whether or not the city attorney requested my termination, whether the conversation occurred before July 1 or after July 1; is that correct?"

**A:** "Well, before July 1 I was an employee of the city and a client of the city attorney. Those conversations are privileged. After July 1, 2013, it's a little bit different. I was no longer an employee. I didn't have any connection or involvement with these disputes until I became a party to this lawsuit. After that I had communications with the outside attorneys for the city about the case. Those communications would be privileged too. So I don't have any non-privileged information to share with you in that respect."

Here, the privilege was used to hide the retaliation committed by the City Attorneys. Kettles should be ordered to answer.

## Defendants' Position:

Plaintiff's request to compel should be denied on the grounds that the requirements of Local Rule 37 have not been satisfied. Plaintiff fails to identify all contentions in support of his position compelling disclosure of attorney-client privileged communications with respect to this particular deposition excerpt. Because Plaintiff's contentions are scattered throughout his portion of the joint

74

stipulation, Defendants cannot adequately respond to Plaintiff's position because they are unable to determine which of his multiple contentions in Section II of his portion of the joint statement apply to this particular deposition excerpt.

### 1) The Information Sought is Protected by the Attorney-Client Privilege

Kettles properly withheld attorney-client communications regarding whether the City Attorney's office wanted Plaintiff to be terminated. He correctly noted that he was a client of the City Attorney's Office while he was employed by the City and therefore could not answer the question without revealing privileged information. Any answer to the question would reveal a privileged communication with the City Attorney's Office.

From August 2009 to June 2013, Kettles was Deputy Counsel to former Mayor Antonio Villaraigosa. (Llewellyn Decl., ¶4.) Corporations, partnerships, and other groups and entities, including government agencies, who retain the services of an attorney are "clients" protected by the attorney-client privilege. (*Upjohn Co. v. United States* (1981) 449 US 383, 390, 101 S. Ct. 677, 683 – corporation; *see Maricopa Audubon Soc. v. United States Forest Service,* 108 F. 3d 1089, 1092 (9th Cir. 1997) (holding that a public entity can be a client); *see also Rein v. United States Patent & Trademark Office* (4th Cir. 2009) 553 F. 3d 353, 376 (same).) The privilege protects confidential communications between a client and attorney for purposes of either obtaining or rendering legal assistance. (*Fisher v. United States,* 425 U.S. 391, 403 (1976).) Communications between a government employee and government attorney are privileged to the same extent as those between a corporate employee and corporate attorney. (*Galarza v. United States,* 179 FRD 291, 295 (SD CA 1998); *see also In re County of Erie,* 473 F. 3d 413, 419 (2nd Cir. 2007) ("At least in civil litigation between a government agency

and private litigants, the government's claim to the protections of the attorney-client privilege is on par with the claim of an individual or a corporate entity.").)

Generally, the attorney-client privilege *extends to any employee* communicating on matters within the scope of his or her employment when that employee is aware that he or she is being questioned in confidence in order for his or employer to obtain legal advice. (*Upjohn Co. v. United States, supra*, 449 US at 391, 202 S. Ct. at 685). The privilege also applies to communications from attorney to client as long as it is based, at least in part, upon a confidential communication from the client to the attorney. (*In re Sealed Case*, 737 F. 2d 94, 99 (DC Cir. 1984).) Furthermore, the privilege extends to documents prepared by an attorney or at an attorney's request for the purpose of advising a client, if the documents are based on and would tend to reveal the client's confidential communications. (*United States v. National Ass'n of Realtors*, 242 FRD 491, 496) (ND IL 2007).)

The Los Angeles City Charter is the "supreme law" regarding the City's municipal affairs. *Domar Electric, Inc. v. City of Los Angeles*, 9 Cal.4th 161, 170 (1994) ["We begin with the cardinal principle that the charter represents the supreme law of the City, subject only to conflicting provisions in the federal and state Constitutions and to preemptive state law"]; *St. Croix v. Superior Court* (2014) 228 Cal.App.4th 434.) Section 271(b) of the Los Angeles Charter expressly provides: "The City Attorney shall be the legal advisor to the City, and to all City boards, departments, officers and entities." Section 200 of the City Charter states "officers" of the City include the Mayor, members of the City Council and members of the boards or commissions of the departments and the chief administrative officer of each department and office. (See Exs. 1 and 2 to Defendants Request for Judicial Notice.) Consequently, as Deputy Counsel to the

Mayor, Kettles' confidential communications involving the City Attorney's Office and the Mayor's Office regarding the Fire Commission and the Independent Assessor are protected by the attorney-client privilege.

In addition, Kettles confidential communications with the Mayor's Office are subject to the attorney-client privilege. For over two decades, it has been the practice of the Mayor's office to have its own Counsel. Both the attorneys who have served as the Mayor's Counsel and employees in the Mayor's office understand that an attorney-client relationship exists between them. (Llewellyn Decl., ¶¶2-5.) Because the Mayor can retain his own legal counsel, confidential communications between the Mayor and the Mayor's legal counsel are privileged.

### 2) **Kettles Did Not Waive the Attorney-Client Privilege**

During his deposition, Kettles testified that while he was employed by the City, he made a copy of one of the drives at the City where he saved his work. Without citing any authority whatsoever, Plaintiff claims that this somehow constitutes a waiver of the attorney-client privilege. This argument must be rejected. At no time did Kettles waive the attorney-client or attorney work product privileges regarding documents stored on his home computer. Where the client is an entity, the privilege belongs to and may be waived only by the entity and not individual employees. (*Weil v. Investment/Indicators, Research & Mgt., Inc.*, 647 F. 2d 18, 23 (9th Cir. 1981); *United States v. International Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL-CIO*, 119 F. 3d 210, 215 (2nd Cir. 1997); *In re Oracle Sec. Litig.*, 2005 WL 6768164, at *4 (N.D. Cal. 2005) *citing to United States v. Salsedo*, 607 F.2d 318, 320 (9th Cir.1979) ("[l]ike the attorney-client privilege, the holder of the work product privilege may waive it").) Further, privileged communications that occur during the period of employment do not lose their protection when the employee leaves the client

entity. (*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 658 F. 2d 1355, 1361, fn. 7 (9th Cir. 1981).) The attorney-client privilege is absolute, and evidence protected by the privilege may not be ordered disclosed regardless of its relevance. (*See, Diversified Industries, Inc. v. Meredith*, 572 F. 2d 596, 602(8th Cir. 1977).) Here, there is no evidence that either the City (or Kettles) ever disclosed privileged communications to anyone outside the attorney-client relationship, or that either of them intended to waive the privilege at any time. Further, there is no evidence that Kettles did not take precautions to safeguard the documents from being viewed by persons outside the attorney-client relationship. Plaintiff's waiver argument is unavailing.

More importantly, Plaintiff has not – and cannot – cite any authority to support waiver of the privileges simply because Kettles took home work documents. Indeed, Plaintiff's contention means that the privileges are waived any time an attorney takes work home or works from a personal computer. The law of waiver of the attorney-client privilege does not operate in such prejudicial fashion. (*Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340 (9th Cir. 1996) ("The doctrine of waiver of the attorney-client privilege is rooted in notions of fundamental fairness"); *In re Pac Pictures Corp.*, 679 F.3d 1121, 1130 (9th Cir. 2012) (holding involuntary disclosures do not automatically waive the attorney-client privilege); *McCafferty's, Inc. v. The Bank of Glen Burnie*, 179 F.R.D. 163, 169-170 (D. Md. 1998) (holding memo sent by attorney to corporate employee was not inadvertently waived when employee tore up the memo and threw it in the trash can from which it was retrieved by a private investigator).) As the Ninth Circuit has noted, "the focal point of privilege waiver analysis should be the holder's disclosure of privileged communications to someone outside the attorney-client relationship[.]" (*Quiksilver, Inc. v. Kymsta Corp.*, 247 F.R.D. 579, 584

78

(C.D. Cal. 2007), *quoting Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 341 (9th Cir.1996).)

### a. On page 163:

**Q:** "Okay. Did you have any discussions with Mr. Santana about me?"

**Mr. Walter:** Object to the extent that that may call for attorney-client privileged communications if there were also attorneys present during those conversations. You can answer if you have information that doesn't involve attorney-client communications."

**A:** "With that instruction I cannot answer the question."

Defense counsel used the privilege to hide whether the communication took place. While the substance of a communication between an attorney and client may be privileged, the fact of whether a communication took place is not protected by attorney-client privilege. This is because facts are not protected by privilege. *Upjohn Co. v. United States*, 449 U.S. 383, 404 (1981). The witness should be able to answer whether a discussion took place, without the invocation of the attorney-client privilege.

**Defendants' Position:**

Plaintiff's request to compel should be denied on the grounds that the requirements of Local Rule 37 have not been satisfied. Plaintiff fails to identify all contentions in support of his position compelling disclosure of attorney-client privileged communications with respect to this particular deposition excerpt. Because Plaintiff's contentions are scattered throughout his portion of the joint stipulation, Defendants cannot adequately respond to Plaintiff's position because they are unable to determine which of his multiple contentions in Section II of his portion of the joint statement apply to this particular deposition excerpt.

Notwithstanding, Kettles properly withheld attorney-client communications with Miguel Santana regarding Plaintiff. The attorney-client privilege objection

79

was based upon whether attorneys were present during his discussion with Santana. Kettles' answer indicates that attorneys were present during discussions he had with Santana. Regardless, even if Kettles had been permitted to answer the question, any follow-up questions would be precluded as privileged communications since attorneys were present.

From August 2009 to June 2013, Kettles was Deputy Counsel to former Mayor Antonio Villaraigosa. Miguel Santana is the City Administrative Officer ("CAO"). As CAO, Santana is the chief financial advisor to the Mayor and the Council and reports directly to both. The CAO assists the Mayor and Council in the preparation of the City budget, plans and directs the administration of the budget and directs the development of work programs and standards. The CAO represents the management of the City in negotiating all labor contracts. In addition, the CAO chairs and participates in many coordinating committees and performs other duties required by the Mayor and Council. (Llewellyn Decl., ¶¶2-5.)

Attorney-client communications can include those made to third persons "reasonably necessary" for the purpose of transmitting information between attorney and client. (*City & County of San Francisco v. Sup. Ct.,* (1951) 37 Cal.2d 227, 234-235.) Further, attorney communications with agents and employees of a client, with the attorney giving and receiving information to facilitate the purpose of the professional employment, are also protected. (*AMCO Ins. Co. v. Madera Quality Nut LLC,* 2006 WL 931437 at *9 (E.D. Cal. Apr. 11, 2006).) Finally, as discussed in *Upjohn*, the attorney-client privilege extends to other officers and agents of an employer who possess relevant information needed by counsel if he is adequately to advise the client with respect to an issue.

### a. On page 165

80

Q: "Any discussions that you had with Mr. Llewellyn about me, Steve Miller, the independent assessor, what conversations did you take—did you have with Mr. Llewellyn before you left your employment on the last day of June 2013?"

A: "Sometime near the end of my time at the mayor's office I met with Mr. Llewellyn to brief him on the work of my office, my office meaning the counsel office within the mayor's office.

Mr. Walter: "Inject that I don't know where you're going with that answer, but I want to remind you not to reveal any attorney-client privileged communications."

A: "Anything I've shared with Mr. Llewellyn I view as protected by the attorney-client privilege."

Mr. Kettles asserted the privilege in order to protect himself from liability, rather than the City. He may have advised his replacement, Llewellyn, to seek Miller's termination.

First, Kettles had an express attorney-client relationship with the former mayor and his office. He had no attorney-client relationship with Llewellyn. Their communications therefore cannot be privileged.

Second, no privilege exists for communications made by Kettles to Garcetti's incoming mayor administration. The Supreme Court has stated that, in the corporate context, "new managers installed as a result of a takeover, merger, loss of confidence by shareholders, or simply normal succession, may waive the attorney-client privilege with respect to communications made by former officers and management." *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 349 (1985). The attorney-client relationship, the communications of an officer in a government entity is "akin to the functioning of a high-level corporate officer." *United States v. Bd. Of Trade of Chicago*, No. 71 C 2875, 1873 U.S. Dist.

81

LEXIS (N.D. Ill. Oct. 30, 1973). The same rules of attorney-client privilege in a corporate entity can be inferred as applicable to a public entity. Kettles, as a former managing officer of the City, no longer has the ability to assert the privilege on behalf of the City. As a now former officer for the City, the information or opinions which he gave to Llewellyn are not protected.

**Defendants' Position:**

Plaintiff's request to compel should be denied on the grounds that the requirements of Local Rule 37 have not been satisfied. Plaintiff fails to identify all contentions in support of his position compelling disclosure of attorney-client privileged communications with respect to this particular deposition excerpt. Because Plaintiff's contentions are scattered throughout his portion of the joint stipulation, Defendants cannot adequately respond to Plaintiff's position because they are unable to determine which of his multiple contentions in Section II of his portion of the joint statement apply to this particular deposition excerpt.

Notwithstanding, Plaintiff's request to compel should also be denied because Plaintiff has not identified a pending question that requires further testimony from Kettles. Plaintiff asked Kettles if he had any discussions with Richard Llewellyn, the current Legal Counsel to the Mayor, before Kettles left employment with the City in June 2013. Kettles responded that he met with Llewellyn near the end of his term to brief him on his work at the Mayor's Office. There is nothing further to compel.

Even if there was a pending question regarding the substance of the discussions between Kettles and Llewellyn, these communications would still be protected by the attorney-client privilege. From August 2009 to June 2013, Kettles was Deputy Counsel to former Mayor Antonio Villaraigosa. When Eric Garcetti became Mayor, Richard Llewellyn was appointed Counsel to the Mayor's Office.

82

As part of the transition from the Villaraigosa administration to the Garcetti administration, Kettles and Llewellyn discussed numerous ongoing matters involving the Mayor's office that the Garcetti administration would inherit including conflict cases. Conflict cases are complaints including lawsuits that the City Attorney's office cannot handle due to a conflict of interest. The City enacted an ordinance to develop procedures for use of outside counsel in conflict cases, including the establishment of the Attorney Conflicts Panel, which is a group of private law firms that are jointly supervised by the Mayor's office and the City's Chief Administrative Officer. (Declaration of Richard H. Llewellyn ("Llewellyn Decl."), ¶¶2-5.)

The conflict litigation matters that were transitioned from the Villaraigosa administration to the Garcetti administration included Plaintiff's complaints, subsequent lawsuit (to which City Attorneys Vivienne Swanigan, Zna Houston, and Janet Jackson were initially named as defendants) and the related state court lawsuits filed by Swanigan, Houston, and Jackson against Plaintiff and the City. (Llewellyn Decl., ¶¶2-5.) When conflict litigation arises, the CAO and Mayor's office step into the shoes of the City Attorney's office for purposes of managing and overseeing outside counsel retained to handle such matters. Therefore, communications between Kettles and Llewellyn that relate to transitioning the handling and oversight of conflict litigation is the equivalent of one set of attorneys briefing another set of attorneys inheriting the case from them. These communications are protected by the attorney-client privilege. (*See, e.g., Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 349 (1985) ("The parties also agree that when control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well").)

83

Further, Kettles did not waive the attorney-client privilege as to these communications. During his deposition, Kettles testified that while he was employed by the City, he made a copy of one of the drives at the City where he saved his work. Without citing any authority whatsoever, Plaintiff claims that this somehow constitutes a waiver of the attorney-client privilege. This argument must be rejected. At no time did Kettles waive the attorney-client or attorney work product privileges regarding documents stored on his home computer. Where the client is an entity, the privilege belongs to and may be waived only by the entity and not individual employees. (*Weil v. Investment/Indicators, Research & Mgt., Inc.*, 647 F. 2d 18, 23 (9th Cir. 1981); *United States v. International Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL-CIO*, 119 F. 3d 210, 215 (2nd Cir. 1997); *In re Oracle Sec. Litig.*, 2005 WL 6768164, at *4 (N.D. Cal. 2005) *citing to United States v. Salsedo*, 607 F.2d 318, 320 (9th Cir.1979) ("[l]ike the attorney-client privilege, the holder of the work product privilege may waive it").)

Privileged communications that occur during the period of employment do not lose their protection when the employee leaves the client entity. (*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 658 F. 2d 1355, 1361, fn. 7 (9th Cir. 1981).) The attorney-client privilege is absolute, and evidence protected by the privilege may not be ordered disclosed regardless of its relevance. (*See, Diversified Industries, Inc. v. Meredith,* 572 F. 2d 596, 602(8th Cir. 1977).) Here, there is no evidence that either the City (or Kettles) ever disclosed privileged communications to anyone outside the attorney-client relationship, or that either of them intended to waive the privilege at any time. Further, there is no evidence that Kettles did not take precautions to safeguard the documents from being viewed by persons outside the attorney-client relationship.

NOTICE OF MOTION AND LOCAL RULE 37-1 JOINT STIPULATION RE: PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSES TO DEMAND FOR DOCUMENTS, SET TWO AND REQUEST FOR AN ORDER FOR EVIDENTIARY SANCTIONS

Plaintiff's waiver argument is unavailing.

More importantly, Plaintiff has not – and cannot – cite any authority to support waiver of the privileges simply because Kettles took home work documents. Indeed, Plaintiff's contention means that the privileges are waived any time an attorney takes work home or works from a personal computer. The law of waiver of the attorney-client privilege does not operate in such prejudicial fashion. (*Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340 (9th Cir. 1996) ("The doctrine of waiver of the attorney-client privilege is rooted in notions of fundamental fairness"); *In re Pac Pictures Corp.*, 679 F.3d 1121, 1130 (9th Cir. 2012) (holding involuntary disclosures do not automatically waive the attorney-client privilege); *McCafferty's, Inc. v. The Bank of Glen Burnie*, 179 F.R.D. 163, 169-170 (D. Md. 1998) (holding memo sent by attorney to corporate employee was not inadvertently waived when employee tore up the memo and threw it in the trash can from which it was retrieved by a private investigator).) As the Ninth Circuit has noted, "the focal point of privilege waiver analysis should be the holder's disclosure of privileged communications to someone outside the attorney-client relationship[.]" (*Quiksilver, Inc. v. Kymsta Corp.*, 247 F.R.D. 579, 584 (C.D. Cal. 2007), *quoting Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 341 (9th Cir.1996).)

### a. On page 169

Q: "During this meeting that you had with Mr. Llewellyn where you were passing the torch with Mr. Currey and I forget her name.

A: "Julie Fox Blackshaw. And Mr. Currey may or may not have been there."

Q. "Was [Miller] discussed at that meeting?"

A: "If you were discussed, that would be protected by the attorney-client privilege, and I cannot reveal that."

Facts are not protected by privilege. *Upjohn Co. v. United States*, 449 U.S.

85

383, 404 (1981). Communications between the attorney and client are protected by privilege. Unlike the substance of a communication, fact that it took place is not protected by privilege.

This discussion also concerned the transitioning Mayor's Office administration. As a former managing officer of the City, Kettles retains no power to assert the privilege. *Weintraub at* 349. Members of the new administration, including Llewellyn, Currey, and Blackshaw, have the authority to assert the attorney-client privilege.

**Defendants' Position:**

Plaintiff's request to compel should be denied on the grounds that the requirements of Local Rule 37 have not been satisfied. Plaintiff fails to identify all contentions in support of his position compelling disclosure of attorney-client privileged communications with respect to this particular deposition excerpt. Because Plaintiff's contentions are scattered throughout his portion of the joint stipulation, Defendants cannot adequately respond to Plaintiff's position because they are unable to determine which of his multiple contentions in Section II of his portion of the joint statement apply to this particular deposition excerpt.

Judge Brian Currey served as Counsel to former Mayor Villaraigosa and Judge Julie Fox Blackshaw served as Deputy Counsel to former Mayor Villaraigosa. (Llewellyn Decl., ¶5.) Any discussions between Kettles, these individuals and Richard Llewellyn, who is currently Counsel to Mayor Garcetti, are protected from disclosure under the attorney-client privilege. As part of the transition from the Villaraigosa administration to the Garcetti administration, Kettles, Blackshaw, Currey and/or Llewellyn discussed numerous ongoing matters involving the Mayor's office that the Garcetti administration would inherit including conflict litigation. (Llewellyn Decl., ¶5.)

Conflict cases are complaints including lawsuits that the City Attorney's

86

office cannot handle due to a conflict of interest. The City enacted an ordinance to develop procedures for use of outside counsel in conflict cases, including the establishment of the Attorney Conflicts Panel, which is a group of private law firms that are jointly supervised by the Mayor's office and the City's Chief Administrative Officer. (Llewellyn Decl., ¶¶2-5.) The conflict cases that were transitioned from the Villaraigosa administration to the Garcetti administration included Plaintiff's complaints, subsequent lawsuit (to which City Attorneys Vivienne Swanigan, Zna Houston, and Janet Jackson were initially named as defendants) and the related state court lawsuits filed by Swanigan, Houston, and Jackson against Plaintiff and the City. (Llewellyn Decl., ¶5.) When conflict litigation arises, the CAO and Mayor's office step into the shoes of the City Attorney's office for purposes of managing and overseeing outside counsel retained to handle such matters.

Therefore, communications between Kettles, Blackshaw, Currey and/or Llewellyn that relate to transitioning the handling and oversight of conflict litigation is the equivalent of one set of attorneys briefing another set of attorneys inheriting the case from them. These communications are protected by the attorney-client privilege. (*See, e.g., Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 349 (1985) ("The parties also agree that when control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well").) Therefore, the assertion of the attorney-client privilege with respect discussions between these individuals was appropriate.

### 8. Kettles Improperly Refused to Produce a Privilege Log
#### *a. On page 176-179*

Q: "And what documents did you review on your hard drive that you

87

withheld or did not produce today?

A: "I'm not sure I understand the question."

Q: "Your drive has a bunch of documents on it; is that right?"

A: "Yes."

Q: "Some of which involve or are responsive to the request to produce that applies for today's deposition; is that right?"

A: "Yes"

Q: "And do you have documents that are responsive to the request to produce for today's deposition that you did not produce today?"

A: "Yes."

Q: "And what are those documents?"

A: "Those documents are protected by the attorney-client privilege and other privileges."

Q: "Involving [Miller]?"

A: "Well potentially responsive to your inspection demand."

Q: "Okay. Did you prepare a privileged log for these documents that you have not produced?"

A: "I did not."

Q: "Why not?

A: "My understanding is that third party witnesses are not required by law to produce a produce a privileged log of those documents withheld on the basis of privilege."

Q: "Who is the third party witness that's not required to do that?"

A: "That would be me."

Q: "What's the legal authority for that?"

Mr. Walter: "Objection, calls for a conclusion."

A: "My understanding is that the Code of Civil procedure does not require a

88

non-party to prepare a privileged log for documents withheld for production."

...

**Mr. Walter**: "And let me say for the record, and we already stated this earlier, we're going to provide a privileged log. So we will provide you with a privileged log for the withheld documents."

...

**Mr. Wagner**: "I'm just trying to clarify…But I'm assuming that you will take possession then of the hard drive for the purposes of preparing the privileged log? I'm just trying to figure out how that is going to happen, or whether you're relying on the witness to provide you documents that were not produced and give those to you for the privileged log."

**Mr. Walter**: "You know, I'm not at this time going to say how we're going to prepare the privileged log. We will prepare a proper privileged log and provide it."

Kettles refused to produce a privilege log, even though he is the person withholding the privileged documents.

The Supreme Court has held that attorney-client privilege applies to entities. *United States v. Louisville & Nashville R. Co.*, 236 U.S. 318, 336 (1915); *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981). The Supreme Court has said that "the power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors." *Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 348-49 (1985).

The City of Los Angeles is a municipal corporation, with its highest officers and directors the mayor and his counsel. As such, when Kettles, as counsel to the mayor, began taking home work product and emails to store on his computer, he waived the attorney-client privilege of the City of Los Angeles as to this work. As

89

an officer of the City of Los Angeles, he had the power to waive privilege, and he did with respect to the communications he stored on his personal hard drive. The contents of this hard drive should be disclosed, as unprivileged and discoverable by the Plaintiff.

Kettles, as counsel to the Mayor, was in a position to be both the source of attorney work product, and a holder of the privilege on behalf of the Mayor's Office and the City. Kettles took documents from the City and stored them on the hard drive, not so that he could work on them for the City, but in anticipation of the change in mayor's administration, which would resulted in his termination. He knew that his job with the City was ending, and therefore took documents home for his own purposes, and stored them on a personal hard drive, where they could be used by him when he was no longer representing the City.

The Defendants have failed to produce a privilege log for Kettles, and thus have failed to properly assert the attorney-client or work product privilege. To establish work product protection, the person or entity seeking to invoke work product immunity must show that (1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party. The party seeking to invoke work product immunity has the burden to establish all elements of the immunity and this burden can be met only by an evidentiary showing based on competent evidence. For the doctrine to apply, there must be a real and substantial probability that litigation will occur at the time the documents were created. See *High Point Sarl v. Sprint Nextel Corp.*, 2012 U.S. Dist. LEXIS 8435, 59, 2012 WL 234024 (D. Kan. Jan. 25, 2012). Kettles was an attorney for the Mayor's Office, but he has not asserted that the documents on the tangible hard drive was prepared in anticipation of litigation or for trial. He has not met the burden of proving that these documents are protected by attorney work

90

product privilege. General work product from Kettles and others within his office on this hard drive must be disclosed.

No privilege log has been produced for Kettles, and so the Defendants have failed to properly assert that the hard drive contains communications in which legal advice is sought and given. Kettles' hard drive, and its contents, must be disclosed, or a privilege log must be produced in order to fix this unfairness in discovery.

Plaintiff requests the court order Kettles to answer all questions addressed and provide a complete privilege logs.

**Defendants' Position:**

Plaintiff's request to compel should be denied on the grounds that the requirements of Local Rule 37 have not been satisfied.  Plaintiff fails to identify all contentions in support of his position compelling disclosure of attorney-client privileged communications with respect to this particular deposition excerpt. Because Plaintiff's contentions are scattered throughout his portion of the joint stipulation, Defendants cannot adequately respond to Plaintiff's position because they are unable to determine which of his multiple contentions in Section II of his portion of the joint statement apply to this particular deposition excerpt.

During his deposition, Kettles testified that while he was employed by the City, he made a copy of one of the drives at the City where he saved his work. Without citing any authority whatsoever, Plaintiff claims that this somehow constitutes a waiver of the attorney-client privilege.  This argument must be rejected.  At no time did Kettles waive the attorney-client or attorney work product privileges regarding documents stored on his home computer.  Where the client is an entity, the privilege belongs to and may be waived only by the entity and not individual employees. (*Weil v. Investment/Indicators, Research & Mgt., Inc.*, 647 F. 2d 18, 23 (9th Cir. 1981); *United States v. International Broth. of Teamsters,*

91

*Chauffeurs, Warehousemen & Helpers of America, AFL-CIO*, 119 F. 3d 210, 215 (2nd Cir. 1997); *In re Oracle Sec. Litig.*, 2005 WL 6768164, at *4 (N.D. Cal. 2005) *citing to United States v. Salsedo*, 607 F.2d 318, 320 (9th Cir.1979) ("[l]ike the attorney-client privilege, the holder of the work product privilege may waive it").)

Further, privileged communications that occur during the period of employment do not lose their protection when the employee leaves the client entity. (*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 658 F. 2d 1355, 1361, fn. 7 (9th Cir. 1981).)  The attorney-client privilege is absolute, and evidence protected by the privilege may not be ordered disclosed regardless of its relevance. (*See, Diversified Industries, Inc. v. Meredith*, 572 F. 2d 596, 602(8th Cir. 1977).)  Here, there is no evidence that either the City (or Kettles) ever disclosed privileged communications to anyone outside the attorney-client relationship, or that either of them intended to waive the privilege at any time.  Further, there is no evidence that Kettles did not take precautions to safeguard the documents from being viewed by persons outside the attorney-client relationship.  Plaintiff's waiver argument is unavailing.

More importantly, Plaintiff has not – and cannot – cite any authority to support waiver of the privileges simply because Kettles took home work documents.  Indeed, Plaintiff's contention means that the privileges are waived any time an attorney takes work home or works from a personal computer.  The law of waiver of the attorney-client privilege does not operate in such prejudicial fashion. (*Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340 (9th Cir. 1996) ("The doctrine of waiver of the attorney-client privilege is rooted in notions of fundamental fairness"); *In re Pac Pictures Corp.*, 679 F.3d 1121, 1130 (9th Cir. 2012) (holding involuntary disclosures do not automatically waive the attorney-

92

client privilege); *McCafferty's, Inc. v. The Bank of Glen Burnie*, 179 F.R.D. 163, 169-170 (D. Md. 1998) (holding memo sent by attorney to corporate employee was not inadvertently waived when employee tore up the memo and threw it in the trash can from which it was retrieved by a private investigator).) As the Ninth Circuit has noted, "the focal point of privilege waiver analysis should be the holder's disclosure of privileged communications to someone outside the attorney-client relationship[.]" (*Quiksilver, Inc. v. Kymsta Corp.*, 247 F.R.D. 579, 584 (C.D. Cal. 2007), *quoting Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 341 (9th Cir.1996).)

Finally, Defendants will agree to provide Plaintiff with a log regarding the privileged documents on Kettles' home computer, although no privilege log is required for third party deponents. FRCP Rule 26(b)(5)(A)(ii) only applies to a "party", and Kettles is not a party to this litigation. Plaintiff's other request – that Kettles answer "all questions addressed" is moot, as Kettles answered every question posed in the excerpt above.

## B. RAELYNN NAPPER DEPOSITION

Raelynn Napper is the manager of the EEO and Employee Development Manager of the City of Los Angeles Personnel Department. (All page numbers referenced in this section refer to the deposition transcript of Napper, See Decl. Mary E. Collins, ¶ 2, Exhibit B). Plaintiff's Counsel sought to come to a consensus on the disputes herein by meeting and conferring with counsel during the deposition as objections were raised.

Napper is an attorney, who works for the City as the Equal Employment Opportunity Coordinator. Much like a human resources director at a private company, Napper has duties of care to the entity she works for, but also receives questions and complaints from employees. She is another attorney who is employed by the City, but not engaged in exclusively attorney work. Many of her

93

opinions are relevant to the findings of fact, and many of her communications are unprivileged. Still, Defense Counsel has improperly asserted the attorney-client privilege at her depositions.

**1. The Attorney-Client Privilege was Improperly Raised for Napper's discussion With  Investigator Angela Reddock-Wright**

*a. On page 77-79:*

**Q:** "And who was her liaison with the city on [Angela Reddock-Wright's] investigation?"

**A:** "It was me."

**Q:** "Was anybody else liaising, managing, assisting her besides you?"

**A:** "Outside counsel."

**Q:** "Who was that?"

**A:** "Irma Rodriguez Moisa."

**Q:** "How is—I don't want you to tell me what the conversations were. I'm trying to get an idea of what Ms. Rodriguez was involved in doing in assisting with the investigation."

**Mr. Walter:** "I'd object to that to the extent that calls for attorney-client privileged communications. So if you can answer it without revealing— in a way that doesn't reveal attorney-client communications—

**Mr. Miller:** "Here is my concern and my issue is to the extent that Ms. Moisa is involved in this investigation, then I'm concerned about what knowledge she has about the investigation and whether she's assisting in performing and conducting the investigation, whether she was solely retained as a legal advisor to provide legal advice to somebody in the city as opposed to a legal advisor to Ms. Reddock.

I mean this seems to be—there seems to be a need to clear it up to try

94

to figure out what her involvement was, because in one capacity I completely agree that the attorney-client privilege would apply, but I could envision scenarios where she's a witness. So what is it?"

**Mr. Walter:** "Well, I mean that's really a question for the witness, but Ms. Moisa was not—was not an investigator. She was a legal advisor throughout this process. She did not do any interviews. She did not do any--"

**Mr. Miller:** "Who was she advising?  Let me ask the witness."

**Mr. Walter:** "Yes, why don't you ask the witness."

**Mr. Miller:** "I have to put Mr. Walter under oath here in a moment."

**Mr. Walter:** "That's not going to happen."

**Mr. Miller:** "Not today anyway."

**Mr. Walter:** "It's not going to happen."

**Q:** "Who was she advising?"

**A:** "The city."

**Q:** "She was advising solely and only the city?"

**A:** "Yes."

**Q:** "Was she providing legal advice of any type to Ms. Reddock?"

**A:** "No."

**Mr. Walter:** "Well, I'm going to belatedly object to that question as calling for a conclusion."

**Q:** "She sustained it. So—All right. So what happened in the next order of things as far as you can recall?"

**Mr. Walter:** "You know, let me just say before you get into this questioning, this will clear some things up for you. The city is taking the position that any communications Ms. Moisa had with either Ms. Reddock or Ms. Napper are privileged communications in her role as

95

counsel for the city. We're not taking that position with regards to any communications Ms. Reddock had with Ms. Napper."

**Mr. Miller:** "So, I just want to make sure, you're saying that in addition to any communications that Ms. Rodriguez had with the city, those are attorney-client?"

**Mr. Walter:** "Right."

**Mr. Miller:** "But in addition to that you're claiming the attorney-client privilege for any legal advice that she was providing to Ms. Reddock?"

**Mr.** Walter: "Yes."

**Defendant's Position:**

Plaintiff's request to compel should be denied on the grounds that the requirements of Local Rule 37 have not been satisfied. Plaintiff fails to identify all contentions in support of his position compelling disclosure of attorney-client privileged communications with respect to this particular deposition excerpt.

Plaintiff's request to compel a further response should also be denied because there is no pending question that requires further testimony from Napper. During her deposition, Plaintiff asked Napper to identify who the City's outside counsel Irma Rodriguez Moisa was advising in connection with Reddock's investigation, and if Moisa provided legal advice to Reddock. Napper answered these questions. Plaintiff then asked the question "So what happened in the next order of things as far as you can recall?" Before answering the question, the City's attorney stated its position that any communications Moisa had either with Napper or Reddock in connection with the investigation are protected by the attorney-client privilege. Plaintiff's counsel then withdrew the question by asking another question which Napper answered. (Napper Depo. at 79:6 – 80:6 attached as Exhibit 6 to the Walter Decl..) Therefore, there is no further testimony for Plaintiff

96

to compel.

Notwithstanding, communications between Moisa and Reddock and/or Napper are protected from disclosure by the attorney-client privilege. Napper is the Manager of the City's EEO and Employment Development Division of the Personnel Department. In or about September 2012, Janet Jackson, Zna Houston and Vivienne Swanigan made complaints of harassment and discrimination against Plaintiff, the City, the Mayor's Office and the City's Board of Fire Commissioners. (Walter Decl., ¶6.) The complainants are all attorneys and worked with Plaintiff as part of their job duties in the City Attorney's Office. The City retained Angela Reddock to investigate these complaints. Irma Rodriguez Moisa, who is outside counsel for the City and a partner at the law firm of Atkinson, Andelson, Loya, Ruud and Romo, served as the City's legal advisor during the investigation and communicated with Reddock about it. As clearly stated in the deposition excerpt, the City is not asserting the privilege as to discussions solely between Napper and Reddock. The City is only asserting privilege when those discussions included the City's outside legal counsel, Irma Rodriguez Moisa.

Even if an investigation report is produced during discovery, as it has been in this case, the attorney-client privilege is not waived as to communications between an investigator and the employer's attorney even if the employer asserts the investigative report as a defense in litigation. (*Kaiser Foundation Hospitals v. Superior Court*, 66 Cal.App.4th 1217, 1227 (1998).) Also, the attorney work product doctrine is not waived as to any notes, reports, and other information gathered during the investigation whose dominant purpose is to further the attorney-client relationship. (*Id.* at 1226-1227.) Contrary to Plaintiff's argument regarding "transparency", the disclosure of such privileged communications "is not essential for a thorough examination of the adequacy of the investigation or a fair

97

adjudication of the action." (*Id.* at 1227-1228) (reasoning the important policy of encouraging candor in the attorney-client relationship would be defeated if all privileged communications regarding employment investigations were ordered disclosed in every case where the adequacy of an employer's internal investigation is placed in issue, regardless of whether or not the investigation itself was performed by an attorney).)

Further, in *Walker v. County of Contra Costa*, 227 F.R.D. 529 (N.D. Cal. 2005), the Court held that mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation - even if the investigation is placed at issue - must be protected against the disclosure. (*Id.* at 536 citing to *Kaiser Foundation Hospitals v. Superior Court*, 66 Cal.App.4th 1217 (1998).) In addition, the Court held in *Walker* that any analysis by the employer's attorney of the investigation completed during the course of litigation is subject to the attorney-client and attorney work product privileges. (*Id.* at 535.) Therefore, discussions between the employer's attorney and the investigator regarding the investigation and investigation report that occur during litigation are privileged. (*Id.* at 535.)

### a. On page 111:

**Q:** "When you got the draft [of Angela Reddock's investigation report], did you make any suggested changes to it?"

**A:** "When we got one draft, yes."

**Q:** "What changes did you recommend?"

**Mr: Walter:** "Object to the extent that it included any discussions with the city's outside legal counsel on the matter. If you had independent discussions with Ms. Reddock, you can answer that."

**A:** "No, no independent discussions."

**Mr. Walter:** "Just to be clear, that objection is on attorney-client privileged

98

communication grounds."

Defense counsel used the privilege for communications with outside counsel regarding an independent investigation for which transparency was desirable. Reddock-Wright attested during her deposition that she was not an attorney, for the purposes of making this investigation. Her communications with Napper cannot be privileged, because no attorney-client relationship existed between them. No legal advice, pursuant would have been exchanged between them, because Napper did not represent Reddock-Wright, and Reddock-Wright was not employed with the City as an attorney, but as a layperson investigator. The fact that both Napper and Reddock-Wright have bar licenses does not automatically make their communications privileged.

**Defendants' Position:**

In this deposition excerpt, Plaintiff asks Napper if she recommended any changes to Reddock's draft investigation report. Napper answered this question. Plaintiff then asked Napper to describe the recommended changes. Defendants objected to this question on the grounds that the information sought is protected by the attorney-client privilege because the recommended changes were communicated during discussions with the City's outside legal counsel Irma Rodriguez Moisa. Plaintiff now seeks to compel Napper to respond to this question on the grounds that "transparency" warrants disclosure of this information. Plaintiff was provided with not only the complete investigative reports, but also Ms. Reddock's draft investigative report and other notes and documents relating to her investigation, and given a full opportunity to review those materials.

Plaintiff's request to compel the disclosure of any suggested changes to Reddock's draft investigation should be denied. Here, the recommended changes to the investigation report were discussed during a meeting involving Moisa,

99

Reddock and Napper. As discussed above, communications involving Moisa, Reddock and Napper are protected from disclosure by the attorney-client privilege. Even if an investigation report is at issue, as in this case, the attorney-client privilege is not waived as to communications between an investigator and the employer's attorney even if the employer asserts the investigative report as a defense in litigation. (*Kaiser Foundation Hospitals v. Superior Court*, 66 Cal.App.4th 1217, 1227 (1998).) Also, the attorney work product doctrine is not waived as to any notes, reports, and other information gathered during the investigation whose dominant purpose is to further the attorney-client relationship. (*Id.* at 1226-1227.) Contrary to Plaintiff's argument regarding "transparency", the disclosure of such privileged communications "is not essential for a thorough examination of the adequacy of the investigation or a fair adjudication of the action." (*Id.* at 1227-1228) (reasoning the important policy of encouraging candor in the attorney-client relationship would be defeated if all privileged communications regarding employment investigations were ordered disclosed in every case where the adequacy of an employer's internal investigation is placed in issue, regardless of whether or not the investigation itself was performed by an attorney).)

Further, in *Walker v. County of Contra Costa*, 227 F.R.D. 529 (N.D. Cal. 2005), the Court held that mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation even if the investigation is placed at issue must be protected against the disclosure. (*Id.* at 536 citing to *Kaiser Foundation Hospitals v. Superior Court*, 66 Cal.App.4th 1217 (1998).) In addition, the Court held in *Walker* that any analysis by the employer's attorney of the investigation completed during the course of litigation is subject to the attorney-client and attorney work product privileges. (*Id.* at 535.)

100

Therefore, discussions between the employer's attorney and the investigator regarding the investigation and investigation report that occur during litigation are privileged. (*Id.* at 535.)

## 2. Attorney-Client Privilege Was Improperly Raised For Napper's Personal, Non-Legal Opinion

### *a. On page 56, line 17:*

**Q:** "What's your experience with the city attorney and their legal advice?"

**Mr. Walter:** "Objection, to the extent it calls for attorney-client privileged communications, I instruct the witness not to—in fact I don't see how you can answer it without revealing attorney-client privileged communications."

Defense counsel has objected to Napper sharing her opinions as to the overall and specific quality of the City Attorney's work. This does not implicate or require Napper to share information protected by attorney-client privilege.

Raelynn Napper was asked in deposition to give her opinion of the quality of City Attorney services, and defense counsel objected on the basis of privilege. Napper is an attorney, although her role with the City is as an Equal Employment Opportunity coordinator. She was asked her personal, professional opinion of the City Attorney's ability to help others and provide advice. She was not herself asked legal advice.

In *Walker v. County of Contra Costa*, 227 F.R.D. 529, 536 (N. D. Cal. 2005), the court affirmed that a human resources report contained no attorney-client communications, since it was neither prepared by nor addressed to an attorney, but was prepared by the Human Resources Director for the Board of Supervisors, nor could it be characterized as opinion work product, because it contains no legal opinions, but was work product only to the extent that it was prepared at the request of County Counsel in anticipation of litigation.

101

Similarly, Napper has not been asked to prepare legal opinions as to the conduct of City Attorneys. Her work product has only been to address the allegations of discrimination brought against and by Miller. Her personal opinion of the quality of legal services provided by the City Attorneys, or their professional conduct, is not subject to any privilege, and should be disclosed.

**Defendants' Position:**

Plaintiff's request to compel a response to his question regarding Napper's experiences with the City Attorney must also be denied because this question cannot be answered without revealing attorney-client privileged communications. Regardless of whether Napper had positive or negative experiences with the City Attorney's office and its legal advice (assuming she has an opinion on this), her response will necessarily require her to reveal attorney-client privileged communications in order for her to explain the reasons for her satisfaction or dissatisfaction. Also, Napper would be required to disclose matters she and the City Attorney worked on which are also covered by the attorney-client and attorney work product privileges and irrelevant to this lawsuit. The question also seeks irrelevant information that is unrelated to the issues in this lawsuit. Thus, Plaintiff's request to compel disclosure of such communications must be denied.

The United States Supreme Court has made clear that corporations, partnerships, and other groups and entities, including government agencies, who retain the services of an attorney are "clients" protected by the attorney-client privilege. (*Upjohn Co. v. United States* (1981) 449 US 383, 390, 101 S. Ct. 677, 683 – corporation; *see Maricopa Audubon Soc. v. United States Forest Service* (9th Cir. 1997) 108 F. 3d 1089, 1092 (holding that a public entity can be a client); *see also Rein v. United States Patent & Trademark Office* (4th Cir. 2009) 553 F. 3d 353, 376 (same).) The privilege protects confidential communications between a

102

client and attorney for purposes of either obtaining or rendering legal assistance. (*Fisher v. United States*, 425 U.S. 391, 403 (1976).)  Furthermore, communications between a government employee and government attorney are privileged to the same extent as those between a corporate employee and corporate attorney. (*Galarza v. United States*, 179 FRD 291, 295 (SD CA 1998); *see also In re County of Erie*, 473 F. 3d 413, 419 (2nd Cir. 2007) ("At least in civil litigation between a government agency and private litigants, the government's claim to the protections of the attorney-client privilege is on par with the claim of an individual or a corporate entity.").)

Generally, the attorney-client privilege extends to any employee communicating on matters within the scope of his or her employment when that employee is aware that he or she is being questioned in confidence in order for his or employer to obtain legal advice. (*Upjohn Co. v. United States, supra*, 449 US at 391, 202 S. Ct. at 685).  The privilege also applies to communications from attorney to client as long as it is based, at least in part, upon a confidential communication from the client to the attorney. (*In re Sealed Case*, 737 F. 2d 94, 99 (DC Cir. 1984).)  Furthermore, the privilege extends to documents prepared by an attorney or at an attorney's request for the purpose of advising a client, if the documents are based on and would tend to reveal the client's confidential communications. (*United States v. National Ass'n of Realtors* (ND IL 2007) 242 FRD 491, 496).)

Further, to the extent Napper's opinions regarding her experiences with the City Attorney's work are not based on attorney-client communications, but are "personal, non-legal opinions" as characterized by Plaintiff, then Napper's opinions are speculative, irrelevant and inadmissible.  In other words, if Napper's opinions are only based on her feelings, and not on any personal involvement with

NOTICE OF MOTION AND LOCAL RULE 37-1 JOINT STIPULATION RE: PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSES TO DEMAND FOR DOCUMENTS, SET TWO AND REQUEST FOR AN ORDER FOR EVIDENTIARY SANCTIONS

the work performed by the City Attorney, then such opinions are not based on personal knowledge and are, therefore, improper lay opinion. (FRE Rule 701.) Plaintiff is also asking Napper to speculate on the quality of the City Attorney's work. This question is patently improper as it seeks to elicit a speculative legal opinion and this information is protected by the attorney client and work product privileges. (FRE Rule 702.)

### C. ANGELA REDDOCK-WRIGHT DEPOSITION

Reddock-Wright was the independent investigator hired by Napper for the City to review complaints of discrimination by Miller from three members of the City Attorney's Office named Houston, Jackson and Swanigan. Although Reddock-Wright is an attorney, she was not hired as an attorney, but as an investigator, to determine whether Miller had acted in a way which was prejudiced against three deputy City Attorneys. (All page numbers referenced herein correspond to the page numbers of the deposition transcript of Reddock-Wright, see Decl. Mary E. Collins, ¶ 3, Exhibit C). Plaintiff's Counsel sought to come to a consensus on the disputes herein by meeting and conferring with counsel during the deposition as objections were raised.

Defense Counsel continuously used the attorney-client privilege to prevent Reddock-Wright from answering questions during her deposition. Reddock-Wright is an attorney, with her own practice, but she also sometimes works as a non-attorney investigator. She said in her deposition that for the City she acted exclusively as an investigator, and could not give legal advice. (Decl. Mary E. Collins, ¶3, Exhibit C, pg. 157, ln. 11-24).

Reddock-Wright was not an attorney for the City of Los Angeles, because no attorney-client relationship was established between her and the entity. ABA Model Rule 1.6.Comment [2] states: "A fundamental principle in the client-lawyer relationship is that, in the absence of the client's informed consent, the

104

lawyer must not reveal information relating to the representation. … This contributes to the trust that is the hallmark of the client-lawyer relationship." The attorney-client privilege requires and is based upon the duties held under the attorney-client relationship. The City cannot claim that any communications or work product generated is covered by the privilege, because Reddock-Wright was retained as an investigator, not an attorney. Reddock-Wright also did not consider legal principles, or generate legal advice, when she made her investigation report to the City. She said in her deposition that she came to her conclusion that Miller was not a racist or sexist person through personal intuition, saying "I looked at you in your eyes. I spent several hours with you. I got a very strong sense of who you are, as a person and your background, and I decided you are not racist, in my opinion." (Decl. Mary E. Collins, ¶3, Exhibit C, pg. 146, ln. 16-19). Reddock-Wright refused to engage with legal principles, or give legal opinions, but made her investigation entirely as a non-attorney.

The purpose of Reddock-Wright's independent investigation is confounded if her impressions, communications and work product of the investigation are not disclosed. To withhold Reddock-Wright's investigation flies in the face of the Brown Act, which states in California Government Code 54950 "The people of this State do not yield their sovereignty to the agencies which serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created." Here Reddock was retained to investigate charges of racism and sexism committed by Miller, as well as charges of reverse racism which formed Miller's counterclaims. This investigation took place in the highest offices of local government in one of the largest cities in California. It would be fundamentally contrary to public policy to insist that Reddock-Wright's

105

investigation, communications, or work product were subject to attorney-client privilege. She was hired as an independent investigator, to find the true facts in a matter that involved accusations of bigotry in the highest offices of the City.

### 1. Reddock-Wright was Retained as an Investigator, Not as An Attorney, so Her Communications are Not Privileged

Reddock-Wright was retained as an investigator for charges of racism and sexism. She was not retained in her capacity as an attorney as an attorney, and was never an employee of the City of Los Angeles. Nevertheless, Defense Counsel has asserted the attorney-client privilege for many of her communications.

### a. On page 14-16

A: "It was in August. I don't know the exact date [of the investigation report] it was submitted in August."

Q: "Do you know what the changes were?"

A: "I just recall they were grammatical changes, and I was asked to clarify a couple of my findings."

Q: "Do you recall what those findings were that you were asked to clarify?"

A: "Not specifically. And those conversations were with Counsel for the City, so I think they might be privileged."

Ms. Safaei: "Objection. Now I'm going to assert objection on the attorney-client privilege."

Q: "Who, who was the Counsel for the City you were speaking with?"

A: "Irma Rodriguez Moisa."

Q: "And you were making clarifying changes to the findings at the request of the attorney representing the City?"

A: "Right. She just thought--"

Ms. Safaei: "Objection--"

A: "Yes, yes."

106

**Ms. Safaei:** "Objection. Same objection, attorney-client privilege communications."

**Q:** "Do you recall when it was that Ms. Moisa asked you to make the changes?"

**Ms. Safaei:** "Same objection."

**Q:** "Did you have any conversations with anybody at the City about making changes to the findings?"

**A:** "No."

**Q:** "Did you have any conversations with anybody at the City about making changes to the findings?"

**A:** "No."

**Q:** "And do you have any record of any type, any notes or E-mails of when it was you were asked to make these clarifying changes?"

**Ms. Safaei:** "Same objection. You are asking for communications between her and counsel."

**Q:** "What I'm asking for is if she has any note documenting the date that it occurred. Do you have any internal calendar, E-mails, do you have anything that would indicate when there was any discussion about making clarifying changes?"

**Ms. Safaei:** "And I would, I would assert that information is also privileged."

**Q:** "Documenting a date of when that conversation took place?"

**Ms. Safaei:** "That is right."

Reddock-Wright was not employed as an attorney, but as an investigator. Her communications, work and impressions, should not be subject to privilege.

**Defendants' Position:**

Plaintiff's request to compel should be denied on the grounds that the

107

requirements of Local Rule 37 have not been satisfied. Plaintiff fails to identify all contentions in support of his position compelling disclosure of attorney-client privileged communications with respect to this particular deposition excerpt. Because Plaintiff's contentions are scattered throughout his portion of the joint stipulation, Defendants cannot adequately respond to Plaintiff's position because they are unable to determine which of his multiple contentions in Section IV.C. of his portion of the joint statement apply to this particular deposition excerpt.

Notwithstanding, in this deposition except, Plaintiff asks Reddock to disclose information relating to changes to her draft investigation report that resulted from discussions with the City's outside counsel Irma Rodriguez Moisa. Plaintiff also asks Reddock to disclose when the discussions about making changes took place and if she had any written documentation or notes memorializing when those discussions occurred and what was discussed.

Plaintiff's request to compel Reddock to answer these questions over the City's objections should be denied. Communications involving Moisa and Reddock are protected from disclosure by the attorney-client privilege. Even if an investigation report is at issue, as in this case, the attorney-client privilege is not waived as to communications between an investigator and the employer's attorney even if the employer asserts the investigative report as a defense in litigation. (*Kaiser Foundation Hospitals v. Superior Court*, 66 Cal.App.4th 1217, 1227 (1998).) Also, the attorney work product doctrine is not waived as to any notes, reports, and other information gathered during the investigation whose dominant purpose is to further the attorney-client relationship. (*Id.* at 1226-1227.) The disclosure of such privileged communications "is not essential for a thorough examination of the adequacy of the investigation or a fair adjudication of the action." (*Id.* at 1227-1228) (reasoning the important policy of encouraging candor

108

in the attorney-client relationship would be defeated if all privileged communications regarding employment investigations were ordered disclosed in every case where the adequacy of an employer's internal investigation is placed in issue, regardless of whether or not the investigation itself was performed by an attorney).)

Further, in *Walker v. County of Contra Costa*, 227 F.R.D. 529 (N.D. Cal. 2005), the Court held that mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation even if the investigation is placed at issue must be protected against the disclosure. (*Id.* at 536 citing to *Kaiser Foundation Hospitals v. Superior Court*, 66 Cal.App.4th 1217 (1998).) In addition, the Court held in *Walker* that any analysis by the employer's attorney of the investigation completed during the course of litigation is subject to the attorney-client and attorney work product privileges. (*Id.* at 535.) Therefore, discussions between the employer's attorney and the investigator regarding the investigation and investigation report that occur during litigation are privileged. (*Id.* at 535.)

### *a. On page 32*

Q: "And so Mr. Wagner has kindly reminded me, when you have—when the attorney from Liebert Cassidy has advised not to answer the question, or has raised the attorney-client privilege, on each of those occasions, are you taking the advice of the attorneys form Liebert Cassidy to not answer the questions?"

A: "Yes."

Q: "And you are depending on their advice to not answer the questions; is that right? Are you exercising independent judgment in refusing to answer the questions?"

A: "Well I'm taking their advice. But I also, you know, have a certain

109

standard that I abide by as an investigator. And so I believe that that's the right position, the attorney-client privilege as to those particular questions."

Reddock-Wright has claimed that her communications as an investigator were privileged, without having a legal basis for this opinion.

**Defendants' Position:**

Plaintiff's request to compel should be denied as to this excerpt from Reddock's deposition because there is no pending question that requires further testimony from Reddock. Rather, it appears Plaintiff cites to this excerpt because he disagrees with Reddock and the City's position that their communications with one another are subject to the attorney-client privilege. Defendants' grounds for asserting privilege are more fully explained in the prior section regarding Reddock's testimony on pages 14-16.

### a. On page 157-158:

**Q:** "Well, whether it's the City of Los Angeles, or anybody else, would you advise a public or private employer to delay investigating an EEO complaint?"

**Ms. Safaei:** "Objection, argumentative. Calls for a legal conclusion."

**A:** "Yeah. And I really feel uncomfortable asking (sic) that question because I'm not acting in a capacity as an attorney, and what I would advise a client to do as an attorney. My role was as an investigator here. You want to ask me what I did in my investigation that is what I'm here for. But to speculate on what the City did or did not do or how they did it is not my role. And to give you insight on what I would advise a client to do, under an attorney-client privilege relationship, I feel really crosses the line, particularly because that was not my role here."

Reddock-Wright was retained as an investigator, not as an attorney, by the

110

City. She does not have an attorney-client relationship with the City, and therefore her advice would not fall under attorney-client privilege. Still, she declines to answer questions based on the fact that communications may have been privilege if she had been retained as an attorney, and not an investigator.

Reddock-Wright made it clear, in her deposition, that although she is a practicing attorney, she was not hired by the City of Los Angeles as counsel but as an investigator. Attorney-client privilege applies to communications made within the scope of an attorney-client relationship, and with Reddock-Wright there was no such relationship. Her communications relating to her investigation should be disclosed, because they are not subject to any privilege.

In the Ninth Circuit, clients have been found to have waived attorney client privilege and work product protection when they asserted the County's internal pre-litigation investigation as an affirmative defense. *Walker v. County of Contra Costa*, 227 F.R.D. 529, 537,2005 U.S. Dist. LEXIS 13055, 24-25(N.D. Cal.2005). The investigation was made in anticipation of litigation by Houston, Jackson, Swanigan, and Miller. The investigation is evidence of the City's efforts to address claims of discrimination, an affirmative defense to Municipal liability. Reddock-Wright's communications and impressions, therefore, should be disclosed.

Reddock-Wright had no privileged attorney-client relationship with the City, because she was employed exclusively as an investigator. In a recent D.C. circuit case for the U.S. Court of Appeals, the court held that, at the corporate level, communications and materials created during a company's confidential internal investigation are protected by the attorney-client privilege where "one of the significant purposes" of the investigation is to obtain or provide legal advice. *In re Kellogg Brown & Root*, 2014 WL 2895939, at *3 (D.C. Cir. June 27, 2014).

While the City of Los Angeles is a public entity, not a corporation, the applicability from one entity to another in the way that workplace investigations

111

may be conducted by external lawyer/investigators like Reddock-Wright. Although Reddock-Wright has her own law practice, she did not provide any legal advice, nor did she intend to with her investigation.

On page 146, lines 16-19, Reddock-Wright explained how she came to a conclusion in her investigation:

"I looked at you in your eyes. I spent several hours with you. I got a very strong sense of who you are, as a person and your background, and I decide you are not racist, in my opinion."

Reddock-Wright was only retained to investigate whether Miller was racist. This did not require Reddock-Wright to give legal advice. She gave her opinions based on her own intuition and experience as an African-American woman.

She did not give legal conclusions in her report. When asked whether Miller had legal authority to file a State Bar complaint, Reddock-Wright responded that "I did not make a finding on it." (Decl. of Mary E. Collins, Exh.____,Reddock-Wright Deposition Transcript, 53:2).

As an external investigator for a City Government, public policy provides a compelling reason for exposing communications and work product generated by Reddock-Wright. Even if she was acting as an attorney, Reddock-Wright's investigation would not be subject to privilege.  The Ninth Circuit has opined that "because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Weil v. Investment/Indicators, Research & Mgmt., Inc.,* 647 F.2d 18, 24, (9th Cir. Cal. 1981). Rule 502(d)(6) of the Federal Rules of Evidence says that public entities may not claim attorney-client privilege unless the "communication concerns a pending investigation, claim, or action and the court determines that disclosure  will seriously impair the ability of the public officer or agency to process the claim or conduct a pending investigation, litigation, or proceeding in the public interest." Reddock-Wright's investigation is not pending,

112

because it was completed before Miller's termination. There can be no reason in the public interest that the communications she had with city attorneys should not be disclosed.

During the Clinton Whitewater Investigation, President Clinton tried to use the attorney-client privilege to block the discovery of communications during a grand jury investigation. *In re Grand Jury Subpoena Duces Tecum*, 112 F. 3d 910 (8th Cir. 1997); *In re Bruce R. Lindsey,* 158 F. 3d 1263 (D.C. Cir. 1998). While these investigations involved criminal charges, rather than civil claims, the Eighth Circuit noted "the general principle that the government's need for confidentiality may be subordinated to the needs of the government's own criminal justice processes." *Subpoena Duces Tecum* at 913. The court further opined that "to allow any part of the federal government to use its in-house attorney's as a shield against the production of information relevant to a federal criminal investigation would represent a gross misuse of public assets." *Id.* at 921. Although not a criminal investigation, Reddock-Wright's findings on allegations of illegal discrimination are highly relevant to this matter and should be disclosed in the interests of public policy.

**Defendants' Position:**

Plaintiff's request to compel should be denied on the grounds that the requirements of Local Rule 37 have not been satisfied. Plaintiff fails to identify all contentions in support of his position compelling disclosure of attorney-client privileged communications with respect to this particular deposition excerpt. Because Plaintiff's contentions are scattered throughout his portion of the joint stipulation, Defendants cannot adequately respond to Plaintiff's position because they are unable to determine which of his multiple contentions in Section IV.C. of his portion of the joint statement apply to this particular deposition excerpt.

Reddock attempted to answer Plaintiff's question. Plaintiff asked Reddock

113

to speculate on what legal advice she would give to a public or private client regarding investigation of an EEO complaint. This question is patently improper as it seeks to elicit a speculative legal opinion and conclusion. (FRE Rule 702.) In addition, the information Plaintiff seeks in asking this question is irrelevant to the claims at issue in this case. (FRE Rules 401, 402 and 403.)

Finally, most of Plaintiff's contentions regarding applicability of the attorney-client privilege to Reddock do not appear to apply to the information sought by the deposition excerpt.

### 2. Reddock-Wright Had No Attorney-Client Relationship with the City's Outside Counsel, So Any Privilege Objections Are Improper

#### a. On page 19-20

**Q:** "Without disclosing the conversations that you had with Ms. Moisa, how was it that you had any conversation with Ms. Moisa about your report?"

**Ms. Safaei:** "Objection, attorney-client privilege. That, that's inquiring into attorney-client privilege communications. It's also a vague question."

**Q:** "I haven't, I haven't asked anything about what they said, I'm just asking—Did you contact Ms. Moisa yourself?"

**Ms. Safaei:** "Objection. I'm going to instruct the witness not to testify on that."

**Q:** "Were you instructed by anybody to contact Ms. Moisa?"

**Ms. Safaei:** "Vague. Anybody, are you talking about people from the City?"

**Q:** "I don't care who it is."

**Ms. Safaei:** "You can testify--"

**Q:** "It could be the plumber down the street."

**A:** "No."

Defense counsel asserted the attorney-client privilege where the relationship

114

did not exist. As established, Reddock-Wright was not employed in her capacity as an attorney, but as a contract investigator for the City. She and Moisa had no attorney-client relationship with each other.

**Defendants' Position:**

Plaintiff's request to compel should be denied because there is no pending question that requires further testimony from Reddock. Plaintiff asked Reddock if she contacted the City's outside counsel Irma Rodriguez Moisa herself. Reddock responded "No". Because she responded to Plaintiff's question, there is nothing further to compel here.

### a. On page 29

**Q:** "All right. What did you talk about in the first conversation [with Liebert, Cassidy attorneys]?"

**Ms. Safaei:** "Objection, it's attorney-client privilege."

Defense counsel asserted the attorney-client privilege for communications with Reddock-Wright, even though no attorney-client relationship exists between them. The Supreme Court has opined that the purpose of the attorney-client privilege "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Reddock-Wright is not a client of Defense Counsel. She is a witness for this matter. There is no basis for either Reddock-Wright or Defense Counsel to raise the privilege for their communications.

**Defendants' Position:**

Plaintiff's request to compel should be denied on the grounds that the requirements of Local Rule 37 have not been satisfied. Plaintiff fails to identify all contentions in support of his position compelling disclosure of attorney-client privileged communications with respect to this particular deposition excerpt.

115

Because Plaintiff's contentions are scattered throughout his portion of the joint stipulation, Defendants cannot adequately respond to Plaintiff's position because they are unable to determine which of his multiple contentions in Section IV.C. of his portion of the joint statement apply to this particular deposition excerpt.

Plaintiff's request to compel testimony from Reddock regarding her discussions with the City's outside counsel Liebert Cassidy Whitmore ("LCW") should also be denied because their communications with one another are still covered by the attorney-client privilege *between LCW and the City*. Reddock was acting as an agent for the City in conducting the investigation. The attorney-client privilege applies to communications between attorneys for an entity and the entity's agents. (*In re Bieter Co.*, 16 F.3d 929, 936 (8th Cir. 1994) *citing to McCaugherty v. Siffermann*, 132 F.R.D. 234, 239 (N.D.Cal.1990) (holding under the Supreme Court's analysis in *Upjohn*, the privilege would apply to communications between two independent consultants hired by the client and the client's lawyers just as it would apply to communications between the client's employees and its lawyers).)

Even if an investigation report is at issue, as in this case, the attorney-client privilege is not waived as to communications between an investigator and the employer's attorney even if the employer asserts the investigative report as a defense in litigation. (*Kaiser Foundation Hospitals v. Superior Court*, 66 Cal.App.4th 1217, 1227 (1998).) Also, the attorney work product doctrine is not waived as to any notes, reports, and other information gathered during the investigation whose dominant purpose is to further the attorney-client relationship. (*Id.* at 1226-1227.) The disclosure of such privileged communications "is not essential for a thorough examination of the adequacy of the investigation or a fair adjudication of the action." (*Id.* at 1227-1228) (reasoning the important policy of

116

encouraging candor in the attorney-client relationship would be defeated if all privileged communications regarding employment investigations were ordered disclosed in every case where the adequacy of an employer's internal investigation is placed in issue, regardless of whether or not the investigation itself was performed by an attorney).)

Further, in *Walker v. County of Contra Costa*, 227 F.R.D. 529 (N.D. Cal. 2005), the Court held that mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation even if the investigation is placed at issue must be protected from disclosure. (*Id.* at 536 citing to *Kaiser Foundation Hospitals v. Superior Court*, 66 Cal.App.4th 1217 (1998).) In addition, the Court held in *Walker* that any analysis by the employer's attorney of the investigation completed during the course of litigation is subject to the attorney-client and attorney work product privileges. (*Id.* at 535.) Therefore, discussions between the employer's attorney and the investigator regarding the investigation and investigation report that occur during litigation are privileged. (*Id.* at 535.)

### a. On page 35-36

A: "In the second box, I have a red well that has all of my notes from the investigation."

Q: "Okay. And when you say "notes," are, would those include notes taken during interviews and phone conversations, and any note whatsoever during any aspect of the investigation?"

A: "Minus the notes that are privileged of conversations with attorney--- with outside counsel for the City."

Q: "Let me just, so you do have some written notes for those conversations with the private attorneys that represent the City; is that right?"

A: "Yes. I just can't remember how many or---it's not a lot, if I do. I just

117

can't remember how many."

Q: "Do you have a privilege log for the notes that, that you are not producing but have?"

A: "No, I do not."

Q: "Can we get a privilege log?"

Ms. Safaei: "You know what, I, I don't think she's under a duty to produce a privilege log, she's not a party to the action."

Mr. Miller: "I would agree she's not a party to the action. But she's not producing some—what you are saying are privileged documents. And so I'm not sure why there wouldn't be a privilege log."

Ms. Safaei: "On behalf of the deponent, she is not under an obligation to produce. The City will produce a privilege log."

At this time, no privilege log has been produced for Ms. Reddock-Wright and there is no basis for any privilege to exist to Ms. Reddick-Wright as a hired investigator by Ms. Napper. No attorney-client relationship exists between Reddock-Wright and Defense Counsel. There is no reason why Reddock-Wright, who is in control of her own documents, should not be required to create a privilege log.

**Defendants' Position:**

Plaintiff's request to compel should be denied as to this excerpt from Reddock's deposition because there is no pending question that requires further testimony from Reddock. Notwithstanding, a privilege log was provided with respect to documents produced by the City that relate to Reddock. (See Ex. 8 to Walter Decl.) With respect to documents in Reddock's possession that contain attorney-client privileged communications, the City never agreed to provide a privilege log for those documents nor is Reddock required to produce a privilege log regarding them because she is not a party to the action. (See FRCP Rule

118

26(b)(5)(A)(ii).)Notwithstanding, Plaintiff's request to compel testimony from Reddock regarding her discussions with the City's outside counsel Liebert Cassidy Whitmore ("LCW") should also be denied because their communications with one another are still covered by the attorney-client privilege *between LCW and the City.* Reddock was acting as an agent for the City in conducting the investigation. The attorney-client privilege applies to communications between attorneys for an entity and the entity's agents. (*In re Bieter Co.*, 16 F.3d 929, 936 (8th Cir. 1994) *citing to McCaugherty v. Siffermann*, 132 F.R.D. 234, 239 (N.D.Cal.1990) (holding under the Supreme Court's analysis in *Upjohn*, the privilege would apply to communications between two independent consultants hired by the client and the client's lawyers just as it would apply to communications between the client's employees and its lawyers).)

Even if an investigation report is at issue, as in this case, the attorney-client privilege is not waived as to communications between an investigator and the employer's attorney even if the employer asserts the investigative report as a defense in litigation. (*Kaiser Foundation Hospitals v. Superior Court*, 66 Cal.App.4th 1217, 1227 (1998).) Also, the attorney work product doctrine is not waived as to any notes, reports, and other information gathered during the investigation whose dominant purpose is to further the attorney-client relationship. (*Id.* at 1226-1227.) The disclosure of such privileged communications "is not essential for a thorough examination of the adequacy of the investigation or a fair adjudication of the action." (*Id.* at 1227-1228) (reasoning the important policy of encouraging candor in the attorney-client relationship would be defeated if all privileged communications regarding employment investigations were ordered disclosed in every case where the adequacy of an employer's internal investigation is placed in issue, regardless of whether or not the investigation itself was

119

performed by an attorney).)

Further, in *Walker v. County of Contra Costa*, 227 F.R.D. 529 (N.D. Cal. 2005), the Court held that mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation even if the investigation is placed at issue must be protected from disclosure. (*Id.* at 536 citing to *Kaiser Foundation Hospitals v. Superior Court*, 66 Cal.App.4th 1217 (1998).) In addition, the Court held in *Walker* that any analysis by the employer's attorney of the investigation completed during the course of litigation is subject to the attorney-client and attorney work product privileges. (*Id.* at 535.) Therefore, discussions between the employer's attorney and the investigator regarding the investigation and investigation report that occur during litigation are privileged. (*Id.* at 535.)

### a. On page 37

Q: "Can, can you describe for us or list, at least describe or list everything that you are not producing today?"

A: "I think that crosses into the privilege, but I would say it would be correspondence or notes with outside counsel for the City."

Q: "Okay. You don't have a list or--"

A: "Not with me."

Q: "—something I can—okay, so you – and you don't—so you don't have a list with you of those things you are not producing?"

A: "No."

Q: "And do you have a memory that you could, form memory list the items that you are not producing?"

A: "Just generally note, handwritten notes or E-mail correspondence with outside counsel for the City. And when I say outside counsel, it would either be Ms. Irma Rodriguez Moisa or the two attorneys form Liebert

120

Cassidy."

Reddock has refused to describe the reason for the privilege.

**Defendants' Position:**

Plaintiff's request to compel should be denied as to this excerpt from Reddock's deposition because there is no pending question that requires further testimony from Reddock. Reddock answered all questions asked of her in this deposition excerpt. Rather, it appears Plaintiff cites to this excerpt to support his position that the communications between Reddock and the City's outside counsel Irma Rodriguez Moisa and attorneys from Liebert Cassidy Whitmore are not privileged. There is nothing further to compel here

*a. On page 141-142:*

Q: "And you were just shown a note from your attorney. What does the note say?"

Ms. Safaei: "Objection. Privileged."

Q: "On the attorney-client privilege?"

Ms. Safaei: "That's right."

Q: "Are you going to refuse to answer the question?"

A: "You don't, you don't know what that said. It had—so ask me a question and I will –

Q: "No, I'm--"

A: "--will continue as we have already done."

Q: "This is something to do with the meet-and-confer process, but--"

A: "Am I – sorry. What's the question?"

Q: "She showed you a note. I asked what the note said. She raised the attorney-client privilege."

A: "Right."

Q: "And I'm just asking you, are you refusing to answer the question, what

121

the note says, based on your, on the attorney's advice?"

A: "Yes."

Q: "Okay. And she is not your attorney, is she? Did you ever retain the attorneys from Liebert Cassidy and Whitmore to represent you?"

A: "No. But as an investigator for the, that was retained by the City of Los Angeles, I'm held to the same privilege of when I'm talking to the city's attorneys as what applies if they were my own attorneys."

Q: "And did you retain the law firm from, that Ms. Moisa is with?"

A: "No."

Again, a privilege has been asserted between Reddock-Wright and the City's outside counsel, despite no attorney-client relationship.

## Defendants' Position:

Plaintiff's request to compel should be denied as to this excerpt from Reddock's deposition because there is no pending question that requires further testimony from Reddock. Reddock answered all questions asked of her in this deposition excerpt. Additionally, the only "privileged" item discussed in the deposition excerpt was a note passed from Ms. Safaei to Reddock. Plaintiff failed to disclose that, a few minutes later during the deposition, Ms. Safaei disclosed the note to Plaintiff Miller (who was taking the deposition):

Ms. Safaei: Thank you. I just wanted to go ahead and show you the noted that you had asked for that we had claimed privilege on. This is what it is (indicating).

Mr. Miller: "Oh, 'Give me a quick second to object. His questions are very objectionable.'"

BY MR. MILLER:

Q. "Okay. If you could follow your attorney's advice. It'd be helpful to the courter reporter, that is why we had to take a break." (See excerpt from

122

Reddock-Wright Depo. attached as Ex. 11 to Walter Decl.)

Thus, there is nothing further to compel in regards to the excerpt cited by Plaintiff.

### 3. The Mere Presence of Attorneys Does Not Trigger the Privilege

#### a. On page 23

Q: "Okay. And in what, what dates did you have a conversation with Ms. Moisa?"

A: "I believe the first conversation was around March or April of 2013. And that is the date that Mr. Curry was present. That would have been the same day that Mr. Curry was there."

Q: "Was anybody else present besides the three of you that you just mentioned?"

A: "I believe Mr. Kettles, Greg Kettles may have been there. Eileen—no. Greg, Greg Kettles, and I believe Julie Blackshaw or Bradshaw, who was also counsel to the mayor at the time."

Q: "And do you have any notes of that conversation anywhere?"

A: "No."

Q: "Do you have any memory of that conversation?"

A: "I do."

Q: "And what was the sum and substance of the conversation?"

Ms. Safaei: "Objection, attorney-client privilege."

Defense counsel, Ms. Safaei, once again asserted communications were privileged based on the mere presence of counsel. The fact that attorneys were present during a conversation does not establish that a privileged conversation took place. In fact, the "presence of third persons who are not essential to the transmittal of information will belie the necessary element of confidentiality and vitiate the

123

privilege." *Hearn v. Rhay*, 68 F.R.D. 574, 579, (1975). The attorney-client privilege may be waived if the communication takes place in front of third parties. *See In re Grand Jury Proceedings*, 220 Cal. Rptr. 507, 512 (Cal. Ct. App. 1985). The fact that Reddock-Wright did not remember who was present at the meeting is a telling indication that she did not intend the conversation to be confidential and privileged.

**Defendants' Position:**

Plaintiff's request to compel should be denied on the grounds that the requirements of Local Rule 37 have not been satisfied. Plaintiff fails to identify all contentions in support of his position compelling disclosure of attorney-client privileged communications with respect to this particular deposition excerpt. Because Plaintiff's contentions are scattered throughout his portion of the joint stipulation, Defendants cannot adequately respond to Plaintiff's position because they are unable to determine which of his multiple contentions in Section IV.C. of his portion of the joint statement apply to this particular deposition excerpt.

Further, Plaintiff seeks to compel Reddock to testify what was said during a discussion between her, the City's outside counsel Irma Rodriguez Moisa and the Mayor's legal counsel Gregg Kettles and Judge Julie Fox Blackshaw regarding her investigation. Plaintiff appears to contend without explanation that this discussion is not subject to the attorney-client privilege. Plaintiff's position is incorrect and his request to compel Reddock to testify about her discussion with Moisa, Kettles and Blackshaw should be denied.

This communication is protected from disclosure by the attorney-client privilege. In or about September 2012, Janet Jackson, Zna Houston and Vivienne Swanigan made complaints of harassment and discrimination against Plaintiff, the City, the Mayor's Office and the City's Board of Fire Commissioners. (Walter

124

Decl., ¶6.) Reddock was retained by the City's Personnel Department to investigate these complaints on behalf of the City, the Mayor's Office and the City's Board of Fire Commissioners. Consequently, any discussions between attorneys of the Mayor's Office (Kettles and Blackshaw), outside counsel for the City (Moisa), and Reddock regarding her investigation are privileged. Even if an investigation report is at issue, as in this case, the attorney-client privilege is not waived as to communications between an investigator and the employer's attorney even if the employer asserts the investigative report as a defense in litigation. (*Kaiser Foundation Hospitals v. Superior Court*, 66 Cal.App.4th 1217, 1227 (1998).)

Also, the attorney work product doctrine is not waived as to any notes, reports, and other information gathered during the investigation whose dominant purpose is to further the attorney-client relationship. (*Id.* at 1226-1227.) The disclosure of such privileged communications "is not essential for a thorough examination of the adequacy of the investigation or a fair adjudication of the action." (*Id.* at 1227-1228) (reasoning the important policy of encouraging candor in the attorney-client relationship would be defeated if all privileged communications regarding employment investigations were ordered disclosed in every case where the adequacy of an employer's internal investigation is placed in issue, regardless of whether or not the investigation itself was performed by an attorney).) Further, in *Walker v. County of Contra Costa*, 227 F.R.D. 529 (N.D. Cal. 2005), the Court held that mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation even if the investigation is placed at issue must be protected from disclosure. (*Id.* at 536 citing to *Kaiser Foundation Hospitals v. Superior Court*, 66 Cal.App.4th 1217 (1998).) In addition, the Court held in *Walker* that any analysis by the

125

employer's attorney of the investigation completed during the course of litigation is subject to the attorney-client and attorney work product privileges. (*Id.* at 535.) Therefore, discussions between the employer's attorney and the investigator regarding the investigation and investigation report that occur during litigation are privileged. (*Id.* at 535.)

### D. DELIA IBARRA DEPOSITION

Ibarra is a party to this action. She is a defendant Fire Commissioner, who voted to have Miller terminated. (All page numbers in this section reference those contained in Ibarra's deposition transcript, see Decl. Mary E. Collins, ¶ 4, Exhibit D).

### 1. Plaintiff's Counsel Sought to Come to a Consensus on the Disputes Herein by Meeting and Conferring With Counsel During the Deposition as Objections Were Raised

#### a. On page 74

**Q:** "Did anybody advise you that you did not have the authority to go into closed session?"

**A:** "I think that's privileged. I'm not going to—because any such advice would be from city attorney."

**Q:** "Okay. Well, if you were advised you could not go into closed session, I presume you would not go into closed session. Is that fair?"

**Mr. Walter:** "Objection; calls for speculation."

**A:** "I—I usually follow city attorney's advice, but I don't have to. That's— that's the—that's my best response to that."

Delia Ibarra is a defendant, who has with her co-defendants asserted the defense of qualified immunity. However, she cannot assert qualified immunity and then assert the attorney-client privilege. In *Hearn v. Rhay*, 68 F.R.D. 574, 583 (E.D. Wash. 1975), the court found that by asserting their qualified immunity as an

126

affirmative defense, public official defendants "impliedly waived the right to assert the attorney-client privilege with respect to any legal advice or confidential communications with the Washington Attorney General that relate to the issues of malice toward plaintiff or knowledge of plaintiff's constitutional rights."

Further, the court found that, the policy behind the attorney-client privilege was "outweighed by the necessity of disclosure" where the attorney's conduct and communications were at issue in the suit. *Id.* See also *Seaman v. Sedgwick, LLP,* 2014 U.S. Dist. LEXIS 104098, 5, 2014 WL 3738055 (C.D. Cal. July 28, 2014), quoting *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995) ("[A]n implied waiver of the attorney-client privilege occurs when (1) the party asserts the privilege as a result of some affirmative act, such as filing suit; (2) through this affirmative act, the asserting party puts the privileged information at issue; and (3) allowing the privilege would deny the opposing party access to information vital to its defense").

Ibarra, along with the rest of the Defendants, cannot claim an attorney-client privilege because she has asserted the defense of qualified immunity and have maintained that they have followed the advice of attorneys in good faith, and this advice is at the center of this suit. City Defendants who have raised the defense of qualified immunity have no privilege for the communications made by legal counsel for the City.

A government official waives his attorney-client privilege by raising the defense of qualified immunity since a good faith reliance on the advice of counsel is an element of the defense. See *Hearn v. Rhay*, 68 F.R.D. 574, 580 (1975), ("this court is compelled to recognize a new and narrowly limited exception to the attorney-client privilege, which applies to civil rights suits against state officials under 42 U.S.C. § 1983, wherein the defendant asserts the affirmative defense of good faith immunity.") Defendants cannot claim immunity for actions taken based

127

on City Attorney advice, and then fail to disclose the substance of the advice. The privilege should be waived and the defendant individuals should be compelled to disclose communications with City legal counsel.

The City Attorney's communications to Ibarra and other defendants is not privileged, because these communications are central to the claims at hand. According to the "At Issue" Waiver Doctrine, attorney-client privilege is waived when the advice and communications of counsel are placed in issue for the purpose of a legal action. The Attorney-client privilege is waived if "the lawyer's performance [is put] at issue during the course of litigation." *Bittaker v. Woodford*, 331 F.3d 715, 718 (9th Cir. 2003) (en banc). "Under the "at issue" doctrine, where a party places legal advice or other privileged facts or communication at issue, it is deemed to have waived the privilege with respect to such facts or communications and can be compelled to produce them." *Am. Re-Ins. Co. v. U.S. Fid. & Guar. Co.*, 837 N.Y.S.2d 616, 622 (App. Div. 1st Dept. 2007).

The actions and advice of the city attorneys has been placed in issue because defendants have presumably relied on the advice of City Attorneys, who had a retaliatory motive against Miller, to carry out the adverse employment actions which Miller suffered. Defendants like Ibarra cannot say that they relied on the advice of counsel and then fail to reveal what that advice was which precipitated the harm. The actions of the City Attorney, as counselors of the City, have been placed squarely in issue, with the retaliation stemming from Miller's speech criticizing that city office. Communications of the City Attorney and Mayor's Office Counsel should therefore be disclosed.

**Defendants' Position:**

Plaintiff's motion to compel Defendant Delia Ibarra to disclose information about whether anyone "advise[d]" her about the Fire Commission's authority to go into closed session should be denied.  Ibarra is one of the five current Fire

128

Commissioners for the City and she was involved in the decision to terminate Plaintiff's employment as Independent Assessor. This decision was made during a closed session Fire Commission meeting that took place October 15, 2013.

### 1) The Information Sought Is Protected by the Attorney-Client Privilege

Any legal advice Ibarra and the other Fire Commissioners received from the City Attorney's office is subject to the attorney-client privilege. Section 271(b) of the City Charter provides: "The City Attorney shall be the legal advisor to the City, and to all City boards, departments, officers and entities." (See Ex. 2 to Defendants Request for Judicial Notice.) Section 200 of the City Charter states "officers" of the City include the Mayor, members of the City Council and members of the boards or commissions of the departments and the chief administrative officer of each department and office. (See Ex. 1 to Defendants Request for Judicial Notice.) Consequently, advice received by Ibarra and the other Fire Commissioners from the City Attorney is protected from disclosure by the attorney-client privilege.

In addition, any legal advice Ibarra and the other Fire Commissioners received from the Mayor's legal counsel is subject to the attorney-client privilege. The Fire Commissioners are appointed by the Mayor and confirmed by the City Council. The purpose of the Fire Commission is to establish goals and provide direction to the Fire Department through the Fire Chief. Section 502 of the City Charter gives the Mayor the power the appoint and remove Fire Commissioners, Section 506 which states general rules adopted by the Fire Commissioners as the head of the Fire Department are subject to the Mayor's approval, and Admin. Code, §3.3 states "[i]t shall be the duty of the Mayor … to exercise a constant supervision over the acts and conduct of all officers and employees; to receive and

129

examine into all complaints made against them for violation or neglect of duty, and certify the same to the Council or proper board, and to secure cooperation between the various departments and offices of the City." Because the Mayor is responsible for the conduct of the Fire Commission, the Mayor's Counsel works closely with the Fire Commissioners. The Fire Commission may also seek legal advice from the City Attorney's Office regarding issues. (Llewellyn Decl., ¶6.)

Corporations, partnerships, and other groups and entities, including government agencies, who retain the services of an attorney are "clients" protected by the attorney-client privilege. (*Upjohn Co. v. United States* (1981) 449 US 383, 390, 101 S. Ct. 677, 683 – corporation; *see Maricopa Audubon Soc. v. United States Forest Service,* 108 F. 3d 1089, 1092 (9th Cir. 1997) (holding that a public entity can be a client); *see also Rein v. United States Patent & Trademark Office* (4th Cir. 2009) 553 F. 3d 353, 376 (same).) The privilege protects confidential communications between a client and attorney for purposes of either obtaining or rendering legal assistance. (*Fisher v. United States,* 425 U.S. 391, 403 (1976).) Communications between a government employee and government attorney are privileged to the same extent as those between a corporate employee and corporate attorney. (*Galarza v. United States,* 179 FRD 291, 295 (SD CA 1998); *see also In re County of Erie,* 473 F. 3d 413, 419 (2nd Cir. 2007) ("At least in civil litigation between a government agency and private litigants, the government's claim to the protections of the attorney-client privilege is on par with the claim of an individual or a corporate entity.").)

Generally, the attorney-client privilege *extends to any employee* communicating on matters within the scope of his or her employment when that employee is aware that he or she is being questioned in confidence in order for his or employer to obtain legal advice. (*Upjohn Co. v. United States, supra,* 449 US at

130

391, 202 S. Ct. at 685).  The privilege also applies to communications from attorney to client as long as it is based, at least in part, upon a confidential communication from the client to the attorney.  (*In re Sealed Case*, 737 F. 2d 94, 99  (DC Cir. 1984).)  Furthermore, the privilege extends to documents prepared by an attorney or at an attorney's request for the purpose of advising a client, if the documents are based on and would tend to reveal the client's confidential communications.  (*United States v. National Ass'n of Realtors*, 242 FRD 491, 496) (ND IL 2007).)

## 2) **Defendants' Qualified Immunity Defense Does Not Waive the Attorney-Client Privilege**

Although the communications at issue are privileged, Plaintiff argues Defendants waived the privilege by asserting a qualified immunity defense.  This argument is without merit.  The assertion of this defense does not result in the automatic waiver of the attorney-client privilege.  (*In re County of Erie*, 546 F.3d 22, 229 (2d Cir. 2008) (disagreeing with the broad scope of implied waiver articulated in *Hearn v. Rhay*, 68 F.R.D. 574 (1975)); *see also Arizona Dream Act Coalition v. Brewer*, 2014 WL 171923*6 (D. Ariz. 2014) (declining to follow *Hearn v. Rhay*); *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994) (deeming Hearn to be of "dubious validity" because, although it "dress[es] up [its] analysis with a checklist of factors, [it] appear[s] to rest on a conclusion that the information sought is relevant and should in fairness be disclosed").)  Here, Defendants have not expressly asserted reliance on the advice of counsel as a basis for their qualified immunity defense.  Instead, Defendants' position is that their actions were lawful and/or that any rights allegedly violated were not clearly established.  In view of these circumstances, legal advice rendered by the City Attorney or Mayor's legal counsel about whether to go into a closed

session is irrelevant to the qualified immunity defense. (*In re County of Erie*, 546 F.3d at 229 (holding that mere assertion of defense does not impliedly waive attorney-client privilege; a party must rely on privileged advice from his counsel to waive the privilege).)

Notwithstanding, in the event the Court is persuaded that *Hearn v. Rhay* applies to this case, Plaintiff's request to compel disclosure of attorney-client privileged communications regarding the Fire Commission's ability to go into closed session must still be denied. Under the *Hearn* test, an implied "at-issue" waiver requires: 1) assertion of the privilege was a result of some affirmative act by the asserting party; 2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to this case; and 3) application of the privilege would have denied the opposing party access to information vital to his defense. (*Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wa. 1975).) *Hearn* also states that an overarching consideration is whether allowing the privilege to protect against disclosure of the information would be "manifestly unfair" to the opposing party. (*Home Indem. Co. v. Lane Powell Moss and Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995) *citing to Hearn v. Rhay*, 68 F.R.D. at 581.)

Even if Defendants arguably placed "advice of counsel" at issue by merely asserting a qualified immunity defense, Plaintiff fails to demonstrate that the application of the attorney-client privilege denies him access to information necessary to "defend" against this affirmative defense. In considering this third factor of the *Hearn* test, the Court evaluates whether allowing the privilege would deny the opposing party access to information vital to its case. (*U.S. v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999).) Privileged communications do not become discoverable simply because they are related to issues raised in the litigation. (*Id.*) When the sought after evidence is only one of several forms of indirect evidence

132

about an issue, the issue has *not* been waived. (*Id.*)

Here, Plaintiff has not shown that the attorney-client privileged information he seeks regarding the Fire Commission's authority to go into closed association is vital to overcoming the qualified immunity defense. To overcome Defendants' qualified defense, Plaintiff has to show that 1) Defendants violated a statutory or constitutional right; and 2) that the right was clearly established at the time of the challenged conduct. (*Pearson v. Callahan*, 555 U.S. 223, 232 (2009).) First, the Fire Commission's authority to go into closed sessions has no relevance to whether Defendants violated Plaintiff's statutory or constitutional right or if that right was clearly established. In addition, Plaintiff does not need attorney-client privileged information to overcome this defense because there is other relevant non-privileged evidence available to him which includes, but is not limited to, 1) issuing his March 27, 2010 assessment criticizing the City Attorney; 2) filing complaints against the City Attorney with the State Bar; 3) filing tort claims against the City; 3) filing a claim against the City with the U.S. Equal Employment Opportunity Commission and seeking a right to sue letter from the California Department of Fair Employment and Housing; 4) issuing a press release criticizing the City Attorney; 5) sending complaint letters to current City Attorney Michael Feuer; and 6) filing the instant lawsuit. (See Plaintiff's interrogatory responses at pages 71 to 82 attached as Ex. 9 to the Walter Decl.; see also the Court's Order dated August 7, 2014 denying Defendants' Motion to Dismiss (Dkt. # 117.) In addition, Plaintiff also has evidence from deposition testimony that he may rely on to overcome the qualified immunity defense. (See e.g. Ibarra's testimony on Page 108 where she states "The only person who interposed any objection to [terminating Miller from his employment] was Commissioner Fazio, who stated that, you know he—you know, he liked Mr. Miller, he thought Mr. Miller did good

133

work, and –and I think he had the same concern that I did, is 'Is he going to sue us because he has this litigation going on, and is he going to say it's retaliation,' you know, 'and then we're all going to get sued?'")

Finally, the qualified immunity defense only relates to Plaintiff's section 1983 claim. To the extent Plaintiff argues that he needs the attorney-client privileged information to prove his other claims, Plaintiff also has not shown that such information is vital to proving his claims. Among the retaliatory and discriminatory acts Plaintiff alleges Defendants took against him are 1) issuing false legal advice on August 23, 2010 stating that the Independent Assessor may not have access to Fire Department personnel files; 2) denying Plaintiff access to certain databases; 3) preventing Plaintiff from meeting with the Fire Commissioners in closed session; 4) failing to investigate his race and gender discrimination complaint against three attorneys of the City Attorney; and 5) terminating Plaintiff's employment as independent assessor. Plaintiff does not need attorney-privileged communications to prove his claims because there is other relevant non-privileged evidence available to him. For example, Plaintiff's criticisms of the City Attorney, complaints to the State Bar and other governmental agencies, the issuance of a press release and the filing of the instant complaint could be relied up to prove his claims. In addition, Dean Chemerinsky's opinion that the August 23, 2010 legal advice from the City Attorney was incorrect may also be evidence that such advice was issued by the City for retaliatory reasons. (See Plaintiff's interrogatory responses at pages 71-82 attached as Ex. 9 to the Walter Decl.) Because other evidence is available to Plaintiff to prove his claims, the attorney-client communications he seeks to disclose on a tangential issue are neither necessary or vital.

**2. Defense Counsel Improperly Raised the Privilege for Meetings Based Upon the Mere Presence of an Attorney**

### a. On page 108-109

Q: "All right. Let's talk about the closed session of October 15, 2013. When the commission went into closed session regarding Miller, what was said?"

Mr. Walter: "And I'm going to going to interpose an objection here. Normally, I would not allow the witness to answer questions about what---what's discussed in closed session, pursuant to the Brown Act. However, in this situation, given the claim that Mr. Miller is making in the case, I'll make an exception for the portion of the closed session where there was no attorney present and, therefore, no privileged communications were occurring."

. . .

A: "The only person who interposed any objection to [terminating Miller from his employment] was Commissioner Fazio, who stated that, you know he—you know, he liked Mr. Miller, he thought Mr. Miller did good work, and –and I think he had the same concern that I did, is 'Is he going to sue us because he has this litigation going on, and is he going to say it's retaliation,' you know, 'and then we're all going to get sued?'"

There can be no attorney-client privilege for these closed sessions, because the privilege is being asserted to protect the Fire Commissioners from retaliation. The City Attorneys owe a duty and attorney-client privilege to the City, not to its Fire Commissioners. Therefore, asserting the privilege to cover individuals who meant to cover up evidence of their own liability is not a proper use of the attorney-client privilege.

Ibarra and the other Fire Commissioners may have relied upon the advice of

135

counsel in voting to terminate Miller. However, this meeting took place in order to commit the ultimate retaliation against Miller, to carry out the City Attorney's fraudulent advice. There is no attorney-client privilege where the communication is used for fraudulent purposes. See *Clark v. United States,* 289 U.S. 1, 15 (1933) ("There is a privilege protecting communications between attorney and client. The privilege takes flight if the relation is abused. A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told.") To show that the crime-fraud exception applies, there must be "something to give colour to the charge;" there must be "prima facie evidence that it has some foundation in fact." Id. quoting *O'Rourke v. Darbishire*, loc. cit., supra; also pp. 614, 622, 631, 633 (1920).

Miller has suffered at the hands of City defendants, like Ibarra, who have interfered with and terminated his employment for the unlawful purpose of retaliation against his First Amendment rights to free speech. The City has attempted, through the advice of its counsel, to defraud the voters who enacted LA City Charter Section 523, because in shutting Miller out of meetings, denying him aid, and ultimately terminating him for the matters within his reports, the City is denying voters an effective Independent Assessor. In this matter, attorney-client privilege should be waived entirely, and defendants should be compelled to disclose all communications.

**Defendants' Position:**

Plaintiff's motion to compel Defendant Delia Ibarra to disclose information about whether anyone "advise[d]" her about the Fire Commission's authority to go into closed session should be denied. Ibarra is one of the five current Fire Commissioners for the City and she was involved in the decision to terminate Plaintiff's employment as Independent Assessor. This decision was made during a closed session Fire Commission meeting that took place October 15, 2013.

136

## 1) **Ibarra Was Permitted to Testify About Closed Session Communications That Occurred Outside the Presence of Counsel Even Though They Are Privileged Under the California Ralph M. Brown Act ("Brown Act")**

A person may not disclose confidential information that was acquired by being present in a closed session to any person not entitled to receive it. (Cal. Govt. Code §54963(a).) "Confidential information" means a communication made in a closed session that is specifically related to the basis for the meeting of the legislative body. (Cal. Govt. Code §54963(b).) Notwithstanding, Ibarra was permitted to testify about discussions the Fire Commissioners had in closed session that occurred outside the presence of an attorney. Therefore, to the extent Plaintiff moves to compel Ibarra to testify to closed session communications that occurred outside the presence of an attorney, this request should be denied because Ibarra already fully testified to those discussions.

## 2) **Closed Session Discussions That Occurred In the Presence of Counsel Are Subject to the Attorney-Client Privilege**

Any further attempt by Plaintiff to compel Ibarra to testify about the substance of closed session discussions that occurred within the presence of an attorney should be denied because such communications are protected by the attorney-client privilege. Ibarra and the other Fire Commissioners are not asserting reliance on advice of counsel as a defense. Consequently, any legal advice Ibarra and the other Fire Commissioners received from the City Attorney's office is subject to the attorney-client privilege. Section 271(b) of the City Charter provides: "The City Attorney shall be the legal advisor to the City, and to all City boards, departments, officers and entities." (See Ex. 2 to Defendants Request for

137

Judicial Notice.) Section 200 of the City Charter states "officers" of the City include the Mayor, members of the City Council and members of the boards or commissions of the departments and the chief administrative officer of each department and office. (See Ex. 1 to Defendants Request for Judicial Notice.) Consequently, advice received by Ibarra and the other Fire Commissioners from the City Attorney is protected from disclosure by the attorney-client privilege.

In addition, any legal advice Ibarra and the other Fire Commissioners received from the Mayor's legal counsel is subject to the attorney-client privilege. The Fire Commissioners are appointed by the Mayor and confirmed by the City Council. The purpose of the Fire Commission is to establish goals and provide direction to the Fire Department through the Fire Chief. Section 502 of the City Charter gives the Mayor the power the appoint and remove Fire Commissioners, Section 506 which states general rules adopted by the Fire Commissioners as the head of the Fire Department are subject to the Mayor's approval, and Admin. Code, §3.3 states "[i]t shall be the duty of the Mayor … to exercise a constant supervision over the acts and conduct of all officers and employees; to receive and examine into all complaints made against them for violation or neglect of duty, and certify the same to the Council or proper board, and to secure cooperation between the various departments and offices of the City." Because the Mayor is responsible for the conduct of the Fire Commission, the Mayor's Counsel works closely with the Fire Commissioners. The Fire Commission may also seek legal advice from the City Attorney's Office regarding issues. (Llewellyn Decl., ¶6.)

Corporations, partnerships, and other groups and entities, including government agencies, who retain the services of an attorney are "clients" protected by the attorney-client privilege. (*Upjohn Co. v. United States* (1981) 449 US 383, 390, 101 S. Ct. 677, 683 – corporation; *see Maricopa Audubon Soc. v. United*

138

*States Forest Service,* 108 F. 3d 1089, 1092 (9th Cir. 1997) (holding that a public entity can be a client); *see also Rein v. United States Patent & Trademark Office* (4th Cir. 2009) 553 F. 3d 353, 376 (same).) The privilege protects confidential communications between a client and attorney for purposes of either obtaining or rendering legal assistance. (*Fisher v. United States,* 425 U.S. 391, 403 (1976).) Communications between a government employee and government attorney are privileged to the same extent as those between a corporate employee and corporate attorney. (*Galarza v. United States,* 179 FRD 291, 295 (SD CA 1998); *see also In re County of Erie,* 473 F. 3d 413, 419 (2nd Cir. 2007) ("At least in civil litigation between a government agency and private litigants, the government's claim to the protections of the attorney-client privilege is on par with the claim of an individual or a corporate entity.").)

Generally, the attorney-client privilege *extends to any employee* communicating on matters within the scope of his or her employment when that employee is aware that he or she is being questioned in confidence in order for his or employer to obtain legal advice. (*Upjohn Co. v. United States, supra,* 449 US at 391, 202 S. Ct. at 685). The privilege also applies to communications from attorney to client as long as it is based, at least in part, upon a confidential communication from the client to the attorney. (*In re Sealed Case,* 737 F. 2d 94, 99 (DC Cir. 1984).) Furthermore, the privilege extends to documents prepared by an attorney or at an attorney's request for the purpose of advising a client, if the documents are based on and would tend to reveal the client's confidential communications. (*United States v. National Ass'n of Realtors,* 242 FRD 491, 496) (ND IL 2007).)

### 3) The Crime Fraud Exception Does Not Apply

Plaintiff also cites the crime-fraud exception to the attorney-client privilege

139

with respect to every single disputed question at issue. However, Plaintiff fails to explain how the exception applies to the questions at hand. To trigger the crime-fraud exception, Plaintiff must establish that the City was engaged in or planning a criminal or fraudulent scheme when it consulted with the City Attorney's Office. (*In re Grand Jury Proceedings*, 87 F.3d 377, 381-382 (9th Cir. 1996).) The Ninth Circuit has held that it is not enough for the person asserting this exception "merely to allege that it has a sneaking suspicion the client [here, the City] was engaging in or intending to engage in a crime or fraud when it consulted the attorney. A threshold that low could discourage many would-be clients from consulting an attorney about entirely legitimate legal dilemmas. Rather, the district court must find "reasonable cause to believe that the attorney's services were 'utilized ... in furtherance of the ongoing unlawful scheme.'" (*Id.* at 381.) Here, Plaintiff has not – and cannot – state any facts or point to any evidence showing that Defendants were engaged in an intentional fraud or scheme when it consulted with City Attorneys regarding Plaintiff's at-will employment. Therefore the crime-fraud exception does not apply.

### E. GENETHIA HUDLEY-HAYES DEPOSITION

Hudley-Hayes is a former Fire Commissioner who was the President of the Board and who worked with Miller in his capacity as the Independent Assessor for the Fire Department. (All page numbers refer to the deposition transcript of Hudley-Hayes, see Decl. Mary E. Collins, ¶ 5, Exhibits E).

### 1. Hudley-Hayes' Deposition Holds the Power to Waive the Attorney-Client Privilege for Communications Made to Her When She was a Fire Commissioner

#### a. On page 32-33

Q: "Are you an attorney?"

A: "No."

140

Q: "Are you sending advice to the city attorney's office?"

A: "No. I thought we—I thought we settled this. I thought that the commission waived its—we're the ones that can waive the privilege, as I understand it.

Look, I am not an attorney. This whole thing was just exacerbating and very frustrating and it went back and forth, Steve, and maybe I'm not remembering it chronologically, but at once point the commission who had the ability to waive the privilege waived the privilege and Pete didn't like—he didn't want that to happen. He said that in an open meeting but when we asked whether we could because we had the privilege, we were told that we could and we did. "

Q: "Okay."

A: "Could you read our—the email—"

Mr. Walter: "I'm sorry, I'm not done with this. For the record, the city does not agree with the statement of privilege that Ms. Hayes—is it Hudley-Hayes?"

A: "Yes."

Hudley-Hayes said that she could waive the privilege for her time as a Fire Commissioner. Counsel for the City claimed she does not have this power.

**Defendants' Position:**

Plaintiff's request to compel should be denied because Plaintiff has not identified a pending question that requires further testimony from Hudley-Hayes. Hudley-Hayes responded to the questions asked of her in this deposition excerpt. There is nothing further to compel.

### 1) The Fire Commissioners Did Not Have the Power to Waive the Attorney-Client Privilege

However, to the extent Plaintiff is citing to this deposition excerpt for

141

purposes of arguing that Hudley-Hayes may waive the attorney-client privilege held by the City, this argument is without merit. Hudley-Hayes was one of five Fire Commissioners at the time Plaintiff was upset with the City Attorney's August 23, 2010 legal opinion regarding the Independent Assessor's ability to access Fire Department employee personnel files. Any legal advice Hudley-Hayes and the other Fire Commissioners received from the City Attorney's office is subject to the attorney-client privilege. Section 271(b) of the City Charter provides: "The City Attorney shall be the legal advisor to the City, and to all City boards, departments, officers and entities." (See Ex. 2 to Defendants Request for Judicial Notice.) Section 200 of the City Charter states "officers" of the City include the Mayor, members of the City Council and members of the boards or commissions of the departments and the chief administrative officer of each department and office. (See Ex. 1 to Defendants Request for Judicial Notice.) Consequently, advice received by the Fire Commissioners from the City Attorney is protected from disclosure by the attorney-client privilege.

The holder of the attorney-client privilege is the City, and not the Fire Commission. Consequently, even if the Fire Commission purported to waive the attorney-client privilege, no such waiver legally occurred. Because the Commission was never the holder of the privilege, they did not have the power to waive it. Only the City of Los Angeles acting through its City Council members may waive the privilege. Recognizing that entities can act only through agents, courts have held that any privilege that attaches to communications on corporate matters between corporate employees and corporate counsel belongs to the corporation, not to the individual employee, and that employees generally may not prevent a corporation from waiving the attorney-client privilege arising from such communications. (*Weil v. Investment/Indicators, Research & Mgt., Inc.*, 647 F. 2d 18, 23 (9th Cir. 1981); *United States v. International Broth. of Teamsters,*

142

*Chauffeurs, Warehousemen & Helpers of America, AFL-CIO,* 119 F. 3d 210, 215 (2nd Cir. 1997).) Similarly, where the client is a public entity, the privilege belongs to and may be waived only by the entity and not individual employees. Further, privileged communications that occur during the period of employment do not lose their protection when the employee leaves the client entity. (*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.,* 658 F. 2d 1355, 1361, fn. 7 (9th Cir. 1981).) The attorney-client privilege is absolute, and evidence protected by the privilege may not be ordered disclosed regardless of its relevance. (*See, Diversified Industries, Inc. v. Meredith,* 572 F. 2d 596, 602(8th Cir. 1977).)

### 2. There is No Attorney-Client Privilege for Communications Between Hudley-Hayes and Erwin Chemerinsky, a Legal Scholar and Acquaintance

Erwin Chemerinsky Dean of UCI's Law School and a professional acquaintance of Hudley-Hayes, offered his opinion in writing to Miller, about the Los Angeles City Charter and Miller's claims. However, he had no attorney-client relationship with any party.

#### a. On page 44

Q: "Talking about—talking about the conflicting advice on leading up to discussions that were ultimately had with Dean Erwin Chemerinsky but before that, did the city attorney's office issue written advice that appeared to conflict with the advice that they had given in August 2010?"

A: "Yes. And I was confused."

Mr. Walter: And I'm going to object to the extent that calls for attorney-client privileged communications. The city has not waived any attorney-client privileged communications for this deposition so—I'm not sure

143

what the witness is going to say but if it involves attorney-client privilege communications, I'll instruct the witness not the answer.

**The Witness:** "Between me and Erwin?"

Counsel for the defense objected to questions about communications between Erwin Chemerinsky, UC Irvine law professor and Dean, and Hudley-Hayes, on the basis of attorney-client privilege. Chemerinsky was never an attorney or an employee of the City. He is a law professor, whose legal advice was sought by Miller. Miller waived the privilege by publishing the letter which Chemerinsky gave him.

**Defendants' Position:**

Plaintiff's request to compel should be denied because Plaintiff has not identified a pending question that requires further testimony from Hudley-Hayes. Hudley-Hayes responded to the questions asked of her in this deposition excerpt, and subsequently talked extensively about her discussions with Chemerinsky in the rest of the deposition. There is nothing further to compel.

Notwithstanding, Plaintiff misses the point as to why Defendants asserted their objections to the line of questioning contained the above deposition excerpt. Defendants have no problem with Hudley-Hayes and/or Miller testifying about discussions one or both of them had with Chemerinsky. However, to the extent the discussion among these individuals involve City attorney-client privileged information that Hudley-Hayes and/or Miller received from the City Attorney, Defendants object to such testimony because the privilege attached to those communications has not been waived by the City. These confidential communications were improperly disclosed to Chemerinsky in order for him to render his own written opinion on this issue. Thus, to the extent the above line of questioning, requires Hudley-Hayes to disclose, in part, confidential

communications involving the City Attorney, Defendants have the right to object and prevent her from disclosing these attorney-client privileged communications.

Neither Plaintiff or Hudley-Hayes may waive the attorney-client privilege held by the City. Plaintiff was the Independent Assessor for the Fire Department. Hudley-Hayes was one of five Fire Commissioners at the time Plaintiff's and the City Attorney's dispute arose over the City Attorney's August 23, 2010 legal opinion regarding the Independent Assessor's ability to access Fire Department employee personnel files. Any legal advice Hudley-Hayes, the other Fire Commissioners, and Plaintiff received from the City Attorney's office is subject to the attorney-client privilege. Section 271(b) of the City Charter provides: "The City Attorney shall be the legal advisor to the City, and to all City boards, departments, officers and entities." (See Ex. 2 to Defendants Request for Judicial Notice.) Section 200 of the City Charter states "officers" of the City include the Mayor, members of the City Council and members of the boards or commissions of the departments and the chief administrative officer of each department and office. (See Ex. 1 to Defendants Request for Judicial Notice.) Consequently, advice received by the Fire Commission or Plaintiff from the City Attorney is protected from disclosure by the attorney-client privilege.

Further, the holder of the attorney-client privilege is the City, and not the Fire Commission. Consequently, even if Hudley-Hayes believes the Fire Commission waived the attorney-client privilege, no such waiver occurred. Because the Commission was never the holder of the privilege, they did not have the power to waive it. Only the City of Los Angeles acting through its City Council members may waive the privilege. Recognizing that entities can act only through agents, courts have held that any privilege that attaches to communications on corporate matters between corporate employees and corporate counsel belongs

145

to the corporation, not to the individual employee, and that employees generally may not prevent a corporation from waiving the attorney-client privilege arising from such communications. (*Weil v. Investment/Indicators, Research & Mgt., Inc.,* 647 F. 2d 18, 23 (9th Cir. 1981); *United States v. International Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL-CIO,* 119 F. 3d 210, 215 (2nd Cir. 1997).) Similarly, where the client is a public entity, the privilege belongs to and may be waived only by the entity and not individual employees. Further, privileged communications that occur during the period of employment do not lose their protection when the employee leaves the client entity. (*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.,* 658 F. 2d 1355, 1361, fn. 7 (9th Cir. 1981).) The attorney-client privilege is absolute, and evidence protected by the privilege may not be ordered disclosed regardless of its relevance. (*See, Diversified Industries, Inc. v. Meredith,* 572 F. 2d 596, 602(8th Cir. 1977).) Thus, although Hudley-Hayes and Plaintiff improperly disclosed attorney-client communications to Dean Chemerinsky, such disclosures did not operate to waive the attorney-client privilege attached to those communications, and Defendants direction to Hudley-Hayes to not disclose any attorney-client privileged communications during her deposition was proper.

### 3. Hudley-Hayes Waived Attorney-Client Privilege When She Sent Emails to Miller and to The City Attorneys

#### a. On page 68-69

**Q:** "You sent a response to the e-mail on Tuesday, August 2, 2011; is that right?"

**A:** "Yes."

**Q:** "Could you read what you wrote, please?"

**Mr. Walter:** "I'm going to object as to the contents of that e-mail may contain attorney-client privileged communications, and I'm not going to

146

allow the witness to answer any questions about attorney-client privileged communications."

**Witness:** "It's from—"

**Mr. Walter:** "You can read—well, let me see this, because there's definitely attorney-client privileged communications in that e-mail."

**Mr. Miller:** "I'm asking her to read her own e-mail, not my e-mail."

**Mr. Walter:** "I understand, but I need to read what she said here to see if this is- this was to Janet Jackson who's an attorney."

**The Witness:** "And to Steve."

**Mr. Walter:** "Well, yes."

**The Witness:** "Oh, to both of them."

**Mr. Walter:** "Yes, who is an employee. That doesn't waive the privilege because it was sent to Steve when he was an employee of the city. "

**Witness:** "I can waive the privilege. We've already been through that. "

Here, Defense counsel objected to Hudley-Hayes reading her own email into the record, based on attorney-client privilege. The email was to Deputy City attorney Janet Jackson and to the plaintiff. Brian Walters, counsel for the defense said that the Plaintiff and Hudley-Hayes could not waive the privilege, because the privilege is held by the City itself, and Hudley-Hayes had been an employee at the time of the communication. Even though Hudley-Hayes is an attorney, she was not employed in that capacity with the City, and her communication does not constitute legal advice. Jackson and Miller were not her clients.

**Defendants' Position:**

Plaintiff's request to compel should be denied because Plaintiff has not identified a pending question that requires further testimony from Hudley-Hayes. Hudley-Hayes responded to the questions asked of her in this deposition excerpt. There is nothing further to compel.

147

However, to the extent Plaintiff requests that Hudley-Hayes be compelled to read an email authored by her discloses contains attorney-client communications Hudley-Hayes and Plaintiff had with the City Attorney, this request should be denied. Neither Plaintiff or Hudley-Hayes may waive the attorney-client privilege held by the City. Plaintiff was the Independent Assessor for the Fire Department. Hudley-Hayes was one of five Fire Commissioners. Any legal advice Hudley-Hayes, the other Fire Commissioners, and Plaintiff received from the City Attorney's office is subject to the attorney-client privilege held by the City. Section 271(b) of the City Charter provides: "The City Attorney shall be the legal advisor to the City, and to all City boards, departments, officers and entities." (See Ex. 2 to Defendants Request for Judicial Notice.) Section 200 of the City Charter states "officers" of the City include the Mayor, members of the City Council and members of the boards or commissions of the departments and the chief administrative officer of each department and office. (See Ex. 1__ to Defendants Request for Judicial Notice.) Consequently, advice received by the Fire Commission or Plaintiff from the City Attorney is protected from disclosure by the attorney-client privilege.

Further, the holder of the attorney-client privilege is the City, and not the Fire Commission. Consequently, even if Hudley-Hayes believes the Fire Commission waived the attorney-client privilege, no such waived occurred. Because the Commission was never the holder of the privilege, they did not have the power to waive it. Only the City of Los Angeles acting through its City Council members may waive the privilege. Recognizing that entities can act only through agents, courts have held that any privilege that attaches to communications on corporate matters between corporate employees and corporate counsel belongs to the corporation, not to the individual employee, and that employees generally may not prevent a corporation from waiving the attorney-client privilege arising

148

from such communications.  (*Weil v. Investment/Indicators, Research & Mgt., Inc.,* 647 F. 2d 18, 23 (9th Cir. 1981); *United States v. International Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL-CIO,* 119 F. 3d 210, 215 (2nd Cir. 1997).)  Similarly, where the client is a public entity, the privilege belongs to and may be waived only by the entity and not individual employees.  Further, privileged communications that occur during the period of employment do not lose their protection when the employee leaves the client entity.  (*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.,* 658 F. 2d 1355, 1361, fn. 7 (9th Cir. 1981).)  The attorney-client privilege is absolute, and evidence protected by the privilege may not be ordered disclosed regardless of its relevance.  (*See, Diversified Industries, Inc. v. Meredith,* 572 F. 2d 596, 602(8th Cir. 1977).)

### 4.  A Non-Legal Discussion About Miller's Character Should Not Trigger The Attorney-Client Privilege

#### a.  On pages 88-89

Q:  "Did you see any merit in [Janet Jackson] calling me a racist or—"

A:  "No, no. I had been working with you by then. We already had difficulty, you and I, because you are very -- now, let's be -- you know, you're very clear about things, and you're push, and I'm pushy but in the final analysis, no we never—we always resolved the issue. I don't ever remember you saying, I don't care what you say I'm going to do this. I never had a moment where I felt that you were either sexist or racist, and I am hypersensitive to that kind of stuff, being, you know, the executive director of the CSLC, doing the kind of work that I do in the community. My whole issue of going to the south and doing civil rights work in—I am hypersensitive to that, no, the answer is no, and I told  Janet that as well. But that was what Janet said to me. "

**Q:** "Do you remember what the issue was about?"

**Mr. Walter:** "Objection; calls for attorney-client privileged communications. I would instruct the witness not to answer."

Hudley-Hayes was not seeking Janet Jackson's advice during this communication. Instead, the conversation between two African-American women was of a personal nature, because it concerned their differing impressions of Miller as a racist or sexist person. Despite the personal nature of the conversation, defense counsel asserted the attorney-client privilege.

The privilege is limited to communications expressly intended to be confidential, and some showing of an intention of secrecy must be made, so "the mere relation of attorney and client does not raise a presumption of confidentiality. Hence, the presence of third persons who are not essential to the transmittal of information will belie the necessary element of confidentiality and vitiate the privilege. *Hearn v. Rhay*, 68 F.R.D. 574, 579, (1975).

Additional objections were raised in Genethia Hudley-Hayes' deposition on page 69, when she was asked to read an email written by Hudley-Hayes to the Plaintiff and to Janet Jackson, a deputy City Attorney. This email was a communication made by Hudley-Hayes, who was not employed as an attorney, to Miller and an attorney for the City. Hudley-Hayes did not ask the attorney for advice, and she said that she waived the privilege when the objection was raised. Hudley-Hayes did not attempt to keep this communication confidential, because she included Miller in the conversation. Again, Defense counsel attempted to assert that the communication, an email, was covered by attorney-client privilege, based on the mere presence of an attorney in the conversation.

Again, on page 88 of her deposition, Hudley-Hayes spoke about a conversation in which Jackson said that Miller was racist or sexist. Jackson and Hudley-Hayes had a private conversation on this matter, and compared their

experiences of working with Miller as two African-American women. Although they are both attorneys, neither person was soliciting advice from the other on any issue. Defense counsel objected to discussing any issue from this conversation, which would have implicated attorney-client privilege. There was no need, because the private conversation did not concern legal advice. Still, Defense counsel raised objections.

The Defendants have not asserted a reason why these communications are privileged, and have used blanket objections to eschew disclosing information about government meetings. The disclosure of these discussions should be compelled by the court.

**Defendants' Position:**

Plaintiff's request to compel should be denied because Plaintiff has not identified a pending question that requires further testimony from Hudley-Hayes. Although Mr. Walter objected to Plaintiff's question "Do you remember what the issue was about?", Hudley-Hayes responded to the question by indicating that she did not remember what the issue was about.  Specifically, Hudley-Hayes replied:

> "Yeah, I don't – I don't really – something where you were all disagreeing about something.  That's all I can say.  So, whatever the attorney – what the content was, I'm not trying to not tell you. *I don't remember what it was.* But it was something that the two of you then obviously had to have a conversation with Carlos about, and her only insistence was that the only reason that you did was because she was black and because she was a woman." (Hudley-Hayes Depo. at 88:6-89:13 attached as Exhibit 7 to the Walter Decl. (emphasis added).)

Hudley-Hayes responded to the questions asked of her in this deposition excerpt.  There is nothing further to compel.

## V.

## THE PARTIES HAVE ATTEMPTED TO MEET AND CONFER ON THESE ISSUES IN GOOD FAITH

Prior to filing this Motion and Joint Statement, parties have met and conferred on these issues in good faith on numerous occasions. On or about October 4, 2014, Plaintiff's counsel contacted Defense Counsel to meet and confer on the issues of privilege and discovery. On December 19, 2014, a meet and confer phone call took place between both counsels. The parties agreed to a sixty day stay of discovery, so that the resolution of the discovery dispute could take place before more depositions were taken. The parties signed a stipulation to modify the scheduling order on January 8, 2015, which was signed by the court on January 14, 2015. The parties prepared their statements of discovery dispute to be combined into a joint statement. The parties tried but could not resolve the issues of attorney-client privilege, and so present the court with this motion and joint statement.

Dated: March 23, 2015          WAGNER & PELAYES, LLP

_____

MARY E. COLLINS, Esq.
DENNIS E. WAGNER, Esq.
Attorneys for Plaintiff, STEPHEN MILLER

Dated: March 20, 2015          LIEBERT CASSIDY WHITMORE, APLC

_____

BRIAN P. WALTER, ESQ.
Attorneys for Defendants, CITY OF LOS ANGELES, ERIC GARCETTI, RICHARD LLEWELLYN, DELIA IBARRA, ANDREW GLAZIER, STEVE FAZIO, JIMMIE WOODS-GRAY, JIMMY HARA, M.D.

152