Risa S. Christensen, Esq., CA Bar No. 227799
Dennis E. Wagner, Esq., CA Bar No. 99190
WAGNER & PELAYES, LLP
1325 Spruce Street, Suite 200
Riverside, CA 92507
Tel:  (951) 686-4800
Fax: (951) 686-4801
rsc@wagner-pelayes.com
dew@wagner-pelayes.com

Stephen Miller, CA Bar No. 106534
1325 Spruce Street, Suite 200
Riverside, CA 92507
Tel:  (951) 686-4800

Attorneys for Plaintiff,
STEPHEN MILLER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN MILLER,<br><br>　　　Plaintiff,<br><br>　vs.<br><br>CITY OF LOS ANGELES, et al.,<br><br>　　　Defendants.<br>_____ | CASE NO.:  CV13-05148 GW (CWx)<br><br>**DECLARATION OF GENETHIA HUDLEY-HAYES IN OPPOSITION TO MOTIONS FOR SUMMARY JUDGMENT**<br><br>*[Filed Concurrently w/Plaintiff's Oppositions to Defendants Motions for Summary Judgment; Statements of Genuine Dispute filed in Opposition; Sup. Decl. of Steve Miller; Decl. of Dennis Wagner and Risa Christensen; Obj. to Evid.]*<br><br>**DATE:**　　September 10, 2015<br>**TIME:**　　8:30 a.m.<br>**CRTRM:** 10<br><br>*Honorable George H. Wu* |

1

_____
DECLARATION OF GENETHIA HUDLEY-HAYES

I, GENETHIA HUDLEY-HAYES, declare as follows:

I have personal knowledge of the facts and opinions stated in this declaration and I am competent to testify to these facts and opinions if called upon to do so.

1.  That I am the former President of the Los Angeles Fire Commission having served a total of approximately 8 years on the Commission and 6 years as the President.  I left in 2013 after the Mayor-elect Garcetti took office.

2.  That I am an African-American woman.

3.  That I previously served on the Los Angeles School Board for one term, beginning in 1999.

4.  That I was appointed by former Mayor Antonio Villaraigosa to the Fire Commission in 2005.

5.  That despite the fact that I had supervised Miller from October 2009 to the time I left the Commission in July 2013, no one from the new Fire Commission who took office after me in July 2013 ever contacted me about Miller's job performance before his termination as the Independent Assessor or to ask me whether Miller had performed the position well or whether there was any reason to replace him or terminate him, or for any other reason.

6.  That I directly supervised Miller from the time he started as the Independent Assessor and was of the opinion that his work as the Independent Assessor was excellent.  The IA position was a new position and Steve Miller did everything in his power to have the position used as it was created to be used and for how the voters who approved it intended for it to operate.

7.  That I served on the personnel committee for the Fire /Commission from 2006 to the time I left the Commission. This was a standing committee tasked with reviewing disciplinary guidelines.  We never had any issue with reviewing confidential personnel documents prior to the creation of the IA position. Oftentimes the deputy city attorney would come in with the files and we would go

//

2

through them.  The files were provided directly by the City Attorneys themselves without any redactions, including city attorney Ms. Jackson.

8.    That I never saw or perceived any hint of racist or gender-based biased prejudice from Steve Miller, in his conduct, words or his intentions in the performance of his work as the Independent Assessor.

9.    That Stephen Miller completed an *Assessment*, dated March 27, 2010, which I reviewed along with the other fire commissioners and which was formally accepted by us as a Board.  The *Assessment* was a lengthy report of almost 150 pages and was a review of the Fire Department which indicated within the report that there were issues with timeliness and appropriate service and competent legal advice from the City Attorney's Office.  Within a week or so of publishing this Assessment Miller was being barred from attending disciplinary review meetings with the Fire Chief although our office had previously been represented for years prior to the creation of the IA position by Bea Lopez, an employee of the Commission, and then by Miller after he started as the IA.  This sudden, inexplicable change in procedures was perplexing and troubling, and as a result of this, I indicated that we needed an opinion from the City Attorney's office as to the authority of the Fire Commission and IA.

10. That on July 14, 2010, Fire Chief Millage Peaks published a memo that was directed to groups within the Fire Department about the scope of duties and complete access to be given the IA. The memo indicated that the IA is to be given full access to information.  This memo is attached as Exhibit "1" and is a true and accurate copy of the document.  I saw this before it was released by the Chief and knew that the Mayor's office supported the interpretation of the memo and access by the IA.  The memo was prepared by Miller for the Chief based upon the unexplained and prolonged delay of the City Attorney's office in providing an opinion since the Fire Commission and the IA had work to perform and needed to ensure access to perform their mandated duties.

3

11. That Deputy City Attorney William Carter informed me that the reason no response was provided to Fire Commission over this time frame was because the City Attorney's Office was facing budget cuts.

12. That the City Attorney's Office submitted a *response* to Miller's criticism in the *Assessment*, on August 16, 2010, which contained false information about the response times and quality of the City Attorney's Office's work. I knew the information contained in the *response* was false because several of the requests for information went back over a year and I was aware that we were still waiting for information.

13. That the City Attorney's Office submitted its August 23, 2010 *Advice*, which was an opinion which for the first time stated that both the Fire Commission and the IA did not have complete access to confidential file information within the Fire Department.

14. That prior to the August 23, 2010 *Advice*, deputy city attorney Janet Jackson had a habit of routinely turning over records, without the Fire Commission members first requesting the documents and the Fire Commission would use the unredacted records to compare personnel files and discipline actions.

15. That the August 23, 2010 *Advice* said that the Fire Commission and Independent Assessor could not have access to confidential information and could not meet in closed session to discuss personnel files.

16. That when questioned about the *Advice*, which recommended limiting access to confidential files and closed session meetings, Jackson refused to cite a policy or regulation, and instead said "it is the City Attorney's opinion." Jackson refused to provide a written opinion clarifying the reason for the lack of access prescribed in this *Advice* or how this was completely at odds with how access had been provided in the past and how closed sessions had occurred.

//

//

4

DECLARATION OF GENETHIA HUDLEY-HAYES

17. That Steve Miller and I attempted to have the Mayor's office that was supporting our position deal with the Office of the City Attorney. Eileen Decker who was the deputy mayor was in communications with members of the City Attorney's office about the difficulties with the *Advice* since it was not only at odds with past practices but appeared to misinterpret basic legal principles. For instance Charter Section 509 states that for a department that is under the control of a board, that the board has the ultimate power to supervise and oversee the department head. In this case, the Fire Commissions oversight of the Fire Chief. Yet, the *Advice* left out a portion of Section 509 to make it appear that no oversight by the Commission existed over the Fire Chief.

18. That I put Steve Miller in contact with Dean and Distinguished Professor Erwin Chemerinsky, who I had been friends with for many years and he was the chairperson overseeing a committee several years earlier in re-drafting the Charter for the City of Los Angeles. It was my hope and intention that Dean Chemerinsky could shed some light on the issue and assist us in reaching a resolution.

19. That on June 21, 2011, Dean and Distinguished Professor Erwin Chemerinsky provided an opinion, addressed to me, that explained his opinion that the August 23, 2010 *Advice* was mistaken and that the IA had authority to access confidential information and that the Fire Commission who had oversight of the Fire Chief was allowed the same access to information.

20. That on July 16, 2011, William Carter sent a response letter to Chemerinsky accusing Erwin of violating attorney client confidentiality by referencing the August *Advice*. I was shocked and embarrassed by the response that was provided to Erwin from the Office of the City Attorney.

21. That on September 2, 2011, William Carter advised Steve Miller in writing that he would be reported to the State Bar if Miller did not cease and desist criticizing the advice of the City Attorney's Office. Steve Miller told me this and I was most upset since all Steve Miller had been trying to do in this time is to show

5

DECLARATION OF GENETHIA HUDLEY-HAYES

that the *Advice* was wrong and that access was needed to perform his job as the IA. I and the Commission support Steve Miller's efforts and did not want to compromise what was intended by the Charter and approved by the voters.

22. That on February 21, 2012, Miller filed a complaint with the State Bar against certain members of the City Attorney's Office. That before this complaint was filed, Steve Miller let me know that it was being filed.

23. That I did not object to Miller filing a State Bar Complaint, because I understood that although his complaints were related to his authority to access information as the Independent Assessor, his personal and professional reputation had been attacked by the City Attorney's Office and it was clear to me that attorneys were retaliating against him because of the Assessment back in March 2010. There is no other explanation given that there were no problems before the March 2010 *Assessment* was adopted and published.

24. That on August 7, 2012, the Board of Fire Commissioners ordered the Fire Chief, Brian Cummings, and his department to provide Miller with access to certain confidential information in his capacity as the Independent Assessor.

25. That the *Advice* from August 23, 2010, had stated that the Fire Chief decides what access the Fire Commission and Independent Assessor have to confidential Information.

26. That shortly after the Fire Commission told Cummings to provide Miller with access to certain confidential information, Chief Cummings revealed privately to me that the City Attorney's Office, through Janet Jackson, had told him that he could be sued personally if he allowed Miller to access information, that if he ignored the advice he wouldn't be entitled to a defense. Cummings told me that he became concerned and fearful because Jackson advised him that if he gave Miller access, Cummings could lose his house and all of his savings if he there was a lawsuit.

//

6

DECLARATION OF GENETHIA HUDLEY-HAYES

27. That I knew that the City had to indemnify the Fire Chief, and that he would not be personally responsible for the payment of any judgment of damages, because I had been sued in my official capacity as a member of the School Board and I was indemnified for actions within the scope of my office.

28. That Cummings was a new Fire Chief and did not know that he would be indemnified by the City for any lawsuits against him in his official capacity.

29. That Cummings told me that he was terrified about a financial loss individually and that he felt he was being bullied by the City Attorney's Office to deny Miller access to information.

30. That I knew that the City Attorney's Office, through Janet Jackson, had perpetuated a fraud to coerce and scare Cummings out of granting Miller and the Fire Commission access to information.

31. That on August 17, 2012, I met with City Attorney Carmen Trutanich and Deputy City Attorney William Carter. I had been trying to meet with Carmen for a period of time to no avail. At this meeting they both assured me that a new and accurate opinion concerning the authority of the IA and Fire Commission to access fire department information would be prepared and delivered by the City Attorney's office. Both of them acknowledged there were issues with the prior August 23, 2010 *Advice*.

32. That when the City Attorneys missed their deadline to provide an accurate opinion, I authorized Miller to proceed with filing another State Bar Complaint which had confidential information in it which the Fire Commission voted to release to Miller to use.

33. That on September 24, 2012, I authorized Miller to place the Independent Assessor's *Report Concerning State Bar Complaint and Request to Release Redacted Documents* on the Board of Fire Commissioners' October 2, 2012 meeting agenda for discussion which was later approved with information released by the Fire Commission to provide to the State Bar.

7

DECLARATION OF GENETHIA HUDLEY-HAYES

34. That various discussions with the City Attorney's Office took place over time with the Mayor's office about "sanitizing" confidential records, so that they could be provided to Miller and the Fire Commission. That sanitizing documents was not an adequate remedy to the access issues faced by the Independent Assessor and the Fire Commission because identifying information was necessary to assess the treatment of firefighters in the Fire Department when they received discipline. Without all information it was impossible to know if firefighters of different races, genders, family connections, rank, etc., received disparate discipline in the department.

35. That on January 9, 2013, Miller issued a press release stating among other things that he filed a complaint with the State Bar and a tort claim with the City of Los Angeles.  I was aware that Miller was going to provide the press release and I had no objections to it being presented.

36. That on January 10, 2013, the Los Angeles Times published a news article that I saw that attributed comments to and quoted William Carter from the City Attorney's Office as saying that Miller was engaged in a meritless smear campaign against dedicated public servants and that he was going to file a personnel complaint because Miller was targeting minorities and women.

37. That a complaint of race and gender discrimination and harassment was made against Miller by deputy city attorneys Houston, Jackson and Swanigan within the City of LA in October 2012.  This was investigated by the City as it hired an outside investigator, Angela Reddick.  I was interviewed along with a number of others.

38. That I never perceived that Miller was ever targeting minorities and women, only that he wanted to reveal the truth about attorney corruption and deception in denying access to information to the IA and the Fire Commission which was all due to the initial criticisms by Miller when he published his *Assessment*.

8

39. That Janet Jackson, an African American woman who had served as general counsel to the Fire Commission, had approached me after a Fire Commission meeting and accused various Fire Commissioners of racism and sexism, which I disagreed with.

40. That Reddock-Wright did not ask me any questions about the retaliation against Miller that I observed by the City Attorney's office but instead focused on whether Miller was racist or sexist.

41. That Stephen Fazio told me that he supported a different candidate for Mayor than Eric Garcetti, but Eric Garcetti reappointed him to the Fire Commission after Fazio donated $10,000 to Garcetti's election party.

42. That the City Attorney's Office never provided the Fire Commission with sufficient legal authority to support their position in the August Advice after contrary authorities were provided to the City Attorney's Office and Mayor's Office by Mr. Miller and everyone had previously ignored the advice of Chemerinsky.

43. That the City Attorney's Office had not altered its advice to the Fire Commission as of the time I left office in the summer of 2013.

44. That it is my belief based upon my own observations and knowledge of the situation that the City Attorney's Office retaliated against Miller and the former Fire Commissioners for criticizing the City Attorneys starting with the *Assessment*, by intentionally preparing a legal opinion which prevented access to information for the IA and the Fire Commission to perform their duties,  and that the City supported this retaliation through the Mayor's office as they were aware of the dispute, were involved in trying to mediate it and when they couldn't resolve the issues did nothing.

45. That Miller in May 2013 complained to me that he had been the victim of a false race and gender claim by members of the City Attorney's Office.  I became aware of Miller making this claim with Human Resources for the City of

9

DECLARATION OF GENETHIA HUDLEY-HAYES

became aware of Miller making this claim with Human Resources for the City of LA and agreed with him that the allegations against him were false and manufactured in a further act of retaliation against him, and to my knowledge there was no investigation done by the City of LA.

46. That the Independent Assessor is appointed by the Fire Commission under Los Angeles City Charter section 523, and that the Independent Assessor is not expected to resign because there is a new Board of Fire Commissioners but is simply expected to continue to perform his job position under the new Fire Commission if the performance is deemed sufficient.

47. That the City Attorney's Office retaliated against Miller and the Fire Commission by restricting access to information improperly, using coercive techniques to prevent access to information and that the Mayor's office supported these improper and illegal actions against the IA and the former Fire Commissioners by giving up and failing to protect Miller.

I declare under penalty of perjury, under the laws of the State of California and the United States of America, that the foregoing is true and correct.

Executed this 7 day of August, 2015 in Los Angeles, California.

GENETHIA HUDLEY-HAYES, Declarant

10

DECLARATION OF GENETHIA HUDLEY-HAYES