Dennis E. Wagner, Esq., CA Bar No. 99190
WAGNER & PELAYES, LLP
1325 Spruce Street, Suite 200
Riverside, CA 92507
Tel:  (951) 686-4800
Fax: (951) 686-4801
dew@wagner-pelayes.com

Stephen Miller, CA Bar No. 106534
1325 Spruce Street, Suite 200
Riverside, CA 92507
Tel:  (951) 686-4800
Attorneys for Plaintiff,
STEPHEN MILLER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN MILLER,<br><br>          Plaintiff,<br><br>     vs.<br><br>CITY OF LOS ANGELES,  et al.,<br><br>          Defendants.<br><br>_____ | **CASE NO.:**  CV13-05148 GW (CWx)<br><br>**OPPOSITION TO DEFENDANTS'<br>MOTION IN LIMINE NO. 1**<br><br>**Pre-Trial Conference**<br>**Date:**     September 17, 2015<br>**Time:**     8:30 a.m.<br>**Crtrm.:**  10<br><br>**Trial**<br>**Date:**     September 29, 2015<br>**Time:**     8:30 a.m.<br>**Crtrm.:**  10<br><br>*Honorable George H. Wu* |

OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 1

COMES NOW, Plaintiff, STEVE MILLER, who hereby files this Opposition to Defendants, Delia Ibarra, Steve Fazio, Jimmie Woods-Gray, Jimmy Hara, Richard Llewellyn, Eric Garcetti and the City of Los Angeles' Motion in Limine No.1 to exclude argument or reference to defendants' invocation of the attorney-client/attorney work product privilege and to preclude questions designed to force defendants to assert the privilege in the presence of the jury, as follows:

## I.

## INTRODUCTION

Defendants' motion *in limine* seeks to exclude any argument or reference to their repeated invocation of the attorney-client and work product privileges and attempt to preclude any questions "reasonably expected" to provoke an objection on the basis of the attorney-client or work product privileges. This highly speculative motion which seeks to serve as a prior restraint goes far beyond any protection Defendants possess under those privileges. In fact, much of the communications Defendants claim to be covered by the attorney-client and work-product privileges fall outside those privileges' scope.

## II.

## THE COMMUNICATIONS DEFENDANTS CLAIM TO BE PROTECTED BY THE ATTORNEY-CLIENT AND WORK PRODUCT PRIVILEGES ACTUALLY FALL OUTSIDE THE SCOPE OF THOSE PRIVILEGES

Plaintiff has on numerous occasions requested information regarding his termination from Defendants but has consistently been prevented from acquiring such information based on Defendants asserting the attorney-client privilege. Basic questions such as why Plaintiff was terminated and what was said in conversations regarding Miller's termination have all been deemed privileged by Defendants. However, these claims of privilege are contrary to existing law.

Not all communications between city officials are privileged simply because legal counsel is present or simply because the city officials were also attorneys.

2

*North Pacific, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1127 (ND Cal. 2003). Just as in the business world where a "meeting is not automatically privileged simply because legal counsel is present," *North Pacific, LLC* at 1128, (communications between city officials regarding the termination of a city employee is not privileged simply because legal counsel was present during those communications). To determine if a communication between city officials is privileged "[t]he proper analysis in this situation is the 'primary purpose' of the communication." *Id.* "The attorney-client privilege should be narrowly construed where important constitutional interests and a public entity which is accountable to the citizenry are involved." *Id.* Thus, the burden to prove that the attorney-client privilege applies by showing that the primary purpose of the communications was legal and not business advice is on the city. See *Id.* Additionally, for communications that are actually subject to the attorney-client privilege, the subject matter of an attorney-client communication is not privileged. *Knox Energy, LLC v. Gasco Drilling, Inc.*, 2014 U.S. Dist. LEXIS 112794, at *3.

Here, Miller's inquiries invoking Defendants' asserting the attorney-client privilege are not inquiries into confidential communications in anticipation of litigation, but rather, inquiries into the business decisions of the City of Los Angeles and its officials. Defendants have failed to provide any basis showing the communications between the city officials had a primary legal purpose rather than merely a business purpose. Instead, Defendants have made bald assertions of privilege without providing any basis for privilege other than merely asserting the presence of legal counsel. Presumably, any discussions between LA City officials regarding the termination of Miller would likely fall into the category of a business purpose rather than a legal purpose. This indicates any discussions regarding the termination of Miller related to business personnel discussions rather than any legal discussions. Nevertheless, Defendants have failed to meet their burden.

//

3

Furthermore even if any communications between city officials are deemed to be privileged, Miller is not intent to seek content of specific attorney-client communications but rather, the substantive reasons for which he was terminated from his position as Independent Assessor. The defendants have asserted this position in a blanket assertion of the attorney-client privilege throughout the case.

## III.

## COMMUNICATIONS BETWEEN ATTORNEY'S AND CITY OFFICIALS REGARDING PLAINTIFF'S TERMINATION ARE SUBJECT TO THE CRIME-FRAUD EXCEPTION TO THE ATTORNEY-CLIENT PRIVILEGE

Even if the communications between the Defendants and the various attorneys working for the City of Los Angeles fall within the general parameters of the attorney-client privilege, the crime-fraud exception vitiates any applicability the attorney-client privilege had to this case. "[T]he purpose of the crime-fraud exception to the attorney-client privilege [is] to assure that the 'seal of secrecy,' between lawyer and client does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime." *United States v. Zolin*, 491 U.S. 554, 563 (1989) (internal quotations omitted).

For the crime-fraud exception to apply, it must be shown that "the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme." *In re Grand Jury Proceedings (Corporation)* 87 F.3d 377, 381 (9th Cir. 1996). To meet this requirement, the court may determine whether the communications are within the crime-fraud exception by conducting an in camera review. *United States v. Zolin*, 491 U.S. 554, 565 (1984). The evidentiary showings necessary to trigger an in camera review "need not be a stringent one." *Id.* The district court needs only to "require a showing of a factual basis adequate to support a good faith belief by a reasonable person that in camera review of the materials may reveal evidence to establish the claim that the

4

exception applies." *Id.* After good faith is established, the decision whether to engage an in camera review rests with the sound discretion of the district court. *In re Grand Jury Subpoena 92-1 (SJ)*, 31 F.3d 826, 829 (9th Cir. 1994).

Here, a sufficient factual basis can be shown to support a good faith belief by a reasonable person that in camera review of the materials may reveal evidence to establish the exception applies.

18 U.S.C. § 242 makes it a federal crime to deprive another of his federal rights under color of law:

> Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, . . . shall be fined under this title or imprisoned not more than one year . . . ."

Section 49.5.4 of the City of Los Angeles Municipal Code specifically protects employees from city officials from retaliation:

> Section 49.5.4: Protection against Retaliation
>
> A. City officials and agency employees shall not use or threaten to use any official authority or influence to discourage, restrain, or interfere with another person's attempt to report possible violations of law to the Ethics Commission or another governmental entity.
>
> B. City officials and agency employees shall not use or threaten to use any official authority or influence to effect any action as a reprisal against another person who reports a possible violation of law to the Ethics Commission or another governmental entity.

Additionally, Section 49.5.16(A) of the City of Los Angeles Municipal Code makes it a criminal offense to retaliate under § 49.5.4:

> Section 49.5.16(A): Criminal Enforcement
>
> 1. A person who does any of the following is guilty of a misdemeanor:
>     a.  Knowingly or willfully violates a provision of this Article;

5

b.   Knowingly or willfully causes another person to violate a provision of this Article; or

c.   Aids and abets another person in violating a provision of this Article.

As indicated by both federal statute 18 U.S.C. § 242 and the City of Los Angeles Municipal Code, Plaintiff can assert in good faith that during the course of any discussions between legal counsel, the Mayor's office and city officials allowed Defendants to further a criminal scheme when it sought the advice of counsel because such discussions were in furtherance of violating § 49.5.4 of the City of Los Angeles Municipal Code and 18 U.S.C. § 242, because terminating Miller after reporting the various City Attorneys to the State Bar and issuing the press release indicates the city officials used their official authority to effect a reprisal against Miller.  Because this reprisal was done at the behest of attorney advice which Defendants assert is privileged, it can in good faith be established that those attorney-client communications were made in furtherance of the intended illegality (e.g. retaliating against Miller).

Thus, because Plaintiff can make a good faith showing based on a reasonable person standard that in camera review of the purported privileged materials may reveal evidence to establish the claim that the crime-fraud exception to the attorney-client privilege applies, the court should engage in an in camera review to properly determine that the communications between city officials and attorneys are not privileged communications.

//

//

//

//

//

//

6

## IV.

## DEFENDANTS NEED NOT BE GRANTED A BLANKET PROHIBITION FROM THE COURT BECAUSE A LIMITING INSTRUCTION CAN SUFFICIENTLY PROTECT DEFENDANTS FROM ANY NEGATIVE INFERENCE THE JURY MAY DRAW FROM AN ASSERTION OF THE ATTORNEY-CLIENT PRIVILEGE

Defendants argue that any question by Plaintiff requiring Defendants to invoke the attorney-client privilege will cause the jury to form an adverse inference against Defendants. However, Defendants already have the protection of a curative jury instruction to protect them from any negative inference drawn from their invocation of the attorney-client or work product privileges. Thus, any negative inferences from questions asked by Plaintiff that actually do provoke an attorney-client privilege objection can be contained by a limiting instruction. Jurors are presumed to follow limiting instructions. See *Zafiro v. United States*, 506 U.S. 534, 540 (1993). *See also Greer v. Miller*, 483 U.S. 756, 766 n.8 (1997) ("We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it .") Consequently, any unfair prejudicial value of evidence "can be generally obviated by a cautionary or limiting instruction." *United States v. Masters*, 622 F.2d 83, 87 (4th Cir. 1980). The Ninth Circuit has recognized the effectiveness of limiting instructions on numerous occasions. See *United States v. Tsinnijinnie*, 91 F.3d 1285, 1289 (9th Cir. 1996); *United States v. Baker*, 10 F.3d 1374, 1413-14 (9th Cir. 1993); *United States v. Rubio-Villareal*, 927 F.2d 1495-1503 (9th Cir. 1991); *United States v. Hankey*, 203 F.3d 1160, 1164 (9th Cir. 2000). Additionally, a negative inference from the invocation of the attorney-client privilege may be cured by a limiting instruction "advising the jury not to draw any negative inferences from . . . claims of attorney-client privilege." *Warter v. Bergen Brunswig Corp.*, 1998 U.S. App. LEXIS 27111 *8.

7

## V.

## DEFENDANTS' MOTION IN LIMINE REQUESTING PLAINTIFF BE PROHIBITED FROM ASKING QUESTIONS CAUSING DEFENDANTS TO ASSERT THE ATTORNEY-CLIENT PRIVILEGE IS OVERLY BROAD

An impermissibly vague or broad motion in limine will be denied. See *In re Homestore.com, Inc.*, 2011 U.S. Dist. LEXIS 10677 at *2 (C.D. Cal. 2011) (denying a motion in limine as "over-broad and vague"). "[M]otions in limine should rarely seek to exclude broad categories of evidence, as the court is almost always better situated to rule on evidentiary issues in their factual context during trial." *Colton Crane Co. v. Terex Crames Wilmington, Inc.*, 2010 U.S. Dist. LEXIS 141013 at *1 (C.D. Cal. 2010).

Defendants seek to bar Plaintiff from posing questions to trial witnesses that are expected to provoke an objection on the basis of the attorney-client or attorney work production privileges. This motion in limine seeks to exclude a broad category of evidence in that Plaintiff will likely be chilled from asking legitimate and pertinent questions to witnesses in fear of violating such a broad restriction. Consequently, sweepingly limiting Plaintiff's ability to examine witnesses, the motion is impermissibly vague and broad, and therefore, should be denied.

## VI.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion in limine.

Dated: August 2, 2015                    WAGNER & PELAYES, LLP

DENNIS E. WAGNER, Esq.
Attorneys for Plaintiff

8